# EXHIBIT 1

5 COMMODITY FUTURES V. BRADLEY 1106.txt

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF OKLAHOMA

 3

 4    U.S. COMMODITY FUTURES       )
      TRADING COMMISSION,          )
 5                                 )
                      Plaintiff,   )
 6                                 )
      V.                           )    No. 05-CV-62-JHP-FHM
 7                                 )
      JEFFREY A. BRADLEY and       )
 8    ROBERT L. MARTIN,            )
                                   )
 9                   Defendants.   )

10

11               TRANSCRIPT OF PROCEEDINGS

12                  HAD ON MAY 11, 2006

13                  DISCOVERY CONFERENCE

14

15    BEFORE THE HONORABLE FRANK H. MCCARTHY, Magistrate Judge

16

17    APPEARANCES:

18    For the Plaintiff:   Mr. James A. Garcia
                           Mr. Michael Solinsky
19                         Trial Attorneys
                           United States Commodity
20                         Futures Trading Commission
                           1155 21st Street N.W.
21                         Washington, D.C. 20581

22                         Mr. Kevin C. Leitch
                           Ms. Cathryn McClanahan
23                         Assistant United States Attorneys
                           110 West 7th Street, Suite 300
24                         Tulsa, Oklahoma 74119

25
```

TRANSCRIPT PREPARED FROM AN ELECTRONIC RECORDING
BY GLEN R. DORROUGH, UNITED STATES COURT REPORTER

2

5 COMMODITY FUTURES V. BRADLEY 1106.txt

```
1    For the Defendant      Mr. David R. Cordell
     Bradley:               Mr. Bruce W. Freeman
2                           Conner & Winters
                            4000 One Williams Center
3                           Tulsa, Oklahoma 74172

