UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL WHITNEY ET AL,<br><br>    Defendants | Case No. 1:06-mc-00210 (RCL)<br><br>**DECLARATION OF<br>CAROLYN K. FOLEY** |

    1.    I am a partner in the firm of Davis Wright Tremaine LLP, attorneys for respondent The McGraw-Hill Companies, Inc. ("McGraw-Hill") in this action. I make this declaration in opposition to the CFTC's Consolidated Motion to Compel asserted against McGraw-Hill and in support of McGraw-Hill's Cross-Motion for a Protective Order. The information set forth herein is based on my familiarity with these and related proceedings and the files related thereto and my review of prior sworn statements made in related cases.

    2.    During the course of my representation of McGraw-Hill, I have learned that Platts publishes both *Gas Daily* and *Inside FERC*. Copies of issues of *Inside FERC* and *Gas Daily* are attached hereto as **Exhibits 1** and **2**. I am further informed that *Inside FERC* publishes a monthly index of the natural gas market, that *Gas Daily* publishes a daily index and that from at least from September 2001 (the time Platts acquired *Gas Daily*) through June 2002 *Gas Daily* also published a monthly index. I am further informed that Platts has no participation in any of the transactions that it reports.

NYC169919v1 3930059-27

3.  It is my understanding that during the time frame at issue in this case, the *Gas Daily* reporters and editors were not in the custom of retaining price reports received from energy traders. Before Platts acquired *Gas Daily* in September 2001, that the publication routinely discarded the information submitted by the energy company traders. And although after the acquisition, Platts informed *Gas Daily* reporters of Platts' preference for retaining the reports made by energy company traders, it is my understanding that, at least during a transition period that lasted well into 2002, *Gas Daily* reporters largely continued their previous practices of discarding the daily trade reports.

4.  Among the agencies and prosecutors who have sought information from McGraw-Hill, generally through formal subpoenas, are the Commodity Futures Trading Commission ("CFTC"); the Federal Energy Regulatory Commission ("FERC") the California Attorney General; the California Senate Select Committee to Investigate Price Manipulation of the Wholesale Energy Market; and the United States Attorneys for the Southern District of Texas, the Northern District of California and elsewhere. McGraw-Hill and its personnel have been as cooperative as possible with these various agencies and prosecutors, providing helpful and voluminous information to the extent that they have been able to do so consistent with their First Amendment rights and obligations as journalists and publishers.

5.  Copies of the CFTC's complaints in each of the four cases at issue here are attached hereto as **Exhibits 3** (CFTC v. Foley), **4** (CFTC v. Richmond), **5** (CFTC v. Whitney) and **6** (CFTC v. Bradley and Martin).

6.  All together, Platts has received more than 10 subpoenas from different government agencies and private litigants (including the plaintiffs and defendants in this case) – all growing out of allegations of price manipulation in the natural gas market between

approximately 1999 and 2002. Platts has worked cooperatively with all of these agencies, investigators and litigants to provide information critical to their cases, while still preserving the reporter's privilege to protect the confidences of its sources. To date, Platts has produced thousands of documents, and its personnel have expended more than 1000 hours in gathering and reviewing documents called for by these many subpoenas. Platts has consistently declined to produce information provided by its energy company sources in confidence unless the party seeking the information is able to make a showing necessary to set aside the privilege.

7.    Significantly, Platts has been advised it is not a target of *any* of the government investigations, nor is it a party to any civil litigation.

8.    McGraw-Hill has been served with at least six subpoenas in four different civil actions brought by the CFTC against individual energy company traders.

9.    The CFTC has indicated that it has brought at least one more case against an individual energy trader in the Northern District of Georgia. McGraw-Hill has already been advised to expect to receive a subpoena in that case. Additionally, the individual defendants in the CFTC's case in the Southern District of Texas *(CFTC v. Whitney)* and the Northern District of Oklahoma (*CFTC v. Bradley and Martin*) have also issued subpoenas to McGraw-Hill.

10.    The documents requested in the other subpoenas to McGraw-Hill have included the same sort of documents as those requested by the CFTC's four subpoenas at issue here, and some such subpoenas have even requested the very same documents that are requested here.

11.    In June 2003, the CFTC moved in the Southern District of Texas to compel McGraw-Hill's compliance with two subpoenas it had issued to Platts on February 7, 2003, one of which sought voluminous information regarding 23 energy companies (including CMS, AEP and Duke, three of the four companies that employed the present defendants) and their

subsidiaries. A copy of one of the subpoenas about which that motion to compel was brought is attached hereto at **Exhibit 7**.

