# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division

United States Courts
Southern District of Texas
FILED
FEB 0 1 2005
Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, </br></br>Plaintiff, </br></br>v. </br></br>MICHAEL WHITNEY, </br></br>Defendant. | **Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act** </br></br>H 05 - 333 </br></br>Docket No.: |

The United States Commodity Futures Trading Commission ("Commission"), by its attorneys, alleges as follows:

### I. Summary

1. As more fully set forth below, Defendant Michael Whitney has engaged in acts and practices which constitute violations of the Commodity Exchange Act, as amended, (the "Act") 7 U.S.C. §§ 1 *et seq.* (2002).

2. From approximately June 2001 through approximately August 2002 (the "relevant period"), Defendant was a natural gas trader and marketing representative at Duke Energy Trading and Marketing, LLC ("DETM") in Houston, Texas.

3. As part of his duties, Defendant provided, either directly or through other employees of DETM, market information concerning natural gas, physical trades to reporting firms, including but not limited to, *Gas Daily* and Enerdata.

4. Reporting firms, such as *Gas Daily* and Enerdata, provide price indexes for the natural gas industry and compile the price indexes using price and volume information taken from actual fixed price, physical natural gas trades executed by energy companies. The price

indexes are widely used by natural gas participants to price and settle natural gas transactions and for price discovery and price risk assessment.

5. During the relevant period, Defendant knowingly submitted, or caused to have submitted, to the reporting firms, among other things, fixed price, physical natural gas trades he had executed on behalf of DETM but with the prices and/or volumes altered.

6. By such conduct, Defendant knowingly delivered, or caused to be delivered, false, misleading or knowingly inaccurate reports concerning market information that affects or tends to affect the price of natural gas, a commodity in interstate commerce, in violation of section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2).

7. Defendant engaged in such conduct with the intent to affect the prices set forth in the indexes. Accordingly, through his submission of false or misleading or knowingly inaccurate reports concerning natural gas transactions, Defendant attempted to manipulate the price of natural gas, in violation of sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2).

8. Accordingly, pursuant to section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action against Defendant to enjoin such acts and practices, and to compel Defendant's compliance with the Act. In addition, the Commission seeks restitution, disgorgement of any ill-gotten gains obtained by Defendant through his unlawful acts, civil monetary penalties and other such ancillary relief as this Court may deem necessary or just under the circumstances.

## II. Jurisdiction and Venue

9. This Court has jurisdiction over this action pursuant to section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of

any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

10. Venue properly lies with this Court pursuant to section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

11. Unless restrained and enjoined by this Court, Defendant is likely to continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

### III. The Parties

12. The Commission is the independent federal regulatory agency charged with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1. *et seq.*

13. Defendant Michael Whitney ("Whitney" or "Defendant") currently resides in New York, New York. During the relevant period, Defendant was an employee of DETM, an affiliate of Duke Energy Corporation ("Duke"), located in Houston, Texas.

### IV. Facts

**A.    Whitney Was A Trader For DETM and Reported Market Information**

14. During the relevant period, Whitney was employed by DETM as a trader and marketing representative.

15. During the relevant period, DETM marketed natural gas, electricity and other energy-related products to a wide range of customers across North America. Specifically, the

3

Houston offices of DETM conducted natural gas marketing operations at eastern power and gas trading hubs for the Eastern region of the United States.

16. Natural gas was, and is, a commodity that travels in interstate commerce through a network of pipelines across the United States.

17. During the relevant period, DETM sought to buy and sell natural gas for profit. To that end, its traders and marketing representatives entered into transactions calling for the actual physical delivery of natural gas ("physical trades"). Physical trades typically were priced with either a fixed price set at the time of the transaction or with reference to an index to be published at a later date.

18. As a trader and marketing representative for DETM, Whitney traded and marketed natural gas. In trading and marketing natural gas, Whitney entered into physical trades.

19. During the relevant period, as part of his duties for DETM, Whitney also reported, or caused to be reported, natural gas trade information, including price and volume data to reporting firms that compiled natural gas price indexes for the industry, including but not limited to, *Gas Daily* and Enerdata, Ltd.

