# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| )<br>UNITED STATES COMMODITY FUTURES )<br>TRADING COMMISSION, )<br>)<br>     Plaintiff, )<br>)<br>     v. )<br>)<br>MICHAEL WHITNEY ET AL, )<br>)<br>     Defendants )<br>) | Case No. 1:06-mc-00210 (RCL) |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF McGRAW-HILL'S CROSS-MOTION FOR PROTECTIVE ORDER

### DAVIS WRIGHT TREMAINE LLP

**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

**1500 K Street, N.W.**
**Suite 450**
**Washington, D.C. 20005-1272**
**(202) 508-6600 (phone)**

*Attorneys for The McGraw-Hill Companies*

**Dated: June 14, 2006**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

LIST OF ABBREVIATIONS USED HEREIN........................................................ iv

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT............................................................................................................. 5

I.    A Protective Order Is Required To Ensure That The Privileged Documents Are Disclosed and Used Only In Situations In Which The Privilege Is Overcome ................. 5

    A.    There is No Expiration Date on Application of the Reporter's Privilege............... 6

    B.    The Reporter's Privilege Requires Entry of a Protective Order Before McGraw-Hill is Required to Produce Any Privileged Documents for Use in Any of the Four Underlying Actions ..................................................................... 8

    C.    The Subpoenas Are Not Issued in Furtherance of the CFTC's Investigatory Authority .............................................................................................................. 12

II.   In Addition to Being Protected by the Journalist's Privilege, the Documents at Issue Also Contain Trade Secrets that Should be Protected by a Confidentiality Order ....................................................................................................................... 13

III.  The CFTC's Objections to McGraw-Hill's Proposed Protective Order Are Unfounded.............................................................................................................. 16

    A.    The Protective Order Addresses the CFTC's Alleged Objections........................ 16

    B.    The Protective Order Will Not Interfere With a Public Trial ............................... 18

IV.   The CFTC's Objections to Narrowing the Subpoena Focus on Hypothetical and Peripheral Issues That Do Not Go to the Heart of the Matter ......................................... 19

    A.    The Subpoenas are not Tailored to the Specific Needs of Each Case ................. 20

    B.    Defendants Are Not Charged With a Perfected Manipulation ............................. 22

    C.    The Subpoenas Seek Cumulative Information ..................................................... 23

CONCLUSION........................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Blumenthal v. Drudge*, 186 F.R.D. 236 (D.D.C. 1999) ...................................................9

*Carey v. Hume*, 492 F.2d 631 (D.C. Cir. 1974)...........................................................9

*Center for Automobile Safety v. National Highway Traffic Safety Admin.*,
     93 F. Supp.2d 1 (D.D.C. 2000) ......................................................................15

*Dowd v. Calabrese*, 577 F. Supp. 238 (D.D.C. 1983) ...................................................24

*Gonzales v. National Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999)...............................8

*Hutira v. Islamic Republic of Iran*, 211 F. Supp.2d 115 (D.D.C. 2002) ..........................9

*John Does I-VI v. Yogi*, 110 F.R.D. 629 (D.D.C. 1986) ...............................................14

*Miller v. Transamerica Press, Inc.*, 621 F.2d 721 (5th Cir. 1980) ..................................3

*N.L.R.B. v. Mortensen*, 701 F. Supp. 244 (D.D.C. 1988) .............................................9

*In re Natural Gas Commodity Litigation*, 2005 WL 3036505 (S.D.N.Y. Nov 16, 2005),
     *modified by*, 2006 WL 1044224 (S.D.N.Y. Apr 18, 2006)....................................22, 23, 24

*Raytheon Co. v. Department of Navy, Naval Air Systems Command*, 1989 U.S. Dist. LEXIS
     18281 (D.D.C. 1989) .....................................................................................15

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ....................................................18

*Star Editorial, Inc. v. United States District Court for the Central District of California*,
     7 F.3d 856 (9th Cir. 1993) ...............................................................................3

*U.S. Commodity Futures Trading Com'n v. McGraw-Hill Companies, Inc.*, 390 F. Supp.2d
     27 (D.D.C. Oct. 2005), *clarification denied by*, 403 F. Supp.2d 34 (D.D.C. Dec.
     2005)...........................................................................................2, 6, 9,10

*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981) ..................................................3, 7, 9

## STATUTES

Commodiy Exchange Act, Title 7, Ch 1, § 15.............................................................10

Fed.R.Civ.P. Rule 26 ..................................................................................................9

Fed.R.Civ.P. Rule 45 ..............................................................................................9, 11

## MISCELLANEOUS

8 Wright, Miller & Marcus, *Federal Practice and Procedure*, § 2042, p.550-51 (West
    Publishing 1994) ..................................................................................................18

## LIST OF ABBREVIATIONS USED HEREIN

**"Opp. Br."** refers to the CFTC's June 7, 2006 Reply to McGraw-Hill's Opposition to the Motion to Compel Third Party to Produce Documents in Response to Subpoenas *Duces Tecum* and Opposition to Cross-Motion for Protective Order.

**"Cross Br."** Refers to McGraw-Hill's May 26, 2006 Memorandum in Opposition to the CFTC's Consolidated Motion to Compel Third Party McGraw-Hill to Produce Documents in Response to Subpoenas *Duces Tecum* and in Support of McGraw-Hill's Cross-Motion for Protective Orders.

**"Mov. Br."** refers to the CFTC's May 8, 2006 Memorandum of Points and Authorities in Support of Consolidated Motion to Compel Third Party to Produce Documents.

**"Ex."** refers to the exhibits attached to the May 26, 2006 declaration of Carolyn K. Foley (**"Foley Dec."**) submitted in opposition to the CFTC's motion to compel and in support of McGraw-Hill's motion for a protective order or the June 14, 2006 supplemental declaration of Carolyn K. Foley (**"Supp. Foley Dec."**) submitted with this reply memorandum.

**"Doolan Dec."** refers to the June 9, 2006 declaration of Kelley Doolan, Chief Editor of *Inside FERC*, submitted with this reply memorandum of points and authorities.