4    For the Defendant      Mr. Thomas M. Ladner
     Martin:                Norman, Wohlgemuth, Chandler
5                             & Dowdell
                            401 South Boston
6                           2900 Mid-Continent Tower
                            Tulsa, Oklahoma 74103
7
     For Third Party        Ms. Carolyn Foley
8    McGraw-Hill:           Mr. Kevin Choset
                            Davis Wright Tremaine, LLP
9                           1633 Broadway
                            New York, New York 10019
10                             -   -   -   -   -
```

11                         PROCEEDINGS

12                       May, 11, 2006

13          THE CLERK:  This is case number 05-CV-62-JHP, U.S.

14   Commodity Futures Trading vs. Jeff Bradley, et al.  Counsel

15   please enter appearance for the record.

16          MR. GARCIA:  On behalf of the Commodity Futures

17   Trading Commission, James Garcia and Michael Solinsky.  Also

18   appearing, the Commission's local counsel, Cathryn McClanahan

19   and Kevin Leitch.

20          MR. CORDELL:  David R. Cordell and Bruce W. Freeman

21   for defendant, Jeffrey A. Bradley.

22          MR. LADNER:  And for defendant Robert Martin, Tom

23   Ladner.

24          MS. FOLEY:  For nonparty, the McGraw-Hill Companies,

25   Carolyn Foley and Kevan Choset.

                                                            3


1           THE COURT:  Good morning, Counsel.  This is Magistrate

2    Judge McCarthy.  We got a message from one of the counsel that

3    you all had a discovery dispute concerning a protective order

4    that we had entered in the case and that's what we're here for

                         Page 2

5 COMMODITY FUTURES V. BRADLEY 1106.txt

5  this morning.  But that now exhausts my knowledge of what, what

6  the problem is.  So whoever started this, why don't you tell me

7  what's going on?

8      MR. LADNER:  Judge, this is Tom Ladner and I plead

9  guilty for starting the process.  Just briefly I can tell you

10  that Your Honor entered a protective order in this case on

11  March 28th, 2006, to facilitate the production of documents by

12  McGraw Hill Companies to the defendants, Martin and Bradley in

13  this case, that are critical to our defense of the case which

14  is set for trial late July.  We have a discovery cutoff of June

15  9.

16      Despite the entry of that protective order, which was

17  a negotiated protective order among everyone except the CFTC,

18  admittedly, McGraw-Hill has yet to produce any documents.  Well

19  that's -- let me strike that.  McGraw-Hill has produced a small

20  volume of documents about a month after the protective order

21  was entered, but has advised us repeatedly that they're

22  continued in negotiations with the Commodity Futures Trading

23  Commission over production of what they consider privileged

24  documents.  We've waited, we've waited, we've hoped that they

25  would resolve it.  They haven't resolved it.  We're coming up

4

1  on a discovery cutoff and quite honestly, Martin and Bradley,

2  you know, have agreed to protect these documents, Your Honor

3  has entered an order protecting these documents so we can't get

4  them produced and so I just finally threw up my hands and said

5  let's see if the Magistrate can help us, you know, resolve this

6  issue.

7      MR. CORDELL:  Judge, this is David Cordell to kind of

8  put the larger scope on it.  What appears to have occurred is

Page 3

5 COMMODITY FUTURES V. BRADLEY 1106.txt

9   that our clients, the defendants, have been caught up in a,

10  kind of a national debate between the CFTC and McGraw-Hill with

11  regard to the productions of categories of documents, in other

12  actions pending around the nation, which has resulted in the

13  CFTC, a couple of days ago, filing a motion to compel in the

14  D.C. Circuit.  The documents at issue that we're seeking and

15  that bring us to the call today, result from subpoenas that we

16  issued to McGraw-Hill directly and also discovery requests that

17  were sent to the CFTC by the defendants, which in essence asks

18  for McGraw -- for the CFTC to produce any documents they had

19  previously received from McGraw-Hill in accordance with the

20  terms of an order compelling McGraw-Hill to produce documents

21  in an earlier D.C. civil enforcement action, which I suspect

22  the Ms. Foley and Mr. Garcia would like to talk to you more

23  directly about.

24          But in essence, Tom and I's simple position is we're

25  trying to defend two individuals that have been sued by the

                                                              5


1   government here in Tulsa and prepare a case for trial in July

2   and we are becoming the victims of a -- of a dispute that goes

3   way beyond the bounds of your courthouse.

4           MR. GARCIA:  Your Honor, on behalf of the Commodity

5   Futures Trading Commission, James Garcia, I would like to add a

6   little bit of flesh to the nature of the dispute concerning

7   these documents and in particular, their run-up, if you will,

8   to the entry of the Court's protective order and the events

9   that have followed since that entry.

10          In an unrelated piece of litigation in the District of

11  Columbia, McGraw-Hill was directed to produce to the Commission

12  certain documents that were sought by the Commission pursuant

13  to an investigative subpoena.  McGraw-Hill provided those

                              Page 4

5 COMMODITY FUTURES V. BRADLEY 1106.txt

14  documents to the Commission, after having failed in its attempt
15  to secure a protective order covering those documents.  When
16  the Commission received those documents from McGraw-Hill,
17  counsel for the Commission undertook to review them with an eye
18  toward assessing their potential responsiveness to document
19  requests, then pending, that had been lodged by defendants in
20  this case, Mr. Bradley and Mr. Martin.  After that -- pardon
21  me, Your Honor.  After that review was complete, the
22  Commission, Commission counsel came to the conclusion that a
23  certain subset of the documents provided as a result of the
24  subpoena enforcement action by McGraw-Hill, should indeed be
25  provided to defendants pursuant to -- here, pursuant to their

                                                                6

1   discovery requests.  As a matter of courtesy, the Commission
2   alerted McGraw-Hill to its intention to produce those, that
3   subset of documents and McGraw-Hill asked the Commission if it
4   would defer production in order to facilitate reaching some
5   sort of agreement as to a stipulated protective order.  The
6   Commission indicated to McGraw-Hill, in response to that
7   request, that given the outcome of the D.C. litigation, that is
8   the absence of a protective order covering these documents, the
9   Commission didn't see any need and didn't feel it was
10  appropriate for a protective order to issue relating to that
11  subset which it intended to produce to defendants.  McGraw-Hill
12  then asked the Commission if, in the event McGraw-Hill could
13  reach an agreement as to a protective order with defendants, if
14  the Commission would be willing to sign on to that.  The
15  Commission's response was that as a general matter, again with
16  respect to these documents, we didn't believe a protective
17  order was appropriate and we couldn't comment without seeing

Page 5

5 COMMODITY FUTURES V. BRADLEY 1106.txt

18   the substance of whatever proposed protective order defendant

19   and McGraw-Hill might agree to, we couldn't comment on whether

20   or not we would be willing to entertain that.

21          My understanding is that following that exchange,

22   McGraw-Hill and the defendants undertook to negotiate between

23   themselves.  And I should say -- let me take just one step

24   back.  As part of that discussion, McGraw-Hill forwarded to the

25   Commission a proposed protective order that it indicated

                                                              7


1   defendants were willing to enter into and the Commission's

2   response was that it found the proposed protective order

3   objectionable and thus could not agree to it.

4          Nonetheless, defendants and McGraw-Hill apparently

5   came to an agreement as to the scope of a protective order that

6   they were willing to enter into and applied therefore on the

7   27th, that application stating at paragraph 4, quote:

8          "Plaintiff CFTC is not a party to the proposed

9   protective order."

10          And that protective order was issued the follow -- was

11   entered into -- was entered by the Court the following day

12   without the Commission having an opportunity to object.

13          Shortly after the entry of the protective order, the

14   Commission reached out to counsel for defendants, Bradley and

15   Martin, as well as the counsel for third party McGraw-Hill,

16   indicating that it objected to the terms of the protective

17   order then entered and that it -- that the Commission intended

18   to file a motion to clarify and/or vacate.  At the request of

19   McGraw-Hill the Commission, in response to that, that series of

20   communications, counsel for McGraw-Hill stated to counsel for

21   the Commission that third party McGraw-Hill did not intend for

22   the order to bind the Commission and based upon that

5 COMMODITY FUTURES V. BRADLEY 1106.txt

23    representation by letter dated April 13th, the Commission
24    agreed to defer filing its motion, motion to clarify or vacate
25    to allow the parties an opportunity to attempt to negotiate a

                                                                    8

1    resolution to our -- to the difficulties with the protective
2    order.  An exchange of letters followed wherein the Commission
3    laid out alternative language to be proposed by defendants and
4    third party McGraw-Hill, that it, that the Commission would be
5    willing to agree to.  McGraw-Hill responded by counter
6    proposing some slightly different language.  The Commission
7    came back a second time, counter proposing yet again.  And I'd
8    like to just highlight here that the Commission's position
9    consistently from the beginning of these negotiations
10   immediately after the protective order was entered, has been
11   that there should be additional language in the protective
12   order, specifically as paragraph 10, indicating as follows:
13         "No provision of this order shall be interpreted to
14   bind the Commodity Futures Trading Commission or limit in any
15   way the Commission's use or dissemination of the McGraw-Hill
16   documents."
17         That of course is an addition that's consistent, not
18   only with the Commission's position, but also with counsel for
19   McGraw Hill's earlier representation that it did not intend by
20   entry of a protective order that the Commission be bound.
21         Following these negotiations on the 5th of May, and
22   after some back and forth about different parts of the language
23   of the protective order, the parties reached agreement which
24   the CFTC -- which counsel for the CFTC confirmed by letter
25   dated May 5.  Shortly thereafter, counsel for defendant Ladner

                                                                    9

5 COMMODITY FUTURES V. BRADLEY 1106.txt

1    I'm sorry, counsel for Brad -- Martin, and the CFTC learned

2    from counsel for McGraw-Hill that notwithstanding that

3    agreement, McGraw-Hill was still unwilling to produce the

4    documents at issue without some further agreement from the

5    Commission concerning protection, by McGraw Hill's light, of

6    the documents.  It was at that point, Your Honor, that the

7    parties conferred jointly by phone on this past Monday, the 9th

8    and were unable to resolve these issues.  And so yesterday,

9    consistent with its representations of April 13 and April 28,

10   the Commission filed its motion to clarify or vacate the

11   protective order, seeking particularly to modify or to have

12   modified the language of paragraph five, have the additional

13   language inserted at paragraph 10 and to strike, for reasons

14   outlined in our filing, paragraph 4 in its entirety.

15           I would mention just as a way of book ending this, if

16   you will, that the earliest discussions that I referred to

17   leading up to the application for protective order, dealt

18   specifically with that small subset of documents that the

19   Commission intended to produce that were provided by