12. On March 29, 2006, after that enforcement action was fully briefed, argued and pending *sub judice* before Judge Hughes, however, the CFTC voluntarily moved to withdraw the motion without prejudice. On March 30, 2006, Judge Lynn N. Hughes responded by dismissing the motion *with* prejudice. A copy of that order and the subpoena at issue therein is attached hereto as **Exhibit 8**.

13. A copy of the indictment of Michelle M. Valencia, issued by a grand jury in the Southern District of Texas, is attached hereto as **Exhibit 9**.

14. McGraw-Hill has also received a subpoena from plaintiffs in a private class action in the Southern District of New York. Those plaintiffs filed a motion to compel, seeking to obtain the trade data used by McGraw-Hill in arriving at index prices published by *Gas Daily* and *Inside IFERC* from 2000 through 2002. That motion to compel was denied, because the plaintiffs had not made an adequate showing that they had exhausted other possible sources of the information sought. Plaintiffs later renewed their motion to compel, and the magistrate judge ordered McGraw-Hill to produce data related to only one gas hub. The trial judge sustained plaintiff's objection to that order and remanded to the magistrate for further proceedings. On remand, plaintiffs and McGraw-Hill came to an agreement, approved by the court, describing the protocol under which McGraw-Hill will produce documents to the plaintiffs. Under that agreement, McGraw-Hill will produce the data submitted to it by the defendants in that case, and the plaintiffs will use that data to determine for which hubs and dates false submissions appear to have been made. McGraw-Hill will then produce – redacting the names of unrelated energy companies – to plaintiffs the data used in calculating the index at those hubs on those dates. The

data produced, however, will be redacted so that the names of energy companies not party to the action will be redacted. (The question of whether the names of the defendants who have settled with defendants will be redacted remains an open issue.) A copy of the order approving that production procedure is attached hereto as **Exhibit 20**.

15. The CFTC attorney in charge of the Richmond and Whitney cases has told McGraw-Hill that the allegations against those two defendants involve false submissions made to *Gas Daily* and not to *Inside FERC*. The CFTC attorney in charge of the Bradley and Martin case has told McGraw-Hill that he needs documents concerning both *Gas Daily* and *Inside FERC*, even though the complaints in those cases allege only that these defendants submitted to *Gas Daily*. In fact, a review of the submissions by CMS (the employer of Bradley and Martin) to *Inside FERC* during the relevant time period show that the vast majority were made by a person named Melissa Richardson, not either of the defendants.

16. In March 2006, the CFTC informed McGraw-Hill that it would be releasing to defendants Bradley and Martin certain documents that McGraw-Hill had produced to the CFTC in an unrelated investigation. The CFTC takes the position that the regulations that require notice be given to McGraw-Hill before any of its confidential documents are disclosed to a third party do not apply when the disclosure is made in the context of a litigation in which the CFTC is a party. Before the CFTC produced those documents, McGraw-Hill and defendants agreed to a protective order (the "March 28 Protective Order") that bound only McGraw-Hill and defendants. Since the CFTC would not agree to be bound by any such protective order, McGraw-Hill and defendants drafted the March 28 Protective Order so that it did not bind the CFTC. During the course of negotiating the March 28 Protective Order, defendants requested that its scope apply not only to the McGraw-Hill documents the CFTC was producing to

defendants, but also to future documents McGraw-Hill might produce to defendants. McGraw-Hill agreed.

17. On March 15, 2006, McGraw-Hill served its objections to each of the subpoenas and sent letters to CFTC counsel in the four present matters, proposing a method and appropriate scope of production from McGraw-Hill to the CFTC. Copies of those letters and the accompanying objections are attached hereto as **Exhibits 10, 11, 12** and **13**. While McGraw-Hill's counsel had several telephone conversations with CFTC counsel in an attempt to negotiate a method and scope of production that would be satisfactory to both the CFTC and McGraw-Hill, the CFTC counsel showed no willingness to compromise. The CFTC never proposed a method or scope of production other than what was requested in their original subpoenas.

18. On April 19, 2006, after a conversation between counsel for McGraw-Hill and some of the CFTC counsel, McGraw-Hill again wrote to the CFTC counsel attempting to modify its proposal to address some of the CFTC's concerns, inviting the CFTC to proffer a counter-proposal that might address its concerns and noting that McGraw-Hill was still awaiting final response from the CFTC on the March 15 proposal. Copies of these letters are attached hereto as **Exhibits 16** and **17**. The CFTC never offered a counterproposal in response to those letters.

19. On April 25, 2006, McGraw-Hill sent a joint letter to CFTC counsel explaining the problems arising out of having multiple subpoenas outstanding in multiple jurisdictions. A copy of that letter is attached hereto as **Exhibit 14**.