B. **Natural Gas Market Participants' Use of Indexes**

20. During the relevant period, reporting firms, such as *Gas Daily* and Enerdata, calculated the indexes using natural gas transaction information, including volume, price, and delivery point/pricing location ("hub"). The indexes obtained and collected the transaction information used to calculate the indexes from reports submitted by market participants, including Defendant.

4

21. The reporting firms, including *Gas Daily* and Enerdata, sought from natural gas traders specific market information, *i.e.*, price and volume data, derived from fixed price, physical, natural gas trades the traders actually executed.

22. Natural gas traders submitted price and volume data to reporting firms for use in compiling the indexes.

23. Natural gas traders, including Defendant, generally knew that the reporting firms compiled their indexes using price and volume data from fixed price, physical natural gas transactions actually executed by the traders.

24. After collecting the reports submitted by market participants of their price and volume information for natural gas transactions entered into at each hub, the reporting firms calculated a volume-weighted average to determine and publish the index prices.

25. During the relevant period, *Gas Daily,* issued by Platts, a division of the McGraw-Hill Companies, was a daily index that provided natural gas market information and price indexes for natural gas hubs throughout the United States and Canada.

26. During the relevant period, Enerdata, Ltd. ("Enerdata") issued a number of natural gas trade reports concerning natural gas market information and price indexes for natural gas hubs throughout the United States and Canada, including *The Natural Gas Lookout, Weekly Price Update, Priceline Daily, Canadian Gas Price Reporter,* and *Canadian Natural Gas Market Report*

27. During the relevant period, participants in the natural gas markets used the natural gas indexes to price and settle commodity transactions; that is, the indexes were used to calculate the values of trades that were executed off of the index price.

28. Natural gas futures traders referred to the published index prices for price discovery and for assessing price risks.

29. Information concerning prices and volumes of natural gas trades reported by natural gas traders, including Defendant, to reporting firms, such as *Gas Daily* and Enerdata, is and was market information that affects or tends to affect the price of natural gas, a commodity in interstate commerce.

### C. Whitney Knowingly Submitted False, Misleading, or Knowingly Inaccurate Trade Information to Reporting Firms

30. During the relevant period, Whitney regularly submitted reports of natural gas transaction information directly to at least two natural gas reporting firms, including but not limited to, *Gas Daily* and Enerdata.

31. Whitney also provided reports of natural gas transaction information to other DETM employees who then submitted those reports of natural gas transaction information to natural gas reporting firms, including but not limited to, *Gas Daily* and Enerdata. When Whitney provided the reports to the other DETM employees, he knew the other employees would submit the reports to the reporting firms.

32. The reports of natural gas transaction information that Defendant personally submitted, or caused other DETM employees to submit, to reporting firms, typically included price, volume, and hub.

33. Whitney knew that the reporting firms, including *Gas Daily* and Enerdata, sought to compile their indexes using price and volume data derived from fixed price, physical, natural gas trades.

34. On a regular basis during the relevant period, Defendant knowingly submitted, or knowingly caused to be submitted, reports concerning trades executed on behalf of DETM to at

6

least two reporting firms, *Gas Daily* and Enerdata. Defendant's reported trades included false or misleading or knowingly inaccurate prices and/or volumes for certain trades. Specifically, Whitney reported, among other things, trades entered into by DETM but with the prices altered and/or the volumes inflated or deflated—such that trades potentially were weighed more or less heavily in the compilation of the index than they ordinarily would have been.

35. On each occasion that Defendant knowingly submitted, or caused to be submitted, reports of natural gas transactions that included false or misleading or knowingly inaccurate prices and/or volumes, Defendant did so in an attempt to manipulate the price of natural gas, which, if successful, could have affected the price of natural gas futures and options contracts traded on the New York Mercantile Exchange ("NYMEX").

### D. Defendant Attempted to Manipulate the Price of Natural Gas at the Emerson Hub

36. On July 31, 2002, Whitney knowingly submitted false or misleading or knowingly inaccurate reports concerning certain natural gas trades, executed on behalf of DETM, to Enerdata in an attempt to manipulate the price of natural gas at the Emerson Hub.