**"12/04 Doolan Aff."** Refers to the December 6, 2004 affidavit of Kelly Doolan, then Chief Editor of *Inside FERC*, previously submitted in a grand jury proceeding in the Southern District of Texas and made part of the record in this motion as **Exhibit 19 to the Foley Dec.**

**"6/03 Foster Aff."** refers to the June 16, 2003 affidavit of Larry Foster, then Editorial Director for Platts' U.S. Natural Gas publications, submitted in opposition to an enforcement action brought by the CFTC in the Southern District of Texas (seeking, *inter alia*, trade submissions made by CMS), and made part of the record in this motion as **Exhibit 18 to the Foley Dec.**

**"6/06 Foster Dec."** refers to the June 7, 2006 declaration of Larry Foster, submitted in further support of McGraw-Hill's motion for a protective order in the Northern District of Oklahoma, and made part of the record in this motion as **Exhibit 32 to the Supp. Foley Dec.**

**"Tr."** refers to the transcript of the May 31, 2006 argument held in the matter of *CFTC v. Bradley, et al.* (N.D.OK 05-CV-62) (page numbers refer to numbers at the bottom of the pages), made part of the record in this motion as **Exhibit 27 to the Supp. Foley Dec.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>MICHAEL WHITNEY ET AL, )<br><br>Defendants ) | Case No. 1:06-mc-00210 (RCL) |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF McGRAW-HILL'S CROSS-MOTION FOR PROTECTIVE ORDER

The McGraw-Hill Companies, Inc. ("McGraw-Hill") submits this Reply Memorandum of Law in further support of McGraw-Hill's Cross-Motion for Protective Orders that will impose confidentiality provisions binding the parties to whom McGraw-Hill may be compelled to produce documents in the four separate actions consolidated in this motion and that will govern the scope of documents the CFTC can compel McGraw-Hill to produce in each of the cases.

### PRELIMINARY STATEMENT

By way of the instant motion (which seeks to enforce subpoenas issued to McGraw-Hill for use in *four separate cases* pending in *four different jurisdictions*),[1] the CFTC seeks to compel McGraw-Hill to produce documents that contain some of its most confidential, privileged, proprietary and valuable newsgathering materials and trade secrets. At the same time, the CFTC refuses to provide McGraw-Hill with any assurances that the documents will be treated

---

[1] The cases are: *CFTC v. Bradley and Martin,* (N.D. Ok. Civ. No. 4:05-CV-0062) ("Oklahoma Case"); *CFTC v. Whitney* (S.D. Tx. Civ. No. H-05-333) ("Texas Case"); *CFTC v. Richmond* (D. Colorado Civ. No. 05-M-668) ("Colorado Case"); *CFTC v. Foley* (S.D. Ohio Civ. No. 2:05-CV-849) ("Ohio Case").

confidentially and used only for the purposes of the cases for which they are sought. It is critical that McGraw-Hill, as a journalistic enterprise, honor the trust that its sources have placed in its integrity and ability to maintain the confidentiality of the highly sensitive information McGraw-Hill gathers from its sources in the course of its price reporting activities. It is also critical to McGraw-Hill, as a business enterprise, that it be able to ensure that the process by which it produces its price indices is not published freely to the public or otherwise made known to its competitors. The CFTC's refusal to agree to any form of a protective order not only blatantly disregards these two very serious concerns, but, if allowed to proceed unchecked, threatens to deprive McGraw-Hill of its ability to assert the privilege in any future context in which a litigant may seek to compel McGraw-Hill to produce a set of documents comparable to those sought here.

Although the CFTC recognizes (as it must) that the qualified reporter's privilege applies to the documents it seeks, it erroneously approached its negotiations with McGraw-Hill and now its arguments to this Court "from the perspective that the privilege is overcome," without need of a protective order. (Opp. Br. at 2) The CFTC claims this right to bypass the constitutional requirement of showing the privilege is overcome by reading *U.S. Commodity Futures Trading Com'n v. The McGraw-Hill Companies, Inc.,* 390 F. Supp.2d 27 (D.D.C. Oct. 2005), *clarification denied by,* 403 F. Supp.2d 34 (D.D.C. Dec. 2005) – a decision that found McGraw-Hill's privilege overcome in the context of a motion to enforce an investigatory subpoena concerning an energy company with no relationship whatsoever to the individual defendants that are the subject of this motion – as "all but necessitat[ing] a finding that the privilege is overcome here." (Opp. Br. at 4) This interpretation, however, is obviously incorrect. Taken to its logical conclusion, this argument would mean that any time the privilege applying to

a certain set of documents was found to have been overcome in one case, the privilege would no longer attach to those documents and any litigant who wanted to use them in any case could do so freely. That is not the law. Instead, each litigant seeking to overcome the privilege for a specific purpose must meet the constitutional standards to set aside the privilege for the purpose for which the documents were sought. *See, e.g., Zerilli v. Smith,* 656 F.2 705, 712 (D.C. Cir. 1981) ("to determine whether the privilege applies courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure").

McGraw-Hill thus respectfully asserts that because the CFTC has refused to recognize that each of its subpoenas is only enforceable to the extent it is limited to seeking information that goes to the heart of the case for which the subpoena is issued and for information unavailable elsewhere, both the relief it seeks from this Court and its opposition to McGraw-Hill's cross-motion are unwarranted and should be rejected. Rather, because of the applicability of the privilege, a protective order that preserves the confidentiality of any documents produced, and that ensures that they are only used for purposes of cases for which they have been found critical and unavailable elsewhere, should issue so that McGraw-Hill can honor its commitments to its sources to the greatest extent possible in any other contexts in which privileged material may be sought. *See, Miller v. Transamerica Press, Inc.,* 621 F.2d 721, 727 (5th Cir. 1980); *Star Editorial, Inc. v. United States District Court for the Central District of California,* 7 F.3d 856, 861 (9th Cir. 1993); *see also* Cross Br. at 15. (Point I) A protective order is also required because the documents sought – the spreadsheets, in particular – would reveal some of McGraw-Hill's valuable trade secrets. (Point II)

The CFTC's arguments against a protective order are long on alarmist rhetoric and

distorted interpretations of the applicable law and short on reference to the actual facts relevant to determining these motions or rational reason to refuse any form of protective order. Setting aside the CFTC's rhetoric, it is apparent that the CFTC can provide no legitimate reason for its refusal to agree to the terms of a protective order in this case or to tailor the scope of each subpoena to the particular needs of each case for which it was issued. Indeed, less than a year ago, it was the CFTC itself that suggested that McGraw-Hill's concerns could be alleviated by an appropriately drawn protective order. The CFTC's counsel stated in arguments before this Court on September 27, 2005,

> "There are several ways to deal with protecting this information. One is that our investigations are non-public. Two, we have the ability to make objections under FOIA to request for this information, and we don't discuss our investigations publicly, and the most obvious is that there is an ability within this Court to issue protective orders defining and describing how we can use this information. So that really is something I think that has got to be considered."