20   McGraw-Hill as a result of the subpoena enforcement action.

21   The language of the protective order as proposed and entered,

22   however, covered a broader spectrum of documents, to include

23   not only the subset coming from the subpoena enforcement

24   action, but also any documents that McGraw-Hill might produce

25   to the Commission, or to defendants in this action.

                                                              10


1           That's, from the Commission's perspective, where we

2    are now.

3           THE COURT:  All right, so the Commission hasn't

4    produced your subset of documents then to the defendants?
                            Page 8

5 COMMODITY FUTURES V. BRADLEY 1106.txt

5          MR. GARCIA:  We have, Your Honor.

6          THE COURT:  Oh, you have.

7          MR. GARCIA:  As we indicated to McGraw-Hill, after

8   deferring at their request, twice, the documents -- that subset

9   of documents was produced to the defendants on the 29th of

10  March, if memory serves.

11         MR. CORDELL:  Judge, David Cordell.  I think to maybe

12  answer that question, a portion of documents have been produced

13  to us, and from my discussions with counsel for the CFTC, they

14  did not produce all the documents they had received in the D.C.

15  enforcement action for various sundry reasons which I still

16  don't know what the answer to that is.

17         So we've gotten some documents that they had received

18  from McGraw-Hill in the prior action, but not all of them.

19         THE COURT:  Right and he didn't say that he had given

20  you all.  He just said he had given you the subset that they'd

21  already agreed to give you.

22         MR. CORDELL:  Okay.  I misunderstood.

23         THE COURT:  At least that's what I was understanding

24  him to say.

25         MR. GARCIA:  Your Honor, we provided a subset of

                                                                11

1   documents based on our assessment of the documents

2   responsiveness to the outstanding, defendant's outstanding

3   discovery requests.  Those documents were produced in response

4   to a request from Mr. Bradley that sought everything, every

5   document in the Commission's possession provided by

6   McGraw-Hill, without subject matter or time-frame limitation,

7   and so the Commission produced, subject to various objections,

8   subject to and without waiver of various objections, that

Page 9

5 COMMODITY FUTURES V. BRADLEY 1106.txt

9   subset of the subpoena enforcement action documents that it

10  believed to be responsive to defendants' request.

11        THE COURT:  Okay.

12        MS. FOLEY:  Your Honor, this is Carolyn Foley

13  representing McGraw-Hill, if I may state our position and our

14  perspective on these matters.

15        THE COURT:  Sure.

16        MS. FOLEY:  I'd like to start off by saying I had a

17  slightly different understanding of what this conference was to

18  address and what precipitated -- what has precipitated this

19  conference.

20        Currently there is a deposition of a former

21  McGraw-Hill employee scheduled for Monday, May 15th in Houston.

22  Stepping back a moment to the fact that McGraw-Hill has

23  received subpoenas from both the CFTC and from Mr. Bradley in

24  this case, we have received those subpoenas, we have produced

25  documents that we do not -- we have produced documents that are

                                                              12

1   not privileged and we have attempted to negotiate it, primarily

2   with the CFTC, because as I, as I took the lead from Mr.

3   Cordell, he seemed to be happy to let the CFTC do the

4   negotiation of the proper scope of the subpoena in the first

5   place.  I think that James Garcia has accurately set forth how

6   the protective order with the defendants came into being.  And

7   I will say that the primary purpose and the primary intent from

8   McGraw Hill's perspective, covering that particular protective

9   order, was to address the immediate concern that the CFTC was

10  about to make some of McGraw Hill's documents, which are both

11  privileged and proprietary, available to the defendants in this

12  case.  Rather than making a motion before this Court to stop

13  that production, since defendants were willing to enter into a

                        Page 10

5 COMMODITY FUTURES V. BRADLEY 1106.txt

14    protective order, we proceeded in that fashion.

15           Defendants, in drafting that order, defendants asked

16    if we would include in that, regarding doing a protective

17    order, let's just add that this protective order will apply to

18    documents McGraw-Hill produces in this case and defendants

19    agreed to be bound.  And we agreed that we would proceed that

20    way.  From McGraw Hill's perspective though, a protective order

21    that does not bind the CFTC does not serve the interest that

22    the -- that McGraw-Hill has in protecting its privileged and

23    proprietary information in terms of what we are being asked now

24    to produce anew.

25           THE COURT:  Let me stop --

                                                          13


1            MS. FOLEY:  -- that have never been produced before in

2     this particular action.

3            THE COURT:  Let me stop you for a second.  The

4     Commodities and Futures people were going to produce some

5     documents to the defendants in this case.  Those document had

6     already been ruled to be not subject to a protective order by

7     somebody in D.C.; right?

8            MS. FOLEY:  Those documents have been produced in the

9     context of an action, a subpoena enforcement action.  So not in

10    a civil litigation, but rather in the context of an

11    investigatory subpoena issued by the CFTC.  The -- there were

12    two -- they were produced subject to two orders of a judge in

13    D.C.  The second order that denied or said that -- declines to

14    add a protective order at McGraw Hill's request was an

15    issued -- and was issued on the grounds that in opposing the

16    protective order -- in opposing the motion to compel in the

17    first place, we should have raised the need for a protective

Page 11

5 COMMODITY FUTURES V. BRADLEY 1106.txt

18    order and at this point he was not going to address that.  But

19    we, in terms of producing documents to the CFTC in the context

20    of an investigatory subpoena, there are CFTC regulations that

21    protect proprietary trade secrets and keep the documents -- it

22    was a nonpublic investigation and therefore the documents were

23    going to the CFTC and not being made generally public.

24          THE COURT:  All right, but my point being that the

25    documents that are going to be turned over to the defense -- or

                                                                    14


1    that have been now turned over to the defendants in this case,

2    you weren't seeking to get some additional order against the

3    CFTC by means of this protective order that I signed, were you?

4          MS. FOLEY:  No, not in term -- not as they would

5    relate to the particular documents, the subset that the CFTC

6    has produce -- the McGraw-Hill documents that the CFTC has

7    produced.  We were not seeking to -- to -- we were not seeking

8    to change any obligations of the CFTC.

9          THE COURT:  Right, that --

10          MS. FOLEY:  That's the extent.  That's why we

11    represented that this protective order does not bind the CFTC.

12          THE COURT:  Right, that was just your deal between you

13    and the defendants in this case.

14          MS. FOLEY:  Correct.

15          THE COURT:  Okay.  All right.  I'm understanding it

16    now.

17          MS. FOLEY:  Okay.  Now, from our perspective

18    meanwhile, I have been trying to negotiate with the CFTC the

19    appropriate scope of the production of documents pursuant to

20    their subpoena in this particular case, but it so happens that

21    we've actually got a handful of subpoenas and each of them

22    raise slightly different factual issues, but largely seek the

Page 12

5 COMMODITY FUTURES V. BRADLEY 1106.txt

23    same type of documents.  And as early as March 15, I proposed a

24    procedure by which McGraw-Hill would produce the documents.

25    One of the key features to it was that the documents would be

15

1    produced in this now civil -- in these different civil actions,

2    would be produced pursuant to a protective order.

3         I was informed on Friday of last week that in response

4    to my proposal, that the CFTC had rejected my proposal of March

5    15th, that they would agree to no protective order.  They would

6    not -- they would not counter propose and try to draft a

7    protective order that addressed their concerns.  They would not

8    narrow the scope of the subpoena in any way.  They would not

9    make any -- they basically said that if I did not agree, if

10    McGraw-Hill did not agree at this moment to comply with all the

11    subpoenas in full, without any protective order entered in any

12    of the cases, they were going to move to compel.  I then

13    informed the defendants in this case that that was the CFTC's

14    position and I think that that -- that the defendants then

15    understood that my hands were tied at this point because I no

16    longer had the ability to negotiate anything because now I was

17    facing a motion to compel in the D.C. Court which implicates,

18    among other cases, this case.

19         THE COURT:  All right, so now that --

20         MS. FOLEY:  I think that the defendants -- I think

21    that the main emphasis, and Mr. Ladner and Mr. Cordell will

22    correct me if I'm wrong, but the main concern at this point was

23    that we had -- or the reason for scheduling this today was that

24    we have a deposition scheduled to go forward on Monday.

25         Now from McGraw Hill's perspective, and to address the

16

Page 13

5 COMMODITY FUTURES V. BRADLEY 1106.txt

1   motion that Mr. Garcia has filed, which I got last night, I'm
2   not prepared at this point to go into the substance, but we do
3   have a number of disagreements with him about -- about his --
4   about the motion that he's made here.
5           THE COURT:  Okay, I haven't seen that motion yet so
6   we're not --
7           MS. FOLEY:  Okay.
8           THE COURT:  -- going to discuss that.
9           MS. FOLEY:  Okay.  Then, I actually -- so I'm here
10  as -- as -- McGraw-Hill is here as an entity, as a nonparty
11  stuck between a rock and a hard place in terms of our ability
12  to negotiate has been somewhat hamstrung.
13          I will also add for, just so you understand the
14  history here of how long and how many jurisdictions have
15  addressed these particular issues, that the CFTC brought an
16  action in the Southern District of Texas seeking to compel
17  McGraw-Hill to produce documents in the context of an
18  investigatory subpoena of CMS, which is the employer of the
19  defendants in this case.  And I will say that that motion to
20  compel was denied with prejudice recently.  And while the CFTC
21  picks the D.C. action as the one they viewed as controlling in
22  this case, there are in fact other decisions inconsistent with
23  the CFTC's position.
24          MR. GARCIA:  Carolyn, I must -- if Your Honor will
25  allow me, I must interject at this point --

                                                              17


1           THE COURT:  No, no, no.
2           MR. GARCIA:  As to something that you've just said.
3           THE COURT:  Mr. Garcia, hold on.  Let her finish.
4           MR. GARCIA:  Okay.
                            Page 14

5 COMMODITY FUTURES V. BRADLEY 1106.txt

5          THE COURT:  You'll get a chance to talk.

6          MR. GARCIA:  I appreciate that, Your Honor.

7          THE COURT:  Go ahead, ma'am.

8          MS. FOLEY:  So at this point, and there are in the

9     context of other different jurisdictions in this that have

10    heard these issues, varying -- varying decisions have entered

11    in terms of the protections that should be -- the documents

12    that should be produced and the protections that should be

13    given to the documents that are produced.

14          At this point, I'm not exactly sure what the proposed

15    remedy is here, so I'm not -- I'm not exactly sure how to state

16    what McGraw-Hill's position is.

17          THE COURT:  I'm still not --

18          MS. FOLEY:  Your Honor, I will say that one of the

19    most important things from McGraw-Hill's perspective is the