20. On May 5, 2006, the CFTC informed McGraw-Hill that if McGraw-Hill did not produce every single document in the CFTC's initial subpoenas, it would immediately file a motion to compel. On May 8, 2006, McGraw-Hill responded with a letter explaining that it

could not produce everything that the CFTC requested, especially given the CFTC's absolute refusal to agree to any sort of protective order guaranteeing confidential treatment of McGraw-Hill's documents. A copy of that letter is attached hereto as **Exhibit 15**. The CFTC responded to that letter with the present motion to compel.

21. To the extent that McGraw-Hill has been compelled to comply with any Department of Justice grand-jury subpoenas regarding investigations of other energy companies and/or energy traders, McGraw-Hill has not generally been required to produce categories of documents beyond what McGraw-Hill proposes to produce to the CFTC by way of the instant motion. Indeed, McGraw-Hill's proposed production here largely tracks the types of information that McGraw-Hill has made available pursuant to various grand jury subpoenas and in complying with the grand jury subpoenas, McGraw-Hill most certainly was not required to turn over every stone and search every file for unfocused and vague requests regarding communications or complaints.

22. A copy of the June 16, 2003 affidavit of Larry Foster, then Editorial Director for Platts' U.S. Natural Gas publications, submitted in opposition to an enforcement action brought by the CFTC in the Southern District of Texas, is attached hereto as **Exhibit 18**.

23. A copy of the December 6, 2004 affidavit of Kelley Doolan, then Chief Editor of *Inside FERC*, submitted in a grand jury action in the Southern District of Texas, is attached hereto as **Exhibit 19** and, pursuant to the accompanying motion, is submitted under seal.

24. The CFTC had also commenced investigations of the four energy companies that employed the defendants in the present cases and subsequently reached settlements on the charges against each of them. Copies of the CFTC's press releases announcing those settlements are attached hereto as **Exhibits 21, 22, 23 and 24.**

25. After the CFTC brought the instant motion before this Court, defendant Bradley brought his own motion to compel against McGraw-Hill before the Oklahoma Court. McGraw-Hill, a non-party, has thus been forced to assert its defense of these same principles simultaneously here and in the *CFTC v. Bradley & Martin* case. In response to Mr. Bradley's motion, McGraw-Hill requested that the subpoena be narrowed. In response to a motion made by the CFTC before the Oklahoma court to clarify or vacate McGraw-Hill's protective order with Messers. Bradley and Martin, McGraw-Hill cross-moved for a protective order against the CFTC. The Judge in Oklahoma has set a hearing on these motions for May 31.

26. During the relevant time period, *Gas Daily* spreadsheets did not include the names of the sources who provided data. Thus, there is no way at this point for anyone to trace the data considered for a *Gas Daily* spreadsheet during the time period to *any* given source. Indeed, even if some numbers could be matched up from the very few daily submissions McGraw-Hill still has, or from energy company records, there would still be no way to conclude for certain that the matching numbers meant that the defendants' submissions were considered.

27. As outlined below, the burdens associated with compliance with each of the disputed requests are significant:

- **Request No. 1** seeks: "all documents received by McGraw-Hill... by any employee or agent of [energy company]... that contains price, volume or delivery location of any natural gas transaction." The burden imposed by this request inheres in the fact that McGraw-Hill does not keep "all documents" containing trade data in one place, ogranized by company submitting the information. Thus finding all such documents could require extensive searches of many employee email accounts and paper files. To the extent the privilege is found to be overcome as to this request, a reasonable search for such documents, would entail review of the limited *Gas Daily* files that remain in McGraw-Hill's possession for such submissions and the email files of the *Inside FERC* editor for submissions that appear to have been made by the energy companies at issue.

- **Request No. 2** seeks "all documents prepared or created by McGraw-Hill *at any time* that reflect the price, volume, or delivery location of any natural gas transaction entered into during the relevant period that was communicated to McGraw-Hill by any and all means of communication by any employee or agent of [energy company] ..." The scope of this request is truly vast. It would include

hand-written notes, any sort of a worksheet or draft of a document used in conjunction with the creation of an index price, as well as the master spreadsheets which reflect all the data considered in connection with the derivation of an index price. Moreover, McGraw-Hill does not keep a file of all such documents and without limiting this request by reference to a McGraw-Hill employee, it would be extremely burdensome and difficult to locate copies of all such communications. The production would also be highly repetitive of Requests 1 and 4 and extremely intrusive on McGraw-Hill's editorial process. To the extent that the "core information" that this request seeks is the information submitted by an energy company that employed one of the defndants that were considered in the creation of an index price, and the privilege is deemed overcome as to such information, Request 1 covers the required information.