37. The Emerson hub is on the Trans-Canada pipeline and is located on the Canada-Minnesota border. Gas flowing into the United States at the Emerson hub supplies much of the upper-Midwest with natural gas.

38. On or about July 31, 2002, Defendant purchased natural gas from a trader at DETM's affiliate in Calgary ("Calgary trader"). The natural gas was to be delivered on August 1, 2002 at the Emerson hub.

39. Later that same day, Defendant reported his transaction information regarding the Emerson hub over the telephone to a representative of Enerdata. Defendant submitted price and

volume information for transactions that day so that the information from his transactions could be used to calculate the index price for natural gas at the Emerson hub.

40. Prior to July 31, 2002, Defendant had provided reports of transaction information to Enerdata for the Emerson hub and knew that Enerdata used the reports of transaction information to calculate an index price for the Emerson hub. As such, on July 31, 2002, Defendant expected and knew that the transaction information he submitted to Enerdata would likely be used to calculate the volume weighted index price for natural gas at the Emerson hub.

41. During the telephone call with Enerdata on July 31, 2002, Defendant knowingly submitted false or misleading or knowingly inaccurate price and volume reports regarding his transaction(s) at the Emerson hub. More specifically, Defendant submitted a report with price and/or volume information that was higher than that of the actual transaction he entered into with the Calgary trader. Defendant knowingly submitted this report in an attempt to manipulate the price of natural gas at the Emerson hub.

42. On July 31, 2002, the Calgary affiliate also submitted to a representative of Enerdata reports of natural gas transaction information for the Emerson hub, including information concerning the transaction executed with the Defendant. Those reports of transaction information were accurate.

43. Upon receiving the conflicting reports submitted by Defendant and the Calgary affiliate, Enerdata called Defendant on July 31, 2002 to find out why the reports differed.

44. Despite being challenged by Enerdata, Defendant falsely maintained that his report was accurate. Exacerbating his wrongdoing, Defendant then proceeded to suggest that the Calgary affiliate and/or trader had provided Enerdata with inaccurate price and volume information, claiming that the Calgary affiliate had "something they're trying to put on."

45    After being challenged by Enerdata, Defendant made three telephone calls that same day to the Calgary trader to discuss their Emerson reports to Enerdata because Defendant believed that he and the Calgary trader "need[ed] to be on the same page" regarding the reports. In one of those conversations, Defendant attempted to convince the Calgary trader to report price and volume data that would benefit the Calgary trader's position.

46.    During a telephone discussion with the Calgary trader, Defendant attributed the inconsistent reports to Enerdata to a "miscommunication" between Defendant and Enerdata. Defendant made this statement to the Calgary trader despite the fact that earlier in the day, Defendant told Enerdata that the inconsistency was due to the Calgary trader and/or the Calgary affiliate reporting inaccurate numbers and attempting to manipulate the market.

47.    If the attempted manipulation of the price of natural gas had been successful, it could have affected the price of natural gas futures and options contracts traded on the NYMEX.

E.    **Defendant Attempted to Manipulate the Price of Natural Gas at the ANR, ML-7 Hub**

48.    During the relevant period, Defendant submitted, or caused to be submitted, reports of transaction information to *Gas Daily*. The reports included volume, price, and hub.

49.    Defendant reported this information by entering his transaction information onto a Microsoft Excel spreadsheet located on a shared computer drive at DETM. Once Defendant and the other traders entered the necessary information, the spreadsheet was transmitted via electronic mail to *Gas Daily*.

50.    Between February 5, 2002 and February 7, 2002, Defendant purchased approximately 335,000 mmBtu of natural gas from the Wisconsin Public Service Commission ("WPSC"). The natural gas was to be delivered on the ANR pipeline to the ML7 hub. On each

of those three days, Defendant reported price, volume and hub information for those transactions to *Gas Daily*.

51. On each of those three days, Defendant knowingly submitted false or misleading or knowingly inaccurate price and volume information to *Gas Daily* regarding his transactions at the ANR, ML7 hub. Defendant did so in an attempt to manipulate the price of natural gas at that hub.

52. On February 7, 2002, a representative from *Gas Daily* called Defendant to challenge the price Defendant reported that day for his ML7 transaction(s) because Defendant's reported price was significantly higher than any other price reported. The *Gas Daily* representative informed Defendant that his reported price was so much higher than other prices reported that the market was "highly upset" because Defendant's report was causing a "spike in the market."