(Transcript of September 27, 2005 arguments at 47-48, attached as Ex. 33 to the Supp. Foley Dec.) *None* of the objections to the protective order now advanced by the CFTC provide reason to deny the protections; at most, they might provide reason for limited modification of the language proposed by McGraw-Hill. In fact, as shown below, the protective orders proposed by McGraw-Hill already accommodate the CFTC's objections. (Point III)

Finally, as a result of the CFTC's assumption that "the privilege has been overcome" and its concomitant refusal to show how each of the four subpoenas seeks nothing more than information that is both unavailable from other sources *and* that goes to the heart of the case for which it is sought, the scope of the subpoenas is overbroad. Accordingly, before the subpoenas can be enforced they must be narrowed so that they only seek information unavailable elsewhere and going to the heart of the cases for which they are sought and not otherwise overly

burdensome. (Point IV)[2]

## ARGUMENT

I.    **A Protective Order Is Required To Ensure That The Privileged Documents Are Disclosed and Used Only In Situations In Which The Privilege Is Overcome**

The CFTC attempts to cast McGraw-Hill's request for a protective order as an attempt to usurp the authority of the Court by acting as "gatekeeper" over its own privileged and confidential documents. (Opp. Br. at 7) In fact, McGraw-Hill's request for a protective order is designed to do nothing more than ensure that its privileged documents are disclosed and used only in contexts in which the privilege has been overcome. The fact that the protective order will require a showing sufficient to overcome the privilege to be made each time a new litigant seeks to use McGraw-Hill's privileged documents does nothing more than what the law requires. The true reason for the CFTC's objection to the protective order is that it prevents the CFTC from

---

[2]    In response to motions made by *both* the CFTC and defendant Bradley in the Oklahoma case, McGraw-Hill sought a protective order that would circumscribe the scope of its obligation to produce documents in that case and require the CFTC to treat any McGraw-Hill documents as confidential and use them only for the purpose of that case. (Ex. 27) The CFTC implies that it was improper for McGraw-Hill to seek that relief in the Oklahoma case because it seeks similar relief from this Court. (Opp. Br. at 17) Contrary to the CFTC's insinuations, McGraw-Hill did not choose *any* of the jurisdictions which are currently entertaining motions to compel made *against* McGraw-Hill. In fact, when it became apparent that defendants in the Oklahoma case intended to bring their own motion to compel against McGraw-Hill before the Oklahoma Court, McGraw-Hill objected and explained to the Oklahoma Court that such a motion would place McGraw-Hill in the position of having to defend motions to compel in both Oklahoma and this Court. Although the Oklahoma encouraged defendants to bring their motion in D.C., it did not require them to do so and agreed to take defendants' motion to compel on an expedited time frame. The CFTC made no objection or attempt to prevent the Oklahoma defendants from bringing their motion to compel in Oklahoma. McGraw-Hill was thus forced to respond to the defendants' motion to compel in Oklahoma and to make the cross-motion to protect its rights in the Oklahoma action. Only after the motions were fully briefed and counsel had flown to Tulsa to appear for argument, did the Oklahoma court indicate that it might strike defendants' motion to compel on jurisdictional grounds. (Ex. 27 at 5-13) In light of the fact that the Oklahoma Court has already heard argument on the motion and indicated that it will determine the scope of McGraw-Hill's obligation to produce documents in this case and the appropriate confidentiality terms, the CFTC – a litigant before the Oklahoma court – should sever the subpoena issued in the Oklahoma Action from the motion to compel pending in this Court. *See also,* McGraw-Hill's May 26, 2006 Memorandum in Opposition to Motion for Hearing (Dkt. 8).

skirting the law of the reporter's privilege and from using McGraw-Hill's documents for purposes other than the case for which they were produced. Indeed, although it now argues that the requested protective order would "usurp" this Court's authority, the CFTC itself that suggested less than a year ago that a protective order would be an appropriate manner to alleviate McGraw-Hill's concerns. [3]

### A.    There is No Expiration Date on Application of the Reporter's Privilege

One of the CFTC's primary objections to a protective order stems from its contention that the information contained in the documents it seeks is stale. (Opp. Br. at 20)  This argument, however, overlooks the whole purpose underlying recognition of the privilege – *i.e.*, facilitation of the free flow of information to the press. *See, e.g., CFTC v. McGraw-Hill Companies, Inc.,* 390 F. Supp.2d 27, 31 (D.D.C. Oct. 2005) ("The reporter's privilege originates in the First Amendment's guarantee of a free press. The rationale is that forcing journalists to disclose confidential sources will discourage sources from communicating with reporters, thereby

---

[3]    The CFTC's dismissive view toward the confidentiality of McGraw-Hill's documents (and a prime example of why McGraw-Hill needs a protective order) is illustrated by the CFTC's use here of privileged documents that McGraw-Hill produced pursuant to this Court's prior order in *CFTC v. McGraw-Hill*, 390 F. Supp.2d 27 (D.D.C. Oct. 2005). Despite the fact that the CFTC previously represented to this Court that the CFTC's "statutory and regulatory protections already afforded to McGraw-Hill" the protections McGraw-Hill sought to achieve by way of a protective order in that case (*see* Cross Br. at 22-23), the CFTC has nevertheless attached several of McGraw-Hill's privileged and proprietary spreadsheets to its opposition to this cross-motion *and served them on each of the defendants in the four underlying actions.* (Ex. 8 to the Supplemental Mansfield Declaration)  While McGraw-Hill assumes that the defendants will acknowledge that these documents were filed under seal and should be kept confidential, the CFTC did not notify McGraw-Hill in advance that it intended to disclosed these spreadsheets to all of the defendants in the underlying actions, nor did the CFTC give McGraw-Hill the chance to solicit confidentiality assurances from the defendants to whom they were provided. Moreover, there seems to have been no purpose for this disclosure to defendants other than to gratuitously disclose McGraw-Hill's spreadsheets before this Court has a chance to rule on McGraw-Hill's protective order. Indeed, none of the defendants have filed any papers taking any position in the instant dispute between McGraw-Hill and the CFTC and there is no reason that defendants needed to have been provided with these confidential documents. If the CFTC believed it was necessary for the Court to refer to these documents in deciding this motion they could have been submitted *in camera* at least in the *first instance.*

disrupting the "free flow of information protected by the First Amendment.") (citation omitted); *see also*, *Zerilli*, 656 F.2d at 711 ("But the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired.  Compelling a reporter to disclose the identity of a source may significantly interfere with this news gathering ability; journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant.") (citation omitted).

In demanding that McGraw-Hill produce its privileged newsgathering material, the CFTC imposes a major interference with McGraw-Hill's on-going relationship with its sources. The sources of the trade data that McGraw-Hill collects for its daily and monthly natural gas price indices provide the information because they trust that McGraw-Hill will keep the data confidential and will not publish it, except in the aggregate form of the natural gas price indices. (Cross Br. at 14; 6/03 Foster Aff. ¶ 8; 12/04 Doolan Aff. ¶¶ 7-9)  At the time the sources provided the data sought in these cases, there was no expiration date placed on this trust and no indication that the sources expected that the information need only be kept confidential for a few years.[4]  McGraw-Hill's ongoing ability to publish price indices depends on continued cooperation from all of its sources as well as on its ability to attract new sources. (Cross Br. at 15; 6/03 Foster Aff. ¶ 8; 12/04 Doolan Aff. ¶ 8)  Any action that deprives McGraw-Hill of the ability to honor its sources' trust and expectations of confidentiality therefore interferes with McGraw-Hill's relationships with all of its sources and threatens to weaken McGraw-Hill's

---

[4]    Indeed, the document retention practices of some of McGraw-Hill's sources apparently did not require them to preserve the information provided to McGraw-Hill and the only reason some of these documents still exist is that they were provided to McGraw-Hill.  Placing an expiration date on the applicability of the reporter's privilege could thus very well dissuade sources from providing information to McGraw-Hill for the very reason that they do not control McGraw-Hill's document retention policies.

newsgathering ability.[5]  (Cross Br. at 15; 6/03 Foster Aff. ¶ 8; 12/04 Doolan Aff. ¶ 8)

McGraw-Hill thus requests a protective order that limits disclosure of its sources' information to situations in which the privilege has been overcome in order to minimize the interference with its sources' expectations of confidentiality.