20    entry of a protective order that will protect the documents

21    that we are required to produce in this case.  But I -- I -- at

22    this point, I don't know how to state otherwise what the -- Our

23    position is that in terms of the protective order that has been

24    entered in this case, we don't intend to bind the CFTC or to

25    change the CFTC's obligation with regard to the McGraw-Hill

                                                          18

1     documents that they've produced, but we also believe that it's

2     not sufficient at this point to protect our interests in terms

3     of any other documents we, McGraw-Hill, may itself produce in

4     this case.

5          THE COURT:  All right.  Mr. Ladner, let's get back to

6     you for a second.

7          MR. LADNER:  All right.

8          THE COURT:  Since you started this.  What is it you

                          Page 15

5 COMMODITY FUTURES V. BRADLEY 1106.txt

 9  want from the Court today?

10          MR. LADNER:  what I wanted from the Court or from

11  the -- I guess from the Court is some clarification of the

12  protective order or a modification of the protective order such

13  that McGraw-Hill will produce to the defendants the documents

14  that are a subject to the subpoena that we need -- as Carolyn

15  mentioned and I agree -- we need for a deposition on Monday,

16  but we also need to generally prepare for trial.  We have a May

17  23rd deadline to exchange or to list trial exhibits.

18  McGraw-Hill has documents that we need and I don't know how to

19  move this forward, again, maybe we should have gotten with you

20  earlier, Your Honor, but I thought that they were going to work

21  it out and it's just been dragged out and so my, my desire is

22  to get an order that would protect the CFT -- protect

23  McGraw-Hill in terms of their documents, pending the resolution

24  of the CFTC's motion to clarify or vacate so that documents can

25  be produced presently so that Bradley and Martin aren't

                                                            19

 1  prejudiced.  We're happy to protect those documents and treat

 2  them as highly confidential, not to be disclosed to anyone and

 3  just to be used for depositions and trial in this case.  I know

 4  that James Garcia and the CFTC doesn't want to be bound by any

 5  order but, you know, the bottom line is until the Court can

 6  rule on that, and apparently third party, nonparty McGraw-Hill

 7  wants to brief the issue and I understand that, but in the

 8  meantime we've got, you know, a real trial schedule and dates

 9  that we have to deal with.

10          THE COURT:  So essentially what you want is some order

11  from the Court directing the production of documents by either

12  the plaintiff or by McGraw-Hill that are responsive to your

13  subpoena.

                        Page 16

5 COMMODITY FUTURES V. BRADLEY 1106.txt

14          MR. LADNER:  Yes.

15          THE COURT:  That's really what you're looking for.

16          MR. LADNER:  Yes.

17          THE COURT:  And McGraw, as I understand it,

18   McGraw-Hill's happy to produce those documents as long as

19   there's a protective order.

20          MS. FOLEY:  Well, may I interject, Your Honor, here?

21          THE COURT:  Yes.

22          MS. FOLEY:  It's Carolyn Foley again.  We have

23   objections, we have stated objections to both the CFTC's

24   subpoena and to the defendants' subpoena.  We are willing, once

25   there's a protective order, to produce documents, but I don't

                                                              20


1    think it's a fair characterization to say that we are willing

2    to produce all of the documents.  We have still a dispute about

3    the scope of the production.

4           I will also say, however, that the request by the

5    defendants that there be some sort of temporary order entered

6    in here, you know, so that things can be -- can proceed, but

7    then having the notion that, you know, there's one order here

8    that will be temporary or potentially applied to only some

9    documents and then another order in another jurisdiction that

10   will apply in this particular case that will have a different

11   result is -- puts McGraw-Hill in an untenable situation and we

12   would object strenuously to having to produce documents subject

13   to some sort of temporary protective order or an order that

14   would prejudice our rights in some way in terms of the motion

15   now currently, I guess, just briefed, just set forth and

16   briefed on Monday of this week in the D.C. Court.

17          THE COURT:  All right.

                        Page 17

5 COMMODITY FUTURES V. BRADLEY 1106.txt

18      MR. LADNER:  Your Honor, this is Tom Ladner.  I don't

19 understand Carolyn's position in that regard.  Every protective

20 order is temporary, every protective order is subject to

21 modification and every time someone produces documents subject

22 to a protective order, they are deemed to -- to treat those

23 documents with the protection that this Court has afforded

24 under the order and always subject to either the Court or a

25 party seeking the modification of that order.  And I'm simply

21

1 saying that we have an order in place, we think McGraw-Hill

2 ought to produce it, we think the CFTC ought to be bound by it

3 until, you know, it's modified.  And yes, the risk exists to

4 McGraw-Hill that it may be modified at some future date, but --

5       THE COURT:  But wait, Mr. Ladner, you've got an order,

6 you've got a protective order in this case that's only between

7 you and McGraw-Hill.  You don't have a protective order in this

8 case that's in anyway limiting the plaintiff.

9       MR. LADNER:  Well --

10      THE COURT:  They weren't a part of it.

11      MR. LADNER:  That's part of the confusion, Your Honor.

12 When I signed off on it, I had understood that it applied to

13 everybody in the case.  I understand that the application was

14 intended to not bind the CFTC with respect to documents that

15 they obtained through their enforcement action in D.C., but I

16 was certainly laboring under the impression that everybody was

17 agreeing and to be bound by it with respect to new doc -- new

18 categories of documents being produced by McGraw-Hill.  But now

19 that we -- now that I understand that CFTC's position that they

20 say we don't consider ourself bound by it, that's -- that was

21 the purpose of having this call was to figure out how do we --

22 how do we move forward and get the documents produced.

Page 18

5 COMMODITY FUTURES V. BRADLEY 1106.txt

23        THE COURT:  All right, so you want some documents,

24    McGraw-Hill's at least willing to give you some documents if

25    there's a protective order and fight about some other

                                                          22

1     categories, and the plaintiff is not willing to have any

2     production done under a protective order.

3            Have I got that right, Mr. Garcia?

4            MR. GARCIA:  Your Honor, this is James Garcia.  Before

5     answering your question, I want to make two points following up

6     on what you've just heard.  The first point would be that with

7     respect to the subpoena enforcement action in the Southern

8     District of Texas, that request by the CFTC was not denied, it

9     was withdrawn with prejudice.

10           The other point I would make is that as I mentioned

11    earlier, and as Your Honor points out, the language of the

12    application for the protective order we're discussing today,

13    plainly states that the CFTC is not a party to the proposed

14    order and with respect to this question of the protective order

15    covering only those materials that the CFTC has already gotten

16    from McGraw-Hill versus some larger group of documents, I would

17    direct the Court's attention to footnote 1 of the proposed

18    order which was adopted in the, in the order that was entered.

19    The definition of McGraw-Hill documents, under footnote 1, that

20    are protected by the order that's in place now includes not

21    only the subpoena enforcement doc -- action documents that the

22    Commission received from McGraw-Hill stemming from the D.C.

23    action, but also includes, quote:

24           "Any documents that McGraw-Hill may produce in

25    response to any third party subpoenas that it may be served

                                                          23

Page 19

5 COMMODITY FUTURES V. BRADLEY 1106.txt

1    with by any party to the captioned action." Close quote.

2         So to circle back to your original question, in terms

3    of what the CFTC's position is with respect to this protective

4    order, we negotiated around to some language and some changes

5    in the protective order that the Commission was willing to live

6    with.  It was our understanding that those modifications had

7    been agreed to, hence my letter of May 5th confirming changes,

8    particularly with respect to paragraphs 4, 5 and 10.  And of

9    course, from there we've now learned that McGraw-Hill is still

10   unwilling to produce documents absent some commitment by the

11   CFTC beyond that which the Commission has already agreed to,

12   to -- to enter into a protective order.  That's --

13        THE COURT:  You've put forth what you -- Mr. Garcia,

14   you've put forth to McGraw-Hill a counter proposal in this case

15   saying if you'll modify the protective order in these regards,

16   in these specifics, we'll sign off on it with regard to this

17   case here in Tulsa; is that right?

18        MR. GARCIA:  Yes, we did, and McGraw-Hill agreed to

19   those changes.

20        THE COURT:  Well, we'll get --

21        MS. FOLEY:  But Your Honor, I think that there's a

22   misunderstanding here.  They say -- my conversations with Mr.

23   Garcia says that he will not object to McGraw-Hill having a

24   protective order with the defendants does not bind the CFTC if

25   we make these changes, and we had agreed to make those changes.

24

1    What he still is saying is the CFTC will not be bound to keep

2    any documents we produce confidential.

3        THE COURT:  Is that right, Mr. Garcia?

4        MR. GARCIA:  That is correct, Your Honor, and if I
                              Page 20

5 COMMODITY FUTURES V. BRADLEY 1106.txt

5    could just address why that's --

6          THE COURT:  No, I don't want to know why.

7          MR. GARCIA:  Okay.

8          THE COURT:  I'm just trying to find out what the fight

9    is.

10          MR. GARCIA:  Okay.  I appreciate that, Your Honor,

11    thank you.

12          THE COURT:  So your fight, you're not willing to enter

13    into any protective order in this case concerning the

14    McGraw-Hill documents?

15          MR. GARCIA:  The Commission, as laid out in our last

16    letter on this issue is willing to be bound under the terms of

17    paragraph 5 of the protective order whereby should defendants

18    choose to seal something for use in this case, the Commission

19    would -- agrees to give notice to McGraw-Hill of its intent to

20    challenge that sealing.  But essentially, Your Honor, the

21    Commission is, at this point, unwilling -- unwilling to enter

22    into any larger scope protective order than -- than that which

23    I've just stated.

24          THE COURT:  Which is, nothing, as far as protection to

25    McGraw-Hill; is that right?

                                                            25


1          MR. GARCIA:  I think that's a fair characterization.

2          THE COURT:  Okay.  So the issue then is whether or not

3    there's going to be a protective order in the case that binds

4    the plaintiff regarding McGraw-Hill documents.  Am I right

5    there?

6          MR. GARCIA:  Yes, Your Honor.

7          THE COURT:  Okay.  And Mr. Ladner, you're trying to

8    get that issue teed up so you can get some documents for a

                              Page 21

5 COMMODITY FUTURES V. BRADLEY 1106.txt

9   deposition next Monday and for a trial in July?

10         MR. LADNER:  That's right, Your Honor.  And I would

11  just say that, you know, to the extent that we, the defendants

12  have been late in bringing that to you, we were under the

13  impression when the order was entered March 28th, that

14  McGraw-Hill would produce privileged documents.

15         THE COURT:  Well, now, tell me the issue that's

16  already been filed in D.C., from McGraw-Hill's standpoint, if