- **Request No. 3** seeks "all documents containing any information which references, indicates or discusses any price or volume information concerning any natural gas transaction entered into during the relevant period that was communicated to McGraw Hill by... any employee or agent of [energy company]." McGraw-Hill does not keep files of all documents that reference trade data submissions made by energy companies – let alone organize them by energy company. To the extent this request is meant to encompass complaints received about such submissions, internal discussions about submissions from any energy company or defendant or to identify submissions that were thought to be inaccurate or that were rejected, McGraw-Hill's files are not kept in a fashion that would render search and recovery of such documents feasible. To require McGraw-Hill to do an exhaustive search to collect all such documents would be exceedingly burdensome, if not impossible. If it is decided that the privilege is overcome as to information related to this topic, the answer to the question of whether any data submitted by any energy company or defendant was excluded can be determined by reference to the documents that would be produced pursuant to Request Nos. 1 and 4.

- **Request No. 4** seeks "all documents reflecting, referencing or implementing the formulas used to calculate index prices for each day of the relevant period for each natural gas delivery point at which any employee or agent of [energy company]... submitted price and volume information..." McGraw-Hill has repeatedly explained that it is not accurate to say that the index prices for each natural gas delivery point or hub is calculated by way of a specific formula. Ultimately, the determination is a subjective one depending both on statistical calculations and the editors' knowledge of the market. Moreover, McGraw-Hill has already produced its methodologies which detail the process by which the indices are created. If the point of this request, however, is to get at the data considered in coming up with a specific index price, (and the privilege held to be overcome as to specific hubs on specific dates), spreadsheets containing the data *considered* in determining the *Inside FERC* indices for each of the hubs throughout the period in question can be produced. Since those spread sheets also contain the data submitted on a confidential basis by numerous other sources of information and since the identity of those sources is not relevant to the claims in this suit, the names of the sources other than the energy company who employed the given defendant should be redacted. In addition, since to the extent that the spreadsheets reflect statistical calculations that can be performed by the parties themselves, McGraw-Hill suggests that the calculations performed by the Platts editors who ultimately determined the index prices also be redacted.

   With regard to the "calculation" of the daily *Gas Daily* indices, until November 4, 2002, the system used to create the *Gas Daily* indices was not set up in such a

way to keep track of the source of each item of data considered in creating the indices. In other words, for all daily indices published before November 2002, *Gas Daily* simply does not have records that would enable McGraw-Hill, the CFTC, defendants – or anyone else – to retroactively match the data considered in connection with the creation of the *Gas Daily* indices with the source that provided it. So with regard to the *Gas Daily* indices, McGraw-Hill is unable to identify which documents, if any, in its possession might be responsive to this request and therefore has nothing to produce.

- **Request No. 5** seeks "All documents containing or describing any price and volume data about natural gas transactions that was communicated to McGraw-Hill during the relevant period by any employee or agent of [energy company] ... that McGraw-Hill rejected, or otherwise decided not to include, in a calculation of a price index." McGraw-Hill does not keep a file of all rejected data and to require a non-party to do a comprehensive search of its paper and computer files for such a vague request and without even identifying the employees whose files should be searched clearly imposes more of a burden than appropriately placed on a third party. Again, to the extent that this request is designed to identify false trade submissions by energy companies who employed defendants and the privilege is found to have been overcome, such identification can be accomplished through the documents McGraw-Hill proposes to produce (should the privilege be overcome), pursuant to Requests 1 and 4.

- **Request No. 7** seeks documents which "reference any complaints received from any person, or any conversation that related to the communication of false, inaccurate or otherwise in incorrect price and volume information or attempted price manipulation by any employee or agent of [energy company]." McGraw-Hill does not, however, keep files which reflect the requested information, whether organized by energy company or otherwise. Accordingly, it would be exceedingly burdensome to require McGraw-Hill to search its files for all documents that refer to complaints about inaccurate transaction information submitted by any given energy company. To the extent the privilege is found to have been overcome in this regard, the documents McGraw-Hill proposes to produce (should the privilege be overcome) pursuant to Request 1 and 4 should provide the information the CFTC seeks needs in this regard.

- **Request No. 10** seeks instructions McGraw-Hill provided to the public about the types of natural gas transactions for which market participants should submit information. As McGraw-Hill indicated, it will perform a reasonable search for and produce a representative sampling (one per month) of the reporting instructions, if any, that were regularly sent out by email during the time period by reporters and editors for *Inside FERC Gas Market Report* and were intended to be used by those reporting trade data to *Inside FERC Gas Market Report*. Because of the manner in which these email notices were sent, however, McGraw-Hill is unable to identify the specific recipients of these email reminders and thus ultimately unable to identify what exactly may or may not have been sent to any given eerngy company or defendant.

28. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 26, 2006
New York, New York

*Carolyn K. Foley*
Carolyn K. Foley*
(Admission *Pro Hac Vice* Pending)