53. Despite Defendant's report being challenged, Defendant falsely maintained that his report was accurate, stating the "[O]nly thing I report is what I trade . . . I'm not trying to game the system." Defendant attempted to further cover his false reporting by maintaining that he only reports what he actually traded and blamed other companies for not reporting accurately.

54. If the attempted manipulation of the price of natural gas had been successful, it could have affected the price of natural gas futures and options contracts traded on the NYMEX.

V. **Violations of the Commodity Exchange Act**

Count I: <u>Delivery of False or Misleading or Knowingly Inaccurate Information</u>

55. The allegations contained in paragraphs 1 through 54 above are re-alleged and incorporated by reference herein.

56. Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), provides, in pertinent part, that it is unlawful for any person "[K]nowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce...."

57. Defendant violated section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), when he knowingly delivered or caused to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning natural gas transactions to industry reporting firms that calculated and reported the index price of natural gas.

58. Submission of market information concerning price and volumes of natural gas trades to reporting firms, like *Gas Daily* and Enerdata, affects or tends to affect the price of natural gas, a commodity in interstate commerce.

59. Each occasion upon which Defendant knowingly delivered or caused to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication, a false or misleading or knowingly inaccurate price and/or volume concerning a natural gas transaction, including but not limited to those specifically alleged herein, is alleged herein as a separate and distinct violation of section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2).

### Count II:  Attempted Manipulation of Natural Gas Price Indexes

60. The allegations contained in paragraphs 1 through 59 above are re-alleged and incorporated by reference herein.

61. Sections 6(c) and 6(d) of the Act, 7 U.S.C. §§ 9 and 13b, together authorize the Commission to serve a complaint and provide for the imposition of, among other things, fines and penalties if the Commission "has reason to believe that any person . . . has manipulated or attempted to manipulate the market price of any commodity, in interstate commerce, or for future delivery on or subject to the rules of any contract market . . . or otherwise is violating or has violated any of the provisions of [the] Act."

62. Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), provides, in pertinent part, that it is unlawful for any person to "[M]anipulate or attempt to manipulate the price of any commodity in interstate commerce . . . ."

63. Defendant violated sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2), when, with the intent to manipulate the price of natural gas, he knowingly delivered or caused to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning natural gas transactions to the reporting firms that calculated and reported the index price of natural gas.

64. Each occasion upon which Defendant knowingly delivered a false or misleading or knowingly inaccurate report in an attempt to manipulate the price of natural gas, including but not limited to those occasions specifically alleged herein, is alleged herein as a separate and distinct violation of sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2).

## VI. Relief Requested

65. WHEREFORE, Plaintiff Commission respectfully requests that this Court enter an order of permanent injunction:

A. Restraining and enjoining Defendant and any of his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with him who

receive actual notice of such order by personal service or otherwise, from directly or indirectly violating sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2);

B. Directing Defendant to pay civil monetary penalties, to be assessed by the Court against the Defendant, in amounts not to exceed $110,000 for each violation of the Act occurring before October 23, 2000 and $120,000 for each violation occurring on or after October 23, 2000, or triple the monetary gain to him for each violation of the Act, as described herein;

C. Directing Defendant to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act or Regulations, as described herein, and interest thereon from the date of such violations;

D. Directing Defendant, pursuant to such procedure as the Court may order, to make full restitution of funds received by him as a result of acts and practices which constituted violations of the Act and Regulations, as described and interest thereon from the date of such violations; and,

E. Providing for such other and further remedial and ancillary relief as this Court may deem necessary and appropriate.

Dated: 1/31/05

Respectfully submitted,

U.S. COMMODITY FUTURES
TRADING COMMISSION

By: *[signature]*

Michael J. Otten, Attorney in Charge
Senior Trial Attorney
motten@cftc.gov
Michael Solinsky, Of Counsel
Chief Trial Attorney
msolinsky@cftc.gov
U.S. Commodity Futures Trading
  Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, DC 20581
202-418-5000 (Phone)
202-418-5523 (Facsimile)