The CFTC's argument that disclosure will not interfere with McGraw-Hill's relationship with its sources because the information is old thus fails to acknowledge the importance to McGraw-Hill of maintaining good relationships with its sources in order to foster the free flow of information.  Accordingly, its refusal to accommodate these concerns by way of some form of a protective order unnecessarily interferes with McGraw-Hill's relationship with its sources, undermines McGraw-Hill's ability to assert the privilege in the future and should be rejected.

**B.     The Reporter's Privilege Requires Entry of a Protective Order Before McGraw-Hill is Required to Produce Any Privileged Documents for Use in Any of the Four Underlying Actions**

Another of the CFTC's primary objections to a protective order stems from its misguided belief that the privilege has already been overcome and that it need not make a showing that the information sought by each of the four subpoenas involved in this consolidated motion goes to the heart of the matters at issue in each of the cases and is otherwise unavailable.  This assertion, however, is contrary to the central requirement that the determination of whether the reporter's privilege is overcome be made on a case-by-case basis.

As the Court of Appeals in this Circuit has held, in determining whether the privilege has been overcome, the Court must balance "these vital constitutional and societal interests on a

---

[5]      As the Second Circuit noted, failure to rigorously apply the privilege may also encourage journalists to destroy records for no reason other than to avoid the cost of responding to subpoenas. *See Gonzales v. National Broadcasting Co.,* 194 F.3d 29, 35 (2d Cir. 1999) (noting that absent recognition of the reporter's privilege even as to non-confidential materials, "[i]ncentives would also arise for press entities to clean out files containing potentially valuable information lest they incur substantial costs in the event of future subpoenas").

case-by-case basis." *Zerilli*, 656 F.2d at 711-12 (emphasis added). *See also Blumenthal v. Drudge*, 186 F.R.D. 236, 244 (D.D.C. 1999) (in determining whether the privilege is overcome, "the court must look at the *specific facts* of the case before it") (emphasis added); *N.L.R.B. v. Mortensen*, 701 F. Supp. 244, 250 (D.D.C. 1988) ("the balancing test [to determine whether the privilege is overcome is applied to] the specific facts of this case"); *Hutira v. Islamic Republic of Iran*, 211 F. Supp.2d 115, 119 (D.D.C. 2002) ("courts should 'look to the facts on a case-by-case basis in the course of weighing the need for the testimony in question against the claims of the newsman that the public's right to know is impaired'"), *quoting Carey v. Hume*, 492 F.2d 631, 636 (D.C. Cir. 1974). Thus, the analysis applies to "the facts of each case" – not to each set of documents or each plaintiff or each investigation, but rather to the totality of the circumstances that make up an individual case. If the rule were otherwise and a showing that the privilege was overcome in one context would mean that it were overcome in all contexts, disclosure of privileged documents would become the rule, rather than the exception. The law is otherwise. *See, e.g., Zerilli*, 656 F.2d at 712 ("Indeed, if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished"). [6]

In an attempt to justify its drastic departure from the law governing application of the reporter's privilege, the CFTC argues, without basis, that this Court's decision in *CFTC v. The McGraw-Hill Companies, Inc.*, 390 F. Supp.2d 27 (D.D.C. Oct. 2005) (the "DC Administrative

---

[6]    By arguing that "a court considering whether the privilege is overcome, in effect, engages in the same balancing of harms that court undertakes in determining whether a protective order should issue," (Opp. Br. at 19), the CFTC illustrates just how far off-base its interpretation of what the privilege requires is. If the reporter's privilege provided no more protection to a reporter's confidential information than did Rules 26 or 45 do to any third party who may be served with a subpoena, then there would be no purpose in having recognized a privilege in the first place. Although the CFTC would have it otherwise, the law of the reporter's privilege makes it more difficult for a litigant to gain access to a journalist's files than to the files of any other third party witness. That is why compelled production of information from a journalists' files is the exception, not the rule.

Subpoena Motion")[7] allows the CFTC to bypass the showing required of every other litigant who would overcome the reporter's privilege. The CFTC's interpretation of that decision and its effort to sweep therein four varied and distinct cases from around the country not only contradicts controlling law, but it completely overlooks the distinctions between the issues before the Court in the DC Administrative Subpoena Motion and the issues raised by the CFTC's present application. Critically, the CFTC ignores the facts that the subpoena to be enforced in the prior case was: (1) an administrative subpoena; (2) issued under the authority of the Commodity Exchange Act, Title 7, Chapter 1, § 15; and (3) in furtherance of an investigation of an Energy Company wholly unrelated to any of the individual defendants in the four cases at issue here.[8]  Indeed, it was the investigatory context – a context which this Court likened to that of a grand jury – that led this Court to conclude that "the posture of this matter calls for a *more qualified* view of the privilege than would be appropriate in a purely civil case." *CFTC v. McGraw-Hill,* 390 F. Supp.2d at 33 (emphasis added).  The ruling in that case simply does not

---

[7]    Pursuant to order of this Court, McGraw-Hill was directed not to disclose the name of the Energy Company under investigation in the prior motion and therefore will refer to that company as "Energy Company." Energy Company was not the employer of any of the individual defendants that are the subject of the four enforcement actions at issue on this motion. As far as can be told from the public record, the four cases consolidated by this motion do not even peripherally involve Energy Company. Tellingly, more than five months after McGraw-Hill produced documents regarding Energy Company, the CFTC has taken no public action against either Energy Company or any of its employees or former employees. This Court will recall that the sole reason the CFTC brought the DC Administrative Subpoena Motion was that Energy Company was not among the at least 22 companies whose records had been subpoenaed by the CFTC in federal court in Texas. (Ex. 7) Indeed, four of the five defendants in the four underlying litigations were employees of companies whose documents were the subject of the subpoenas in Texas, and that proceeding has now been dismissed with prejudice. (Exs. 7, 8).

[8]    Further, this Court's decision, *CFTC v. McGraw-Hill,* 390 F. Supp.2d 27 did not address the propriety of a protective order. As the Court noted in deciding McGraw-Hill's motion for clarification, a request for a protective order was not made before the Court in opposition to the CFTC's motion to compel and when this Court declined to modify this initial ruling, it did so on the grounds that the request for a protective could have been, but was not, raised in opposition to the initial motion and therefore was "not permitted in a Rule 59(e) motion." *CFTC v. McGraw-Hill,* 403 F. Supp.2d 34, 38 (D.D.C. Dec. 2005).