17  that motion is decided one way or the other, will that cover

18  the same documents that are at issue here in my case?

19         MS. FOLEY:  The answer is that -- that, the motion in

20  D.C. concerns a subpoena issued, one among many, a subpoena

21  issued by the CFTC in this particular case.  And then to answer

22  your question about the difference between the subpoena issued

23  by the CFTC and the subpoena issued by Mr. Bradley, they

24  largely overlap.  I think Mr. Bradley's covers, is probably

25  more broad than the CFTC's, but they largely overlap.

                                                          26

1          THE COURT:  So the, the, the resolution of the issue

2   by the D.C. Court would effectively resolve the issue with

3   regard to the documents in this case?  Is that right, from

4   McGraw-Hill's standpoint?

5          MS. FOLEY:  Yes.

6          THE COURT:  Is that right with regard to the

7   plaintiff's standpoint, Mr. Garcia?

8          MR. GARCIA:  Yes, Your Honor.

9          THE COURT:  So if you lose in D.C. and the court says

10  no, I'm giving McGraw-Hill a protective order, then the

11  plaintiff would be in the same situation in this case; is that

12  right?

13         MR. GARCIA:  In the main, Your Honor, I believe that's

                          Page 22

5 COMMODITY FUTURES V. BRADLEY 1106.txt

14  correct.

15      THE COURT:  All right.  Mr. Ladner and Mr. Cordell,

16  are you all going to have input into this D.C. process?

17      MR. CORDELL:  We had hoped that we wouldn't because it

18  involves the fight that largely doesn't have anything to do

19  with us.  I'm just focusing on my subpoena and McGraw-Hill, and

20  what the CFTC and McGraw-Hill fight about somewhere else, at

21  present, is not my concern.  I suppose that we could intervene

22  or something, but the issue that's moved to compel on is the

23  CFTC's subpoena to McGraw-Hill, not ours.

24      THE COURT:  Well, I'm just trying to figure out

25  whether or not we can -- we can have one place decide this

27

1  question because I'm seeing in the future here that if we -- if

2  it goes forward in D.C. and we also litigate the issue here,

3  we've got two judges, I think, deciding the same thing.

4      MS. FOLEY:  That does seem to be one of the issues and

5  one of the problems that McGraw-Hill is repeatedly facing here.

6      THE COURT:  Is that incorrect from the defendants'

7  standpoint in this case?

8      MR. CORDELL:  No, I think it's just a question which

9  judge is going to decide it, Your Honor.

10      THE COURT:  All right.  Mr. Ladner, do you agree with

11  that?

12      MR. LADNER:  I do, Your Honor.  I guess the only --

13  the only twist to that is that the subpoena, the Bradley

14  subpoena and the CFTC subpoena is kind of at issue in this case

15  right now.  I did issue a subpoena to McGraw-Hill back in

16  September of '05, and anyway, I agreed because -- to hold off

17  pressing for those doc -- these same types of documents under

Page 23

5 COMMODITY FUTURES V. BRADLEY 1106.txt

18  that subpoena, but anyway, I don't want to cloud the issue.

19      THE COURT:  Does anybody have any information as to

20  how quickly the matter is going to reach a resolution in D.C.?

21  Mr. Garcia, do you have any feel for that?

22      MR. GARCIA:  I do not, Your Honor.

23      THE COURT:  Ms. Foley, do you have any feeling for

24  that?

25      MS. FOLEY:  I do not yet, Your Honor.  I don't.  I

                                                    28

1   don't.  I will say the issues are -- the issues in that case

2   are larger in that they involve more than just this case, it's

3   been a consolidated motion.

4       MR. LADNER:  And it was just filed Monday; correct?

5       MS. FOLEY:  Correct.

6       THE COURT:  Well, the two alternatives appear to me,

7   Mr. Ladner, to either for you-all to join in that D.C. action,

8   or for you to bring a motion here in this case to compel

9   McGraw-Hill to produce the documents to compel the plaintiff to

10  produce the documents, and we can address the same issue here.

11      MR. LADNER:  Your Honor, if I -- this is Tom Ladner.

12  If I were to do that, is it possible to get that teed up on an

13  expedited basis?  And I realize that, you know, the Court's got

14  many, many other cases to deal with.

15      THE COURT:  Well, normally I would say yes.  I mean,

16  that's not a problem for me.  My concern is that, is that it

17  may be a problem for the plaintiff and more importantly really,

18  for McGraw-Hill.  You know, I don't know what -- she's

19  mentioned, Ms. Foley had mentioned several other courts that

20  have been involved in this and it's sounding like the D.C.

21  Court might be the central place where this is really getting

22  resolved and this would just be another, another aspect of it

                        Page 24

5 COMMODITY FUTURES V. BRADLEY 1106.txt

23    that she'd have to deal with.

24         MS. FOLEY:  That, that's correct, Your Honor.  I mean,

25    to the extent we can minimize the burden of the nonparty

                                                              29

1     McGraw-Hill, we do appreciate it and it does, at this point, to

2     the extent that the motions are consolidated, that does assist

3     us.

4          MR. LADNER:  This is Tom Ladner, I appreciate that,

5     but I don't know what to do about our deadlines in this case

6     which I don't think the D.C. Court is going to be particularly

7     concerned about because it is dealing with subpoenas from, you

8     know, from three or four cases and --

9          THE COURT:  And I don't know what the, what your --

10    how firm your schedule is in this case.

11         MR. LADNER:  You know, Your Honor, I don't know

12    either.  I know from my perspective, and I can only speak for

13    Mr. Martin, is that this, this filing of this case by the CFTC

14    has turned his life upside down and so, you know, he's gotten

15    negative press both locally and nationally, just based on the

16    mere allegation.  So his intent or my instructions from him are

17    is to try and keep this on track.

18         MR. CORDELL:  Likewise for Mr. Martin -- Mr. Bradley.

19         THE COURT:  Well, you know, that doesn't surprise me.

20    My real question was are we better off, you know, even from

21    your perspective, are you better off having this -- if you can

22    get involved in the D.C. situation, are you better off having

23    one judge handle this or not, and I guess that's really your

24    call.  I technically, at this point, don't have a motion to

25    compel in front of me and I'm not in a position that I would

                                                              30

5 COMMODITY FUTURES V. BRADLEY 1106.txt

1    force, you know, McGraw-Hill to expedite this matter, you know,
2    in any way to try and get this thing resolved for a Monday
3    deposition.  I just don't think that would be fair to
4    McGraw-Hill to get them on the phone on Thursday and say we're
5    going to decide this issue, which is apparently a large issue
6    to them, you know, tomorrow.  But if you want an expedited
7    for -- to try and get it resolved before the end of the month,
8    that's certainly something I could get done for you, if you'd
9    rather do that than be involved in the --
10           MS. FOLEY:  Your Honor, may I say something for a
11   moment?
12           THE COURT:  Yes, ma'am.
13           MS. FOLEY:  In terms of -- in terms of, as I stated, I
14   think that McGraw-Hill's preference is, to the extent we can,
15   to be able to resolve these, all these issues in one court.  If
16   there is an inclination though to hear a motion that may be
17   brought by the defendants, I might suggest that if this Court
18   is going to hear that, that -- and I'm not, I haven't
19   researched this or I don't know the -- the -- the basis behind
20   it, but it, I would, McGraw-Hill would strongly prefer it to
21   have, if we're going to hear one thing before the Court, that
22   we hear the CFTC's motion before this Court as well, at least
23   as it concerns this particular case.  Now maybe that's
24   something I need to raise with the D.C. Court.
25           THE COURT:  I certainly couldn't answer that right

                                                              31

1    now.  So my only, my only real suggestion is, I guess two
2    things.  From my view of what my memory is of this case, this
3    protective order that I entered was not intended to bind the
4    plaintiff who wasn't a party to it.  So if that -- that was our
                              Page 26

5 COMMODITY FUTURES V. BRADLEY 1106.txt

5   first issue we were supposed to talk about today was the

6   protective order.  That's the way I viewed the protective order

7   when I entered it.  That's why it was entered so fast.

8           Secondly, if you, you defendants want to move the ball

9   forward in this Court as opposed to joining in somehow in the

10  D.C. Court, I'm going to need to have before me a motion to

11  compel, if that's how, if that's the -- and there the best

12  thing to do would be to narrow that down with McGraw-Hill so

13  that we're not fighting about the scope of the subpoena, we're

14  fighting about the real issue, that is the protective order, if

15  you all can do that.  And I would put that on a relatively

16  expedited basis.  I mean, I would give the other side a week or

17  so to respond and then we would get it either set for a hearing

18  or I'd decide it on the papers, you know, by the end of the

19  month.

20          So I guess the ball's in your court, Mr. Ladner and

21  Mr. Cordell.

22          MR. CORDELL:  Judge, I'll have that motion to compel

23  filed.  Given the history of our conference call, I'll keep it

24  pretty succinct since the Court knows what the issues are.

25          THE COURT:  All right.  And I do think it would be

                                                              32

1   helpful, or I know it would be helpful to me if what I was

2   deciding was the protective order issue as opposed to having to

3   decide a number of disputes about the scope of the subpoena.

4   So if you and McGraw-Hill can talk before you file your motion,

5   Mr. Cordell, to see if you can't make that as narrow as

6   possible.

7           MR. CORDELL:  Okay.

8           THE COURT:  So that I'm not fighting about

Page 27

5 COMMODITY FUTURES V. BRADLEY 1106.txt

9   theoretical, the scope of the subpoena, if you know what it is
10  you really want.  And of course, the plaintiff will have the
11  opportunity to respond to that motion because the protective is
12  the real issue.
13      Mr. Garcia, would filing a response within a week be
14  reasonable from your schedule?
15      MR. GARCIA:  Yes, Your Honor.
16      THE COURT:  Okay.  Why don't we then, Mr. Cordell and
17  Mr. Ladner, if you get your motion on file, serve it on both
18  McGraw-Hill and the plaintiff in this case and I'll give
19  McGraw-Hill and the plaintiff one week or seven days to respond
20  to that.  After I see their response, I'll either set a hearing
21  promptly or notify you that we won't be setting a hearing and
22  we'll be resolving the matter on the papers.
23      MR. CORDELL:  Thank you, Judge.
24      THE COURT:  Anybody have any other suggestions before
25  we end this conference call?  Mr. Ladner, Mr. Cordell?

                                                    33

1       MR. LADNER:  Nothing from me, Your Honor.
2       THE COURT:  Mr. Garcia?
3       MR. GARCIA:  Nothing from us, Your Honor.
4       THE COURT:  Ms. Foley, anything else from your
5   perspective?
6       MS. FOLEY:  From my perspective I will say that I need
7   to now look into the notion if we're going to hear it before
8   this Court, I may attempt to raise the issue before the D.C.
9   Court to see if I can have, at least all issues with regard to
10  this case, before Your Honor as opposed to separating, having
11  two different decisions in one case.
12      THE COURT:  That certainly makes sense to me and I
13  don't see that I would have any way to tell the -- that court,
                              Page 28

5 COMMODITY FUTURES V. BRADLEY 1106.txt

14  since it has a larger problem than apparently what I have, I
15  don't think that I could be of any assistance in informing that
16  judge, but it certainly wouldn't hurt to tell that judge that
17  they could get rid of at least a part of it and send it to
18  Tulsa.
19        MS. FOLEY:  Okay.  To the extent I could have a
20  transcript then made of this so I at least have this, the