"necessitate" any particular findings with regard to the four subpoenas at issue here.

The four cases consolidated in this motion are civil actions brought against individual traders, after the CFTC had completed its investigation of the energy companies who had employed these individual defendants and, in fact, settled all claims against the employers. (Exs. 21-24) The subpoenas to be enforced issue under the authority of Rule 45 and, unlike an investigatory subpoena, must be limited to information relevant to the underlying suits for which they are sought. The CFTC is neither entitled to claim the "more qualified view of the privilege" that this Court applied in the investigatory context, nor is it entitled to assume, without making a particularized showing for each of the four separate cases, that the reporter's privilege has been overcome in those cases.

The CFTC's total failure to offer a particularized showing as to why the privilege is overcome in each case not only dooms the CFTC's position, but also strongly suggests that the principal reason for the CFTC's refusal to limit the use of the documents to the cases for which they are sought is to nullify its unsuccessful attempt to enforce an administrative subpoena issued to McGraw-Hill in the context of the CFTC's investigation of AEP, CMS and Duke Energy (the employers of the defendants in the Ohio, Oklahoma and Texas Cases). The CFTC made its attempt to enforce that administrative subpoena in the Southern District of Texas ("Texas Administrative Subpoena Motion"). That motion had already been fully briefed, argued and submitted before Judge Hughes when, in March of this year, the CFTC attempted to withdraw it without prejudice. McGraw-Hill objected to that attempt and Judge Hughes treated the CFTC's attempt to withdraw as a motion and granted the motion, dismissing the action *with prejudice*.[9]

---

[9]    The CFTC never sought review of Judge Hughes decision but now argues in this court that even though the issue had been fully joined on that motion to compel and the motion had been fully briefed and argued, it was nevertheless entitled to withdraw the motion without

Since the subpoena at issue in the Texas Administrative Subpoena Motion was issued in the context of the CFTC's investigation of manipulation in the natural gas market, the scope of the CFTC's investigatory authority, at least with regard to CMS, AEP and Duke Energy – the employers of the individual defendants Bradley, Martin, Foley and Whitney – has thus already been determined *with prejudice*. It is thus improper for the CFTC to attempt to re-open the issue of the scope of its investigatory power by way of these cases against individual traders.[10]

### C.    The Subpoenas Are Not Issued in Furtherance of the CFTC's Investigatory Authority

The CFTC's other objection to the entry of any sort of order appears to derive from its purported concern that it *may* wish to share McGraw-Hill's privileged documents with other governmental agencies who *may* also be investigating attempts to manipulate the natural gas index prices (Opp. Br. at 27) or that it *may* wish to use the documents in furtherance of the CFTC's obligation to pursue any unexpected evidence of misconduct that *may* fortuitously be revealed by the requested documents. (Opp. Br. at 28-29) Just as these hypothetical concerns do not provide reason to set aside the privilege (*see* Cross Br. at 29), they do not provide sufficient justification for refusing to agree to a protective order.

The Department of Justice is actively pursuing claims against several natural gas traders

---

prejudice because an answer – a pleading that was never required in the context of an administrative enforcement action – had not been served in that action. This attempt to elevate form over substance should be rejected. McGraw-Hill filed the only answer it could have filed in the Texas Administrative Subpoena Motion in response to the CFTC's motion to compel, and a good deal of time and effort had been expended by the court and the parties in that proceeding. Notably, the CFTC never objected to Judge Hughes' dismissal *with prejudice* and, even if it had, the cases it cites in support of its objection are inapposite in that they arise in the context of traditional lawsuits in which answers and motions for summary judgment *could* have been filed.

[10]    To the extent the CFTC blames McGraw-Hill for not producing documents that would have allowed the CFTC to allege a perfected manipulation claim against these four defendants (Opp. Br. at 14), the CFTC's complaint arises out of its dissatisfaction with the outcome of the legal process instituted by the CFTC in the Southern District of Texas and not about any actions appropriately presented to this Court.

and, as far as McGraw-Hill can tell, has had no trouble asking McGraw-Hill directly for information it deems necessary for its prosecutions. To the extent any other federal, state or local agencies decide to request information from McGraw-Hill, they can seek that information from McGraw-Hill and have the opportunity to make the showing that the privilege is overcome for their purposes. As far as the CFTC's own investigatory needs are concerned, the CFTC has already settled its claims against the energy companies who had employed the individual traders who are the subject of the instant actions and these particular actions are not the CFTC's only, or even primary, means of investigating other energy companies.[11]

By refusing to treat McGraw-Hill's privileged documents as confidential, the CFTC is claiming for itself the power to deprive McGraw-Hill of its right to assert the privilege and its right to require a showing that its documents be used only in circumstances in which the privilege is overcome. The CFTC's position is wholly unjustified and should be rejected.

## II.    In Addition to Being Protected by the Journalist's Privilege, the Documents at Issue Also Contain Trade Secrets that Should be Protected by a Confidentiality Order

The CFTC argues that the spreadsheets it seeks to compel McGraw-Hill to produce do not qualify for protection as trade secrets because McGraw-Hill publishes a methodology that explains generally the process by which McGraw-Hill generates its index prices and which illustrates the process by providing "example data based on actual survey, *modified to protect participants' identities, other confidential information.*" (Opp. Br. at 22; Ex. 10 to Mansfield Dec. [emphasis added]) The CFTC takes the position that this "sample data" is basically the same as McGraw-Hill's internal spreadsheets and that the spreadsheets therefore cannot be considered trade secrets.[12]

---

[11]    In addition, as discussed in Point III below, the protective order provides a mechanism to address these alleged investigatory needs.

[12]    While the CFTC guides its analysis of the need for protection of McGraw-Hill's trade-

In fact, however, the trade secrets contained on the McGraw-Hill internal spreadsheets are not included in the information published in the methodologies. (6/06 Doolan Dec. ¶ 10)

# REDACTED

These additional elements, which do not appear in the published methodologies, clearly fit within the definition of trade secret. *See John Does I-IV v. Yogi*, 110 F.R.D. 629, 632-33 (D.D.C. 1986) ("A trade secret may consist of any formula, pattern, device, or compilation of information used in one's business, and which give him an opportunity to obtain an advantage

---

secrets by reference to the factors considered by the court in *U.S. v. Phillips*, Criminal No. H-04-512 (S.D.TX filed Nov. 17, 2004), it does not inform this Court, that the court in that case granted McGraw-Hill's request for confidential treatment of its documents to the extent of requiring defendant Phillips to treat any McGraw-Hill material to which he was given access as confidential. The court declined to rule on what protections would be appropriate during trial of that case, but made clear that McGraw-Hill was free to raise the issue again should trial of that criminal case go forward.