21  transcript of this -- or maybe just an order directing the
22  briefing schedule would be sufficient so I could provide that
23  to the court.
24        THE COURT:  Well, we don't have the motion yet.  But
25  yes, we'll get you a cop of our minute showing that the

                                                              34


1   defendants are going to promptly file a motion to compel and
2   that the defendants (sic) and McGraw-Hill will be given seven
3   days thereafter to file their responses.
4         MS. FOLEY:  Thank you.
5         THE COURT:  We'll get that to you.  Have you entered
6   an appearance in this case, ma'am?
7         MS. FOLEY:  I don't think I have.  I have a local
8   counsel actually who's standing by.
9         THE COURT:  Oh, that's right.
10        MS. FOLEY:  Maybe I could call your counsel -- your
11  Court, your chambers back and give the information.
12        THE COURT:  We'll just get that down to Mr. Leitch and
13  Ms. McClanahan.
14        MS. FOLEY:  Okay.
15        THE COURT:  They can forward it.
16        MS. FOLEY:  They're -- well --
17        MR. GARCIA:  Your Honor.
                        Page 29

5 COMMODITY FUTURES V. BRADLEY 1106.txt

18          THE COURT:  Yes.

19          MR. GARCIA:  I'd like to clarify, Ms. McClanahan and

20  Mr. Leitch --

21          THE COURT:  Oh, they're with you.

22          MR. GARCIA:  -- are on behalf of the United States.

23          THE COURT:  I've got the wrong -- I'm sorry.

24          MR. GARCIA:  (Inaudible).

25          MR. CORDELL:  Carolyn's counsel, local counsel is --

                                                              35


1           MS. FOLEY:  Sid Dunagan.

2           MR. CORDELL:  Sid Dunagan in Oklahoma City.

3           THE COURT:  We'll get this minute over to all the

4   lawyers in the case today.  And Mr. Cordell since -- you and

5   Mr. Ladner make sure that it gets over to Ms. Foley.

6           MR. LADNER:  We will.

7           THE COURT:  Just make sure that happens today.  All

8   right?

9           MS. FOLEY:  Thank you, Your Honor.

10          THE COURT:  All right, thank you all.

11          MR. LADNER:  Thank you, Judge.  Bye-bye.

12          (Recess).

13

14          A TRUE AND CORRECT TRANSCRIPT.

15

16          CERTIFIED:    s/ Glen R. Dorrough
                          Glen R. Dorrough
17                        United States Court Reporter

18

19

20

21

22
                          Page 30

5 COMMODITY FUTURES V. BRADLEY 1106.txt

23

24

25

# EXHIBIT 2

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

April 25, 2006

**CONFIDENTIAL TREATMENT REQUESTED
BY THE McGRAW-HILL COMPANIES, INC.
PURSUANT TO 17 CFR 145.9(d)(4)**

Anthony Mansfield, Esq.
Chief Trial Attorney
U.S. Commodity Futures Trading Commission
Enforcement Division
Three Lafayette Center
1155 21st Street NW
Washington, DC 20581
Re: *In re: Investigation of Energy Company*

Michael J. Otten, Esq.
Chief Trial Attorney
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, D.C. 20581
Re:    *CFTC v. Andrew Richmond*
Re:    *CFTC v. Michael Whitney*

James A. Garcia, Esq.
U.S. Commodity Futures Trading Commission
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581
Re:    *CFTC v. Bradley and Martin*

David W. MacGregor, Esq.
U.S. Commodity Futures Trading Commission
140 Broadway
New York, NY 10005
Re:    *CFTC v. Joseph P. Foley*

Kathleen M. Banar, Esq.
Chief Trial Attorney
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Re: *CFTC v. Paul Atha, et al.*

Dear Tony, Mike, James, David and Kathleen:

I write to each of you because The McGraw-Hill Companies, Inc. either has received or has been told to expect to receive subpoenas seeking documents in the captioned matters. In some of the captioned actions, McGraw-Hill has also received requests for depositions of certain present or former employees. I write here with three purposes in mind.

April 25, 2006
Page 2



First, with regard to the requests for depositions of McGraw-Hill employees, please be advised that McGraw-Hill will assert, as applicable, the same privilege and trade secret objections which McGraw-Hill has asserted as to the document subpoenas. In making such objections at the depositions, we will take into consideration any waivers of privilege that may have been made, or will here after be made, by the specific defendants and energy companies involved in each case. In addition, in making its objections, McGraw-Hill will consider whether a protective order that preserves the confidentiality of McGraw-Hill's privileged material and its trade secrets is available.

Second, I write because we believe that, even setting aside the issues of privilege and protective order, it is highly burdensome and disruptive to McGraw-Hill's business to have its employees be subject to numerous deposition requests in the several cases listed above and, perhaps, more to come in the future. We believe that McGraw-Hill, as a third party, is entitled to some protection and some consideration and effort to minimize the burden on its employees and, in some cases, former employees. Accordingly, while McGraw-Hill will not object to making one witness available for deposition in each of the captioned cases, we will object to being required to provide more than one witness in any given case. To the extent the need for deposition stems from the need to authenticate documents or any other matter that can be covered by declaration, McGraw-Hill is willing to work with counsel to draft language for such declarations. In this regard, we agree to work with the CFTC and counsel for the defendants in each of the captioned cases to identify the appropriate witness for declaration and deposition.

Thirdly, and related to the second point, I write to ask that the CFTC consider implementing a procedure that would consolidate all issues relating to the depositions of McGraw-Hill employees that may be necessary in the various pending cases. The threatened expenses of time and cost to be incurred by McGraw-Hill in assisting in producing current and former employees has grown exponentially in just the last few weeks. To take the example of Thomas Haywood, a former Gas Daily employee, we have already received requests for his deposition in both the case pending in Oklahoma against Mr. Bradley and Mr. Martin and in the case pending in the Southern District of Texas against Mr. Whitney. Mr. Haywood is no longer employed by McGraw-Hill and to ask him to take the time to be prepared for and to sit for depositions on numerous occasions will place an unreasonable strain on him. Likewise, it is unreasonable to impose upon McGraw-Hill the costs and effort associated with requiring counsel supplied for Mr. Haywood by McGraw-Hill to travel to Houston several times in order to prepare Mr. Haywood for and defend numerous depositions. The situation is simply untenable. Since Mr. Haywood is the first to be subject to such requests, and since we have already agreed to make him available for deposition on May 15, I request that the CFTC consider notifying all defendants who may wish to depose Mr. Haywood that he will be made available for deposition on May 15, in Houston, at 1 p.m. We envision a procedure by which the counsel representing parties in each case appear and take his deposition consecutively (not at the same time). If there are more than two cases that need to depose Mr. Haywood, we would be willing, subject to Mr. Haywood's schedule, to carry over to the morning of May 16.

April 25, 2006
Page 3



     I hope that we can work together in these matters to facilitate production of documents and witnesses in a mutually acceptable manner and I look forward to a response.

           Sincerely,

           Carolyn K. Foley

CKF:AK

# EXHIBIT 3

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

March 15, 2006

**CONFIDENTIAL OFFER MADE FOR**
**PURPOSES OF SETTLEMENT ONLY**
**CONFIDENTIAL TREAMENT REQUESTED**
**BY THE McGRAW-HILL COMPANIES, INC.**
**PURUSANT TO 17 CFR 145.9(d)(4)**

James A. Garcia, Esq.
United States Commodity Futures Trading Commission
1155 21st Street, NW
Washington, D.C. 20581

Re:     *CFTC v. Jeffrey A. Bradley and Robert L. Martin*
        (N.D. Okla. 4:05-cv-00062-JHP-FHM)

Dear James:

Pursuant to our conversations regarding the February 21, 2006 subpoena ("Subpoena") you have issued to McGraw-Hill in connection with the captioned action ("Action"), and in order to avoid litigation over the proper scope of the Subpoena, McGraw-Hill proposes to respond to the Subpoena in the following manner.

In response to **Request 1**, McGraw-Hill will undertake a reasonable search of its *Gas Daily* files for the time period and to produce any documents in its possession responsive to Request 1.[1] McGraw-Hill's response to Request 1 will be limited to *Gas Daily* because, as you

---

[1]     Before Platts acquired *Gas Daily* in September 2001, it is my understanding that the publication routinely discarded the information submitted by the energy company traders. And although after the acquisition, Platts informed *Gas Daily* reporters of Platts' preference for retaining the reports made by energy company traders, it is my understanding that, at least during a transition period that lasted well into 2002, *Gas Daily* reporters largely continued their

James A. Garcia, Esq.
March 15, 2006
Page 2



have indicated and as I have noted in reviewing the complaint in the captioned Action, the CFTC's claims against Mr. Bradley and Mr. Martin focus on alleged misreporting of trade data to *Gas Daily*. Accordingly, the monthly submissions by CMS Field Services, Inc. ("CMS") to *Inside FERC Gas Market Report* are not relevant to the Action and the reporter's privilege cannot be overcome with regard to such submissions.[2]

    The documents produced pursuant to Request 4 will be produced in satisfaction of **Request 2**.

    The documents produced pursuant to Requests 1 and 4 will be produced in satisfaction of **Request 3**.

    With respect to **Request 4,** you should know that until November 4, 2002, the computer system used to create the *Gas Daily* indices was not set up in such a way to keep track of the source of each item of data considered in creating the indices.   In other words, for all daily indices published before November 2002, *Gas Daily* simply does not have records that would enable McGraw-Hill, the CFTC – or anyone else – to retroactively match the data considered in connection with the creation of the *Gas Daily* indices with the source that provided it.  So with regard to the *Gas Daily* indices, McGraw-Hill is unable to identify which documents, if any, in its possession might be responsive to this request and therefore has nothing to produce.

    The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 5.**

    With respect to **Request 6**, McGraw-Hill will produce the indices as published in *Gas Daily* and *Inside FERC Gas Market Report* for the time period of the Subpoena (December 1, 2000 through October 14, 2002).

    The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 7.**

    With respect to **Request 8**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Gas Daily* were derived during the time period.

    With respect to **Request 9**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Inside FERC Gas Market Report* were derived during the time period.

---

previous practices of discarding the daily trade reports.
[2]     The reporter's privilege applies to those requests that seek documents reflecting or concerning CMS's submissions of trade data to *Inside FERC Gas Market Report* and McGraw-Hill asserts that privilege and declines to produce those documents.

James A. Garcia, Esq.
March 15, 2006
Page 3



     With respect to **Request 10**, McGraw-Hill will perform a reasonable search for and produce a representative sampling of the reporting instructions, if any, that were regularly sent out during the time period by reporters and editors for *Gas Daily* and *Inside FERC Gas Market Report* and were intended to be used by those reporting trade data to *Gas Daily* or *Inside FERC Gas Market Report*. Because of the manner in which these email notices were sent, however, we are unable to identify the specific recipients of these email reminders.

     With respect to **Request 11**, McGraw-Hill will undertake to conduct a reasonable search for responsive documents and will produce any non-privileged responsive documents that may be found.

     As set forth in McGraw-Hill's Responses and Objections to the Subpoena, all documents to be produced by McGraw-Hill will be produced subject to the entry of the Stipulated Protective Order attached to the Objections.

                       Sincerely,

                       Carolyn K. Foley