[13]    The CFTC attaches a blank spreadsheet to its Opposition (*see* Exhibit 9 to the Supplemental Mansfield Declaration) to show its similarity to McGraw-Hill's spreadsheets. Yet comparing the two spreadsheets makes clear that the most important aspects are the data, comments and formatting McGraw-Hill puts into its sheets. If taken to its logical extreme, the CFTC's argument would imply that no Excel spreadsheet could ever be a trade secret because it is just a large grid filled with numbers and mathematical formulas.

over competitors, who do not know or use it.").

# REDACTED

It would also reveal some of McGraw-Hill's most secret and confidential editorial determinations and thought processes and provide a road-map illustrating the process by which McGraw-Hill price reporters arrive at index prices. The methods McGraw-Hill uses for gathering information and performing its index price assessments – *i.e.*, information that would provide step by step instructions for reproducing internal operations – are just the sort of strategic information that courts in this Circuit have found qualify as trade secrets. *See, e.g., Raytheon Co. v. Department of Navy, Naval Air Systems Command,* 1989 U.S. Dist. LEXIS 18281, *11-*12 (D.D.C. 1989) (finding that "pricing strategy" was trade secret, even when the information to be made available was not very detailed); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,* 93 F. Supp.2d 1, 15 (D.D.C. 2000) (finding that since information involving the number of stages it takes for an air bag to inflate can be used as part of a system strategy, the number of inflation stages should be deemed a trade secret). The fact that the end result of this internal process – the index price – is published is of no consequence. As the court reasoned in *Ctr. for Auto Safety,* the specific elements that comprise the air bags' inflation do not lose their status as trade secrets merely "because the manufacturers have publicly disclosed them by putting their vehicles on the market." *Id.* at 15. Similarly, the fact that McGraw-Hill publishes sample methodologies that show *some* of what is on the spreadsheets does not vitiate the need to keep the spreadsheets underlying actual index prices – which show a step-by-step process held closely by McGraw-Hill – confidential and protected.

McGraw-Hill goes to great lengths to keep these documents confidential. The mere fact that that some spreadsheets may be needed for a litigation in which McGraw-Hill has no interest should not provide reason to publish McGraw-Hill's trade secrets to the world. (12/04 Doolan Aff. ¶ 10) For this additional reason, the modest protective order requested by McGraw-Hill before turning over the requested documents is plainly warranted. (*See* Cross Br. at 16)[14]

## III. The CFTC's Objections to McGraw-Hill's Proposed Protective Order Are Unfounded

### A. The Protective Order Addresses the CFTC's Alleged Objections

Finally, and perhaps most importantly, none of the concerns about the implementation of the protective order raised by the CFTC provide reason to deny McGraw-Hill's request to bind the CFTC to a confidentiality order. Indeed, these concerns are either already accommodated by McGraw-Hill's proposed order or could have been accommodated if the CFTC had actually attempted to negotiate the terms of an order that would have addressed its concerns. For example, the CFTC's alleged concern about the hypothetical need to share the McGraw-Hill documents with other government agencies or about the CFTC's potential need to use the McGraw-Hill documents in pursuit of claims against other defendants (Point I(C), above) is actually alleviated by paragraph 6 of the form of the protective order proposed by McGraw-Hill. Under that paragraph, the CFTC may object at any time to the continued treatment of any McGraw-Hill documents as remaining subject to the protective order simply by informing

---

[14]    The CFTC interprets McGraw-Hill's motion for a protective order as being limited to requesting protection for the spreadsheets. (Opp. Br. at 21, note 12) As explained above, however, the submissions McGraw-Hill collects from its sources also contain trade secrets collected from sources and are deserving of continued confidential treatment. The CFTC disingenuously argues that the concerns of the sources are not at issue here because the CFTC is requesting the production, not the sources' competitors. If the CFTC were amenable to a protective order, that concern might be answered, but because it is not, and because the CFTC has indicated its intent to include the requested documents in the public record and to produce them in litigations that may involve a sources' competitors, the information must be recognized as a trade secret and protected by the court.

"McGraw-Hill of its objection, and its reasons for such objection in writing." If McGraw-Hill believes in good faith that the documents should remain subject to this protective order, the burden falls on McGraw-Hill to seek a ruling from this Court to that effect. This provision thus allows the CFTC to raise with McGraw-Hill the need to share information with McGraw-Hill so that McGraw-Hill can satisfy itself that the proposed use arises in a context in which the privilege could be overcome. If there is any disagreement, it is McGraw-Hill's burden to seek relief, but it is the Court that will act as the "gatekeeper."

The CFTC's argument that the protective order may unduly interfere with the trial of this matter is also a red herring. (Opp. Br. at 29) Indeed, the protective order McGraw-Hill seeks by way of its cross-motion does not address procedures that should be followed at trial, except to indicate that any McGraw-Hill documents actually filed with the Court be filed under seal. In order to protect the confidentiality of any of its documents that might be used at trial of any of the four cases, McGraw-Hill intends to seek relief, sufficiently in advance of trial, from the courts in which the trial will take place. A similar procedure has been followed in several of the criminal cases for which McGraw-Hill has already had to produce documents pursuant to grand jury subpoenas. In recent weeks, a trial Court in the Southern District of Texas, having indicated that all of McGraw-Hill's privileged documents would remain under seal until trial, also approved a procedure for use of McGraw-Hill documents at trial which adequately addressed McGraw-Hill's concerns by simply requiring that any McGraw-Hill documents that may be introduced as exhibits at trial be displayed in such a way that they are visible to the Court and the jury, but not visible to the public attending the trial. (Foley Dec. ¶ 8) [15]

---

[15]   This result was reached after a hearing (closed to the public) that was recently convened to address the issues of the propriety of a protective order during the trial of that case. If this Court finds itself disinclined to grant McGraw-Hill's request for a protective order on the papers

To the extent that McGraw-Hill has been compelled, to date, to produce some of its privileged and proprietary documents, those productions have all been made subject either to protective orders, grand jury secrecy rules or other statutes or regulations that require confidential treatment of the documents. There is nothing about these four cases that would require any different result here.