# EXHIBIT 4

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

March 15, 2006

**CONFIDENTIAL OFFER MADE FOR
PURPOSES OF SETTLEMENT ONLY
CONFIDENTIAL TREAMENT REQUESTED
BY THE McGRAW-HILL COMPANIES, INC.
PURUSANT TO 17 CFR 145.9(d)(4)**

David W. MacGregor, Esq.
United States Commodity Futures Trading Commission
140 Broadway
New York, NY 10005

Re:    *CFTC v. Joseph P. Foley* (S.D. Ohio 2:05-cv-849)

Dear David:

Pursuant to our conversations regarding the February 21, 2006 subpoena ("Subpoena") you have issued to McGraw-Hill in connection with the captioned action ("Action"), and in order to avoid litigation over the proper scope of the Subpoena, McGraw-Hill proposes to respond to the Subpoena in the following manner.

In response to **Request 1**, McGraw-Hill will undertake a reasonable search of its *Gas Daily* files for the time period and to produce any documents in its possession responsive to Request 1.[1]  McGraw-Hill will provide the CFTC with a list of the trade data associated with AEP as considered in the determination of the natural gas index prices published in *Inside FERC Gas Market Report*.  The CFTC can compare this list to the records of AEP'S actual trading activity (which we assume the CFTC has obtained from AEP).  For those dates and pricing

---

[1]    Before Platts acquired *Gas Daily* in September 2001, it is my understanding that the publication routinely discarded the information submitted by the energy company traders.  And although after the acquisition, Platts informed *Gas Daily* reporters of Platts' preference for retaining the reports made by energy company traders, it is my understanding that, at least during a transition period that lasted well into 2002, *Gas Daily* reporters largely continued their previous practices of discarding the daily trade reports.

David W. MacGregor, Esq.
March 15, 2006
Page 2



points as to which the CFTC certifies that discrepancies are found, McGraw-Hill will undertake a reasonable search of its records for the document(s) that reflect the data submitted by AEP for the affected pricing point on the identified date and will produce any such document still in its possession.

The documents produced pursuant to Request 4 will be produced in satisfaction of **Request 2.**

The documents produced pursuant to Requests 1 and 4 will be produced in satisfaction of **Request 3.**

With respect to **Request 4,** you should know that until November 4, 2002, the computer system used to create the *Gas Daily* indices was not set up in such a way to keep track of the source of each item of data considered in creating the indices. In other words, for all daily indices published before November 2002, *Gas Daily* simply does not have records that would enable McGraw-Hill, the CFTC – or anyone else – to retroactively match the data considered in connection with the creation of the *Gas Daily* indices with the source that provided it. So with regard to the *Gas Daily* indices, McGraw-Hill is unable to identify which documents, if any, in its possession might be responsive to this request and therefore has nothing to produce.

McGraw-Hill will produce redacted copies of the spreadsheets that reflect the data considered in the determination of the natural gas index prices, as published in *Inside FERC Gas Market Report*, for the specific pricing points and dates on which the CFTC certifies that it has a good faith belief that AEP submitted false trade data to *Inside FERC Gas Market Report*. (It is anticipated that after receiving the information provided pursuant to Request 1, the CFTC will be able to compare the trade data submitted by AEP to the records of AEP's actual trading records and thereby identify which submissions contained false information. The spreadsheets produced pursuant to this request will be redacted to protect the continued confidentiality of the sources who are not the subject of the underlying Action.

The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 5.**

With respect to **Request 6,** McGraw-Hill will produce the indices as published in *Gas Daily* and *Inside FERC Gas Market Report* for the time period of the Subpoena (October 1, 2000 through October 31, 2002).

The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 7.**

With respect to **Request 8,** McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Gas Daily* were derived during the time period.

NYC 166786v1 3930059-27

David W. MacGregor, Esq.
March 15, 2006
Page 3



    With respect to **Request 9**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Inside FERC Gas Market Report* were derived during the time period.

    With respect to **Request 10**, McGraw-Hill will perform a reasonable search for and produce a representative sampling of the reporting instructions, if any, that were regularly sent out during the time period by reporters and editors for *Gas Daily* and *Inside FERC Gas Market Report* and were intended to be used by those reporting trade data to *Gas Daily* or *Inside FERC Gas Market Report*. Because of the manner in which these email notices were sent, however, we are unable to identify the specific recipients of these email reminders.

    As set forth in McGraw-Hill's Responses and Objections to the Subpoena, all documents to be produced by McGraw-Hill will be produced subject to the entry of the Stipulated Protective Order attached to the Objections.

                Sincerely,

                Carolyn K. Foley

# EXHIBIT 5

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

March 15, 2006

**CONFIDENTIAL OFFER MADE FOR
PURPOSES OF SETTLEMENT ONLY
CONFIDENTIAL TREAMENT REQUESTED
BY THE McGRAW-HILL COMPANIES, INC.
PURUSANT TO 17 CFR 145.9(d)(4)**

Michael J. Otten, Esq.
Chief Trial Attorney
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, D.C. 20581

Re:    *CFTC v. Andrew Richmond* (D. Colo. 05-F-668 (OES))

Dear Mike:

Pursuant to our conversations regarding the February 6, 2006 subpoena ("Subpoena") you have issued to McGraw-Hill in connection with the captioned action ("Action"), and in order to avoid litigation over the proper scope of the Subpoena, McGraw-Hill proposes to respond to the Subpoena in the following manner.

In response to **Request 1**, McGraw-Hill will undertake a reasonable search of its *Gas Daily* files for the time period and to produce any documents in its possession responsive to Request 1.[1]  McGraw-Hill's response to Request 1 will be limited to *Gas Daily* because, as you

---

[1]    Before Platts acquired *Gas Daily* in September 2001, it is my understanding that the publication routinely discarded the information submitted by the energy company traders.  And although after the acquisition, Platts informed *Gas Daily* reporters of Platts' preference for retaining the reports made by energy company traders, it is my understanding that, at least during a transition period that lasted well into 2002, *Gas Daily* reporters largely continued their

NYC 166784v1 3930059-27

Michael J. Otten, Esq.
March 15, 2006
Page 2



have indicated and as I have noted in reviewing the complaint in the captioned Action, the CFTC's claims against Mr. Richmond focus on alleged misreporting of trade data to *Gas Daily*. Accordingly, the monthly submissions by Western Gas Resources, Inc. ("Western") to *Inside FERC Gas Market Report* are not relevant to the Action and the reporter's privilege cannot be overcome with regard to such submissions.[2]

If, however, the CFTC provides McGraw-Hill with a written certification that it has a good faith basis to believe that Mr. Richmond submitted or caused to be submitted false trade data to *Inside FERC Gas Market Report*, McGraw-Hill will provide the CFTC with a list of the trade data considered in the determination of the natural gas index prices published in *Inside FERC Gas Market Report*. The CFTC can compare this list to the records of Western's actual trading activity (which we assume the CFTC has obtained from Western). For those dates and pricing points as to which the CFTC certifies that discrepancies are found, McGraw-Hill will undertake a reasonable search of its records for the document(s) that reflect the data submitted by Western for the affected pricing point on the identified date and will produce any such document still in its possession.

The documents produced pursuant to Request 4 will be produced in satisfaction of **Request 2**.

The documents produced pursuant to Requests 1 and 4 will be produced in satisfaction of **Request 3**.

With respect to **Request 4,** you should know that until November 4, 2002, the computer system used to create the *Gas Daily* indices was not set up in such a way to keep track of the source of each item of data considered in creating the indices. In other words, for all daily indices published before November 2002, *Gas Daily* simply does not have records that would enable McGraw-Hill, the CFTC – or anyone else – to retroactively match the data considered in connection with the creation of the *Gas Daily* indices with the source that provided it. So with regard to the *Gas Daily* indices, McGraw-Hill is unable to identify which documents, if any, in its possession might be responsive to this request and therefore has nothing to produce.

To the extent that the CFTC certifies with regard to Request 1 that it has reason to believe that Mr. Richmond submitted false information to *Inside FERC Gas Market Report* and thereafter certifies that it has identified certain pricing points and dates on which the CFTC has a good faith belief that Western submitted false trade data to *Inside FERC Gas Market Report*, McGraw-Hill will produce redacted copies of the spreadsheets that reflect the data considered in the determination of the natural gas index prices, as published in *Inside FERC Gas Market*

---

previous practices of discarding the daily trade reports.
[2] The reporter's privilege applies to those requests that seek documents reflecting or concerning Western's submissions of trade data to *Inside FERC Gas Market Report* and McGraw-Hill asserts that privilege and declines to produce those documents.

Michael J. Otten, Esq.
March 15, 2006
Page 3



*Report*, for the specific pricing points and dates identified by the CFTC. The spreadsheets will be redacted to protect the continued confidentiality of the sources who are not the subject of the underlying Action.

The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 5**.

With respect to **Request 6**, McGraw-Hill will produce the indices as published in *Gas Daily* and *Inside FERC Gas Market Report* for the time period of the Subpoena (April 1, 2000 through February 28, 2001).

The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 7**.

With respect to **Request 8**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Gas Daily* were derived during the time period.

With respect to **Request 9**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Inside FERC Gas Market Report* were derived during the time period.

With respect to **Request 10**, McGraw-Hill will perform a reasonable search for and produce a representative sampling of the reporting instructions, if any, that were regularly sent out during the time period by reporters and editors for *Gas Daily* and *Inside FERC Gas Market Report* and were intended to be used by those reporting trade data to *Gas Daily* or *Inside FERC Gas Market Report*. Because of the manner in which these email notices were sent, however, we are unable to identify the specific recipients of these email reminders.

As set forth in McGraw-Hill's Responses and Objections to the Subpoena, all documents to be produced by McGraw-Hill will be produced subject to the entry of the Stipulated Protective Order attached to the Objections.

Sincerely,

Carolyn K. Foley

Carolyn K. Foley

NYC 166784v1 3930059-27

# EXHIBIT 6

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

March 15, 2006

**CONFIDENTIAL OFFER MADE FOR**
**PURPOSES OF SETTLEMENT ONLY**
**CONFIDENTIAL TREAMENT REQUESTED**
**BY THE McGRAW-HILL COMPANIES, INC.**
**PURUSANT TO 17 CFR 145.9(d)(4)**

Michael J. Otten, Esq.
Chief Trial Attorney
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, D.C.  20581

Re:    *CFTC v. Michael Whitney* (S.D. Tex. 4:05-cv-00333)

Dear Mike:

Pursuant to our conversations regarding the February 21, 2006 subpoena ("Subpoena") you have issued to McGraw-Hill in connection with the captioned action ("Action"), and in order to avoid litigation over the proper scope of the Subpoena, McGraw-Hill proposes to respond to the Subpoena in the following manner.

In response to **Request 1**, McGraw-Hill will undertake a reasonable search of its *Gas Daily* files for the time period and to produce any documents in its possession responsive to Request 1.[1]  McGraw-Hill's response to Request 1 will be limited to *Gas Daily* because, as you