### B.    The Protective Order Will Not Interfere With a Public Trial

Without foundation, the CFTC argues that paragraph 3 of the proposed protective order (which requires parties who may need to submit McGraw-Hill documents to the court do so under seal) is tantamount to excluding evidence. Ironically, the cases the CFTC cites in making this argument, do more to support McGraw-Hill's request for a protective order at this pre-trial stage than they do for the CFTC's position. For example, the CFTC points to a Supreme Court case that holds: "restraints placed on discovered, but not yet admitted information are not a restriction on a traditionally public source of information," (Opp. Br. at 30, *citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)) – a holding wholly supportive of McGraw-Hill's request for protection here. Likewise, the passage from Wright & Miller cited by the CFTC establishes that the case for a protective order is stronger at the pre-trial stages (*e.g.*, "unlimited access to all materials considered on a motion for protective order would eviscerate protections") and weakens if the documents are used at trial or "as the basis for a judicial decision on the merits of the case, as by summary judgment." (*See* Opp. Br. at 30, *citing* 8 Wright, Miller & Marcus, *Federal Practice and Procedure*, § 2042, p.550-51 (1994 West Publishing Co.)) Thus, as the CFTC acknowledges, the public's interest in access to the sealed document is not implicated until the document is used at trial, or relied on in determination of a dispositive

offered herein, McGraw-Hill respectfully requests that a similar hearing allowing for live testimony (closed to the public during discussion of the trade secrets) be held in this proceeding before McGraw-Hill's request for a protective order is denied.

motion. Neither of these situations exists at this time and should they arise, paragraph 4 of the proposed protective order includes a mechanism for unsealing documents if appropriate. Given that throughout in the four years of its investigation into the manipulation of the price of natural gas, the CFTC has yet to bring a single case against either an individual trader or an energy company all the way to trial, there is certainly no need to allow the potential use of the documents at trial determine the propriety of the issuance of a protective order that applies to the pre-trial stages. Carried to its logical conclusion, the CFTC's argument here would mean that the potential use of documents at trial would preclude any court from ever issuing a confidentiality order.

## IV.    The CFTC's Objections to Narrowing the Subpoena Focus on Hypothetical and Peripheral Issues That Do Not Go to the Heart of the Matter

In attempting to justify its refusal to narrow the scope of the subpoena to the material that goes to the heart of the matter and is unavailable elsewhere and its refusal to allow for redaction of the names of sources other than the energy companies for whom the defendants had worked, the CFTC identifies several hypothetical and largely peripheral uses that it says it might make of some of the McGraw-Hill documents it seeks. As with its objections to keeping the documents confidential, these hypothetical proffers fail to provide reason to deny McGraw-Hill's request to narrow the scope of the CFTC's subpoenas. Indeed, comparison of McGraw-Hill's proposal and the CFTC statement of what it needs shows that McGraw-Hill's proposal will, in fact, meet the CFTC's needs. *Compare, e.g.,* Cross Br. at 2 ("McGraw-Hill would provide the CFTC with the data it had collected from the employers of the defendants and considered in creating the indices, the CFTC would compare this data to the records of actual trades and thereby identify the instances of false reporting") and Opp. Br. at 5 (CFTC needs to: "compare the actual trades with the trades reported to the index compiler").

Indeed, during the course of argument held in the Oklahoma case on the defendants' motion to compel and the CFTC's motion to clarify and/or vacate a protective order entered between McGraw-Hill and the defendants, the CFTC conceded that the "three core categories of documents" referred to in the CFTC's moving papers on this motion (Mov. Br. at 5) would satisfy the CFTC's need for documents, at least for purposes of the Oklahoma case. (Tr. at 58-59) As McGraw-Hill noted in its opposition to the CFTC's motion to compel and in support of its motion for a protective order, if the CFTC had made that concession during negotiations with McGraw-Hill, there may not have been any issue before this Court, or the only issue would have been about a protective order. (Cross Br. at 4) In light of this concession, we respectfully submit that the four subpoenas should, in addition to any further restrictions issued by this Court, at least be limited to the "three core categories" of documents identified by the CFTC.[16]

A.    **The Subpoenas are not Tailored to the Specific Needs of Each Case**

Because the CFTC has wrongly *assumed* that the privilege has been overcome, the CFTC has not even bothered to make particularized showings of how each of the subpoenas seeks only information for which the privilege has arguably been overcome. For example, the CFTC has admitted that the claims in the Texas Action (against Mr. Whitney, a former Duke Energy employee) and the Colorado Action (against Mr. Richmond, a former Western Gas Resources

---

[16]    The CFTC's opposition to McGraw-Hill's cross motion does not even attempt to address the fact that the subpoenas would require McGraw-Hill to search for and produce information or communications from energy companies other than the employers of the defendants (*see* Cross Br. at 34) or to rebut McGraw-Hill's specific objections to the breadth of several of the requests and to show how the probative value of the information sought would outweigh the burden to McGraw-Hill. (*See* Cross Br. at 35-39). To the extent that the CFTC attempts to address each of these objections by way of a representative example about why the request for submissions cannot be limited to submissions made by the individual defendants themselves (Opp. Br. at 9-11), the attempt is inadequate. That argument should have been part of the negotiations between McGraw-Hill and the CFTC. At best, it might show why modifications other than those proposed by McGraw-Hill might better suit the CFTC's needs, but it does not justify the CFTC's refusal to make any modification whatsoever.

employee) concern alleged false reporting to *Gas Daily* only and not to *Inside FERC*. (*See* Exs. 4 and 5; Otten Declaration at ¶¶ 3-4) Inexplicably, however, the subpoenas issued in these two cases seek submissions to and spreadsheets maintained by both *Inside FERC*, and *Gas Daily*. Messrs. Whitney and Richmond apparently traded in the daily market (Exs. 4, 5) and there does not appear to be reason to believe that either of them made *any* submissions to *Inside FERC*, let alone false submissions. Accordingly, to the extent the subpoenas in the Texas and Colorado cases seek information about *Inside FERC*, they clearly seek information well outside of the heart of the claims against these individual traders. Similarly, the CFTC provides no reason why, in the Oklahoma action against two former employees of CMS, it has not limited the information requested to the identified instances of false reporting that are cited in the complaint against those defendants. (*See* Ex. 6 at ¶¶ 40-41) To the extent is not so limited, it clearly exceeds the heart of the matters at issue.

Perhaps the most egregious example of the CFTC seeking information that cannot possibly go to the heart of the matters is its insistence on production of the database containing the data considered in determination of the *Gas Daily* indices. As explained more fully in the accompanying declaration of Larry Foster, the Global Editorial Director for Platts' Power publications, the transaction data collected for purposes of creating the *Gas Daily* daily indices was not kept in Excel spreadsheet format, but rather in a database program. Until approximately November 2002, the database was not set up to keep track of the source of each item of data considered in the creation of the daily indices. (6/06 Foster Dec. ¶¶ 4-5) Thus, until November 2002 there is simply no way of identifying which of the portions of the database contain data submitted by any of the individual defendants or their employers. (6/06 Foster Dec. ¶ 6) Despite being informed of this fact, the CFTC continues to push for the daily data, regardless of the

impossibility of its utility in these cases. This pointless request demonstrates just how far beyond the heart of the matter the CFTC's requests here go.