---

[1]     Before Platts acquired *Gas Daily* in September 2001, it is my understanding that the publication routinely discarded the information submitted by the energy company traders.  And although after the acquisition, Platts informed *Gas Daily* reporters of Platts' preference for retaining the reports made by energy company traders, it is my understanding that, at least during

Michael J. Otten, Esq.
March 15, 2006
Page 2



have indicated and as I have noted in reviewing the complaint in the captioned Action, the CFTC's claims against Mr. Whitney focus on alleged misreporting of trade data to *Gas Daily*. Accordingly, the monthly submissions by Duke Energy Corporation ("Duke") to *Inside FERC Gas Market Report* are not relevant to the Action and the reporter's privilege cannot be overcome with regard to such submissions.[2]

The documents produced pursuant to Request 4 will be produced in satisfaction of **Request 2.**

The documents produced pursuant to Requests 1 and 4 will be produced in satisfaction of **Request 3.**

With respect to **Request 4**, you should know that until November 4, 2002, the computer system used to create the *Gas Daily* indices was not set up in such a way to keep track of the source of each item of data considered in creating the indices. In other words, for all daily indices published before November 2002, *Gas Daily* simply does not have records that would enable McGraw-Hill, the CFTC – or anyone else – to retroactively match the data considered in connection with the creation of the *Gas Daily* indices with the source that provided it. So with regard to the *Gas Daily* indices, McGraw-Hill is unable to identify which documents, if any, in its possession might be responsive to this request and therefore has nothing to produce.

The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 5.**

With respect to **Request 6**, McGraw-Hill will produce the indices as published in *Gas Daily* and *Inside FERC Gas Market Report* for the time period of the Subpoena (June 1, 2001 through August 31, 2002).

The documents produced pursuant to Requests Nos. 1 and 4 will be produced in satisfaction of **Request 7.**

With respect to **Request 8**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices published in *Gas Daily* were derived during the time period.

With respect to **Request 9**, McGraw-Hill will perform a reasonable search for and produce all versions of the published methodology by which the natural gas index prices

---

a transition period that lasted well into 2002, *Gas Daily* reporters largely continued their previous practices of discarding the daily trade reports.
[2]     The reporter's privilege applies to those requests that seek documents reflecting or concerning Duke's submissions of trade data to *Inside FERC Gas Market Report* and McGraw-Hill asserts that privilege and declines to produce those documents.

Michael J. Otten, Esq.
March 15, 2006
Page 3



published in *Inside FERC Gas Market Report* were derived during the time period.

With respect to **Request 10**, McGraw-Hill will perform a reasonable search for and produce a representative sampling of the reporting instructions, if any, that were regularly sent out during the time period by reporters and editors for *Gas Daily* and *Inside FERC Gas Market Report* and were intended to be used by those reporting trade data to *Gas Daily* or *Inside FERC Gas Market Report*. Because of the manner in which these email notices were sent, however, we are unable to identify the specific recipients of these email reminders.

With respect to **Request 11**, McGraw-Hill will undertake a reasonable search of any of Mr. Heywood's email still in its custody and control for responsive documents and produce any non-privileged documents that may be found.

As set forth in McGraw-Hill's Responses and Objections to the Subpoena, all documents to be produced by McGraw-Hill will be produced subject to the entry of the Stipulated Protective Order attached to the Objections.

Sincerely,

Carolyn K. Foley

# EXHIBIT 7

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

April 19, 2006

**CONFIDENTIAL COMMUNICATION MADE FOR
PURPOSES OF SETTLEMENT ONLY
CONFIDENTIAL TREAMENT REQUESTED
BY THE McGRAW-HILL COMPANIES, INC.
PURUSANT TO 17 CFR 145.9(d)(4)**

**(VIA FACSIMILE: 202-418-5523)**

James A. Garcia, Esq.
U.S. Commodity Futures Trading Commission
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581

Re:   **CFTC v. Bradley and Martin (4:05-cv-00062-JHP-FHM)**

Dear James:

This letter responds to certain issues raised in our telephone conversation of Thursday, April 13, 2006 concerning my letter to you of March 15, 2006.

With regard to Request No. 1, given your representation that the charges of false reporting in the case against Messers. Bradley and Martin do involve charges of false reporting to both *Gas Daily* and *Inside FERC Gas Market Report*, we will agree to amend our response to Request No. 1. Accordingly, in response to Request No. 1, McGraw-Hill will provide the CFTC with a list of the trade data associated with CMS as considered in the determination of the natural gas index prices published in *Inside FERC Gas Market Report*. The CFTC can compare this list to the records of CMS's actual trading activity (which we assume the CFTC has obtained from CMS). For those dates and pricing points as to which the CFTC certifies that discrepancies are found, McGraw-Hill will undertake a reasonable search of its records for the document(s) that reflect the data submitted by CMS for the affected pricing point on the identified date and will produce any such document still in its possession.

Similarly, based on your representation that charges of misreporting concern *Inside FERC Gas Market Report*, McGraw-Hill will produce, in response to Request No. 4, redacted copies of the spreadsheets that reflect the data considered in the determination of the natural gas

James A. Garcia, Esq.
April 19, 2006
Page 2



index prices, as published in *Inside FERC Gas Market Report*, for the specific pricing points and dates on which the CFTC certifies that it has a good faith belief that CMS submitted false trade data to *Inside FERC Gas Market Report*. (It is anticipated that after receiving the information provided pursuant to Request 1, the CFTC will be able to compare the trade data submitted by CMS to the records of CMS's actual trading records and thereby identify which submissions contained false information.) The spreadsheets produced pursuant to this request will be redacted to protect the continued confidentiality of the sources who are not the subject of the underlying Action.

Also based on your representation that the allegations of misreporting involved *Inside FERC Gas Market Report*, we will agree to produce, in response to Request No. 6, published price indices for the relevant time period as published in *Gas Daily* and *Inside FERC Gas Market Report* and, in response to Request No. 9, we will produce the methodologies for *Inside FERC Gas Market Report*.

Turning to the observations that Request Nos. 3, 5 and 7 have a broader scope than Request Nos. 1 and 4, I respectfully submit that the proposed production laid out in my March 15, 2006 letter, as modified above, provides the CFTC with the information that is highly material and necessary and critical to its case. To the extent that the information sought by Requests 3, 5 and 7 exceed requests 1 and 4, they seek peripheral information that is simply not necessary for to prosecute or defend the case. For example, whether or not anyone complained about CMS's submissions (as would be called for by Requests 3 and 7, which do seem duplicative) is beside the point: McGraw-Hill's proposed production will provide the CFTC with all the information necessary to determine whether or not the information submitted was false and whether or not that false information was considered in the course of determining any given index price. Similarly, documents that might reflect the thoughts and impressions of Platts' reporters or editors are similarly ancillary, at best, to the direct evidence of whether or not a submission was false. As Judge Lamberth noted in his decision directing compliance with a CFTC administrative subpoena, even in the context of an investigatory subpoena, McGraw-Hill should not be required to "cull its files for data submitted by other energy companies" and that the CFTC's subpoena should be limited to documents "received from Energy Company" under investigation. *See U.S. Commodity Futures Trading Com'n v. McGraw-Hill Companies, Inc.*, 390 F.Supp.2d 27, 36 (D.D.C. 2005).

I hope that this addresses the concerns that you have raised and I look forward to your response about modifications that the CFTC would propose to the protective order.

Sincerely,

Carolyn K. Foley

cc:    David W. MacGregor, Esq.
       Michael J. Otten, Esq.
       Anthony Mansfield, Esq.

# EXHIBIT 8

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CAROLYN K. FOLEY
DIRECT (212) 603-6472
carolynfoley@dwt.com

1633 BROADWAY
NEW YORK, NY 10019-6708

TEL (212) 489-8230
FAX (212) 489-8340
www.dwt.com

April 19, 2006

**CONFIDENTIAL OFFER MADE FOR
PURPOSES OF SETTLEMENT ONLY
CONFIDENTIAL TREAMENT REQUESTED
BY THE McGRAW-HILL COMPANIES, INC.
PURUSANT TO 17 CFR 145.9(d)(4)**

David W. MacGregor, Esq.
United States Commodity Futures Trading Commission
140 Broadway
New York, NY 10005

Re:    *CFTC v. Joseph P. Foley* (S.D. Ohio 2:05-cv-849)

Dear David:

This letter addresses the issues raised in our April 13, 2006 telephone conversation held to discuss my letter to you of March 15, 2006. I propose to address your concern that our proposed method of responding to **Request 1** won't provide you with all the submissions made by AEP traders in the following manner. First, our proposed production will provide the CFTC with all of the data associated with AEP that was considered as part of the process of determining any of *Inside FERC's* published index prices. This will allow the CFTC to compare the data received from AEP with AEP's trading records to identify instances of false reporting. Once the days and hubs for which false information was submitted – if any – are identified, McGraw-Hill will undertake a reasonable search for the actual submissions received from AEP for the hubs and dates involved. If, in the course of making this determination, you either have reason to believe that you are missing major instances of mis-reporting or you have trading data from AEP that does not appear to have been transmitted to *Inside FERC Gas Market Report*, we can perform a similar search for submissions for such dates/hubs for which you think information is missing.

Turning to the observations made by your colleague, James Garcia, that Request Nos. 3, 5 and 7 have a broader scope than Request Nos. 1 and 4, I respectfully submit that the proposed production laid out in my March 15, 2006 letter, as modified above, provides the CFTC with the

David W. MacGregor, Esq.
April 19, 2006
Page 2



information that is highly material and necessary and critical to its case. To the extent that the information sought by Requests 3, 5 and 7 exceed requests 1 and 4, they seek peripheral information that is simply not necessary for to prosecute or defend the case. For example, whether or not anyone complained about CMS's submissions (as would be called for by Requests 3 and 7, which do seem duplicative) is beside the point: McGraw-Hill's proposed production will provide the CFTC with all the information necessary to determine whether or not the information submitted was false and whether or not that false information was considered in the course of determining any given index price. Similarly, documents that might reflect the thoughts and impressions of Platts' reporters or editors are similarly ancillary, at best, to the direct evidence of whether or not a submission was false. As Judge Lamberth noted in his decision directing compliance with a CFTC administrative subpoena, even in the context of an investigatory subpoena, McGraw-Hill should not be required to "cull its files for data submitted by other energy companies" and that the CFTC's subpoena should be limited to documents "received from Energy Company" under investigation. *See U.S. Commodity Futures Trading Com'n v. McGraw-Hill Companies, Inc.*, 390 F.Supp.2d 27, 36 (D.D.C. 2005).

I hope that this addresses the concerns that you have raised and I look forward receiving a response from you or Mr. Garcia, about modifications that the CFTC would propose.

Sincerely,

Carolyn K. Foley

cc:    James A. Garcia, Esq.
       Michael J. Otten, Esq.
       Anthony Mansfield, Esq.