In short, based on the CFTC's own admissions and on the faces of the complaints filed in the underlying actions, the subpoenas clearly ask for more than just that which goes to the heart of the matters at issue.[17]

## B.    Defendants Are Not Charged With a Perfected Manipulation

Not only do the subpoenas seek far more than is required to prove the CFTC's claims, but they also seek information that would only be relevant if the defendants were charged with a perfected manipulation. In fact, however, none of the four cases consolidated herein charge the defendants with a perfected manipulation. (*See* Exs. 3-6.) Rather, each of the individual defendants is charged with submitting false data to McGraw-Hill and thereby *attempting* to manipulate the McGraw-Hill indices. (Ex. 3 at 7; Ex. 4 at 9; Ex. 5 at 7, 9, 11; Ex. 6 at 9, 12.) Nowhere are defendants alleged to have actually succeeded in manipulating an index price. Accordingly, questions like (1) whether any allegedly false trade data submitted by defendants was potentially large enough to impact the index price (Opp. Br. at 13), (2) whether any such data actually impacted the index price (Opp. Br. at 5) and/or (3) whether submissions by any other source of trade data could be said to have counteracted any potential effect of defendants' submissions[18] (Opp. Br. at 13) simply are not at issue here and certainly do not go to the heart of

---

[17]    As raised in McGraw-Hill's cross-motion for a protective order, but not at all addressed by the CFTC's opposition papers, by refusing to narrow its subpoena to information that is unavailable from defendants or their employers, the CFTC has totally failed to exhaust alternative sources. (Cross Br. at 31)

[18]    The CFTC attempts to argue that this defense is not speculative because it has, in fact, been raised by other defendants in a class action against a group of energy companies pending in New York (Opp. Br. at 13, *citing In re Natural Gas Commodity Litigation* (S.D.N.Y. 03 Civ. 6186(VM)(AJP)). The *In re Natural Gas Commodity* litigation does not, in fact, support the CFTC's position in this regard. First of all, the allegations in that case brought by a class of NYMEX traders, contend that defendants actually succeeded in manipulating McGraw-Hill's

the CFTC's claims against these defendants.[19]

Moreover, even if a perfected manipulation had actually been alleged, the CFTC has not, as the Oklahoma Court has observed, shown why it should need more than: (1) the submissions of trade data by defendants, (2) the spreadsheets reflecting the data considered in determining the index prices and, perhaps, (3) the information published by McGraw-Hill describing the type of information that should be reported for consideration of McGraw-Hill's index prices. (Tr. 74-75) Accordingly, even if the CFTC had alleged a perfected manipulation in any of the four cases, that fact would still not justify compelled production of anything more than the CFTC's own recitation of "three core categories" of documents.

### C.    The Subpoenas Seek Cumulative Information

The CFTC also attempts to justify the scope of the four subpoenas by reference to a series of hypothetical defenses which they imagine defendants might raise. None of the imagined defenses, however, have actually been raised in any of the underlying cases and, indeed, the CFTC itself is skeptical of the viability of some of the defenses (e.g., Opp. Br. at 11-14). Moreover, the CFTC has alternative methods at its disposal to rebut the imagined defenses (e.g., Opp. Br. at 11-14). Finally, even if the imagined defenses did go to the heart of the matter and there were no alternate means available to rebut them, the CFTC has again failed to show why anything more than the three "core categories" of documents sought would be needed.

---

index prices which, in turn, manipulated NYMEX prices. The case thus rises or falls on the plaintiffs' ability to prove a perfected manipulation. Even given this fact, the Court in the *In re Natural Gas Commodity* litigation ***denied*** the relief requested by defendants by way of the motion quoted by the CFTC and has yet to permit defendants to take any of the discovery that would be needed to make that defense. (Ex. 20) At any rate, because a perfected manipulation has yet to be charged in any of the four cases at issue here, the defense is inapplicable. Importantly, and more relevant here, there is a comprehensive protective order in place in *Natural Gas Commodity Litigation* which will cover all information McGraw-Hill will be required to produce in that case. (Ex. 20)

[19]    Indeed, a case for perfected manipulation for trial would face many hurdles, not the least of which is the editorial component of determination of the index price. (Cross Br. at 29-30).

For example, the CFTC's claims that all submissions made by all traders employed by the companies who employed the individual defendants go to the heart of the matter of this case because they may be used to refute a possible defense that defendants did not understand what data they were supposed to submit to McGraw-Hill. (Opp. Br. at 11) This position is simply untenable. In fact, the CFTC now concedes that there are, in fact, many other ways to rebut this potential defense. (Opp. Br. at 11-13) Rather than identify a concrete situation in which it reasonably believes that these alternatives will be unavailable, the CFTC argues that because of the "vagaries of trial practice" it wants all submissions just to make sure its trial arsenal is completely full. This is thus a classic example of a litigant seeking cumulative evidence which simply does not go to the heart of the matters at issue in the case. *See, e.g., In re Natural Gas Commodity Litigation*, 2005 WL 3036505, *15 (S.D.N.Y. Nov 16, 2005) ("Information sought that would be cumulative of other evidence cannot be "necessary or critical" under the test."), *modified by*, 2006 WL 1044224 (S.D.N.Y. Apr 18, 2006); *Dowd v. Calabrese*, 577 F. Supp. 238, 242 (D.D.C. 1983) (Where plaintiffs have "many alternative sources of evidence bearing on [witness's] credibility," "[t]he Court concludes that the First Amendment interest in protecting these two sources far outweighs plaintiffs' need for what would be collateral and cumulative evidence at best, and the motion to compel with respect to these two sources will be denied.")

## CONCLUSION

For the reasons stated above, and the papers submitted by McGraw-Hill in opposition to the CFTC's motion to compel and in support of McGraw-Hill's cross-motions, McGraw-Hill respectfully requests that its Cross-Motions be granted. Specifically, McGraw-Hill requests that this Court deny the CFTC's motion to compel and grant McGraw-Hill's motion for a protective order that narrows the subpoenas at issue as set forth in the proposed protective orders attached as Annexes A-D of McGraw-Hill's cross-motion and that requires that the documents that

McGraw-Hill produces be subject to the terms of a protective order in the forms attached as Annexes A-D to the cross-motion and to grant such other and further relief as this Court may deem appropriate.

Dated:  June 14, 2006

                               Respectfully submitted,

                               s/  Richard L. Cys
                               Richard L. Cys
                               D.C. Bar No. 087536
                               DAVIS WRIGHT TREMAINE LLP
                               1500 K Street, N.W.
                               Suite 450
                               Washington, D.C. 20005-1272
                               (202) 508-6600 (phone)
                               (202) 508-6699 (fax)
                               *Counsel for Third Party The McGraw-Hill Companies, Inc.*

                               Of Counsel:
                               Victor A. Kovner (*pro hac vice* admission pending)
                               Carolyn K. Foley (*pro hac vice* admission pending)
                               Kevan D. Choset (*pro hac vice* admission pending)
                               DAVIS WRIGHT TREMAINE LLP
                               1633 Broadway
                               New York, New York 10019
                               Telephone:  (212) 489-8230
                               Facsimile:  (212) 489-8340
                               Email:  carolynfoley@dwt.com

Of Counsel:
William Farley, Esq.
Adam Schuman, Esq.
The McGraw-Hill Companies, Inc.
1221 Avenue of the Americas
New York, New York  10020