# EXHIBIT 25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 05-CV-62-JHP-FHM |
| JEFFREY A. BRADLEY and ROBERT L. MARTIN | ) ) ) | |
| Defendants. | ) | |

## PROTECTIVE ORDER

Pursuant to the application (Document No. 89) of Defendants Jeffrey A. Bradley and Robert L. Martin ("Defendants") and The McGraw-Hill Companies, Inc. ("McGraw-Hill"), through their respective counsel of record, the Court finds that in accordance with Rule 26(c) of the Federal Rules of Civil Procedure, a protective order should be entered pursuant to the following terms and provisions:

1.     Except as provided below, Defendants shall limit their dissemination of the McGraw-Hill Documents[1] to the parties, their attorneys, their employees, experts or consultants and witnesses, and these individuals or entities will be similarly bound by this Protective Order.

2.     Use by Defendants of the McGraw-Hill Documents shall be strictly limited to

---

[1]     For purposes of this protective order, "McGraw-Hill Documents" refers to those documents that McGraw-Hill produced to the United States Commodity Futures Trading Commission ("CFTC") pursuant to a court order dated October 4, 2005 in the action captioned, *The United States Commodity Futures Trading Commission v. The McGraw-Hill Companies, Inc.*, (U.S. District Court for the District of Columbia Misc. No. 05-235 [RCL]) which the CFTC has indicated that it intends to produce in this Action pursuant to a document request issued by Defendant Jeffrey A. Bradley (the "McGraw-Hill Documents") as well as any documents that

the present civil case only and shall not be shared, in any manner, with any individual or entity beyond those designated pursuant to paragraph 2, and the McGraw-Hill Documents will not be used by Defendants, their attorneys, their employees, experts and consultants or witnesses for any other commercial, business, competitive, or other purpose, or for any other judicial, quasi-judicial or administrative proceedings, dispute or case.

3.      Should the Defendants determine it is necessary to file with this Court any pleadings, motions or other materials that include or refer to the McGraw-Hill Documents, that party shall file such pleadings, motions or other materials under seal pursuant to Rule 26(c)(8) of the Federal Rules of Civil Procedure and shall file in the public record a version of such pleadings, motions or other materials from which the documents produced by McGraw-Hill have been either removed or redacted.  Filings and submissions under seal, and service thereof, shall be made in a sealed envelope or other appropriate sealed container on which the filing or submitting party shall indicate the caption of this action, the contents of the envelope or container, the phrase "Confidential—Filed or Submitted Under Seal" and the following statement:

> This envelope or container is sealed and contains confidential information protected by order of the United States District Court for the Northern District of Oklahoma.  This envelope or container shall not be opened or have its contents displayed or revealed except by officers of the court or attorneys for parties to this action, other persons authorized to have such access or disclosure pursuant to the Protective Order entered in Case No. 05-CV-62-JMP-FHM in the United States District Court for the Northern District of Oklahoma, or by further order of the United States District Court for the Northern District of Oklahoma or written stipulation of McGraw-Hill and Defendants.  Absent such further order or stipulation, any authorized person reviewing the contents hereof must return them to the proper custodian in a sealed envelope or container.

---

McGraw-Hill may produce in response to any third party subpoenas that it may be served with by any party to the captioned action.

4.     If one or more of the Defendants determine it is necessary to present, introduce as evidence or otherwise discuss before this Court the McGraw-Hill Documents, that Defendant shall provide McGraw-Hill with at least 10 business days prior written notice of such determination. McGraw-Hill must move within 5 business days of such notice for a protective order limiting public disclosure of said documents. Defendants shall not disclose in open court proceedings said documents until resolution of McGraw-Hill's motion for a protective order.

5.     Should any party or a third party to this civil case seek to challenge the sealed status of any materials filed with the Court including or otherwise disclosing the McGraw-Hill Documents subject to this Stipulation and Protective Order, that party or third party shall be required to serve all parties in this case and McGraw-Hill with said motion at least 10 days in advance of any scheduled hearing date. McGraw-Hill must file and serve its response within 5 business days of being served with the motion. The material shall remain sealed pending the Court's resolution of the dispute.

6.     Every person described in paragraph 2 who is given access to the McGraw-Hill Documents shall be provided with a copy of this Protective Order prior to receipt of the McGraw-Hill Documents and shall be advised that the documents are being disclosed pursuant to and subject to the terms of this Protective Order and may not be disclosed or used other than in accordance with this Protective Order.

7.     Defendants may object at any time to the continued treatment of any McGraw-Hill Documents subject to the terms of this Protective Order. Whenever that party objects to the continued treatment of McGraw-Hill Documents as subject to this Protective

Order, that party shall inform McGraw-Hill of its objection, and its reasons for such objection in writing. Such writing shall be delivered to McGraw-Hill by hand delivery, courier or facsimile transmission. If McGraw-Hill believes in good faith that the documents should remain subject to this Protective Order, McGraw-Hill shall have 10 business days to seek a ruling from this Court as to whether the documents should continue to be treated pursuant to the terms of this Protective Order. Until the Court enters an order, if any, changing the designation of any McGraw-Hill documents marked as "Confidential," the documents shall remain subject to the terms of this Protective Order.

8.     Within 90 days after the end of this civil case, including the exhaustion of all appeals, Defendants shall return the originals and all copies of the McGraw-Hill Documents or provide a certificate of destruction to McGraw-Hill that said documents have been destroyed, except that any McGraw-Hill Documents that have been referred to or attached to any pleadings, motions or other materials filed in this civil case need not be destroyed or returned, though they remain subject to this Protective Order so long as they are not returned or destroyed.

9.     Any notices to be provided to McGraw-Hill pursuant to this Protective Order shall be provided to Victor A. Kovner, Esq. and Carolyn K. Foley by facsimile at 212-489-8340 and by over-night courier service at Davis Wright Tremaine, LLP 1633 Broadway, New York, NY 10024.

10.     The terms of this Protective Order shall remain in force and effect until modified, superseded, or terminated by order of the Court. The terms of this Protective Order shall be binding upon the conclusion of this Action and the Court shall retain jurisdiction over the parties for enforcement of the terms of this Protective Order following

conclusion of this Action.

It is SO ORDERED this 28th day of March, 2006.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 26

**APPENDIX A**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| UNITED STATES COMMODITY FUTURES ) TRADING COMMISSION, ) ) Plaintiff, ) ) v. ) ) JEFFREY A. BRADLEY and ROBERT L. ) MARTIN, ) ) Defendants ) ) ) ) | Case No. 05-CV-62-SHE-FHM **[PROPOSED ORDER]** |

IT IS HEREBY AGREED by and between Plaintiff the U.S. Commodity Futures Trading

Commission ("CFTC" or "Plaintiff") and The McGraw-Hill Companies, Inc. ("McGraw-Hill"),

through their respective counsel of record, that in accordance with Rule 26(c) of the Federal

Rules of Civil Procedure, a protective order should be entered pursuant to the following terms

and provisions:

      1.     Except as provided below, Plaintiff shall limit its dissemination of the McGraw-

Hill Documents[1] to the parties, their attorneys, their employees, experts or consultants and

witnesses, and these individuals or entities will be similarly bound by this Protective Order.

      2.     Use by Plaintiff of the McGraw-Hill Documents shall be strictly limited to the

present civil case only and shall not be shared, in any manner, with any individual or entity

beyond those designated pursuant to paragraph 1, and the McGraw-Hill Documents will not be

---

[1] For purposes of this protective order, "McGraw-Hill Documents" refers to any documents that McGraw-Hill may produce in response to any third party subpoenas that it may be served with by any party to the captioned action.

used by Plaintiff, its attorneys, its employees, experts and consultants or witnesses for any other commercial, business, competitive, or other purpose, or for any other judicial, quasi-judicial or administrative proceedings, dispute or case.

3.    Should the Plaintiff determine it is necessary to file with this Court any pleadings, motions or other materials that include or refer to the McGraw-Hill Documents, that party shall file such pleadings, motions or other materials under seal pursuant to Rule 26(c)(8) of the Federal Rules of Civil Procedure and shall file in the public record a version of such pleadings, motions or other materials from which the documents produced by McGraw-Hill have been either removed or redacted. Filings and submissions under seal, and service thereof, shall be made in a sealed envelope or other appropriate sealed container on which the filing or submitting party shall indicate the caption of this action, the contents of the envelope or container, the phrase "Confidential—Filed or Submitted Under Seal" and the following statement:

> This envelope or container is sealed and contains confidential information protected by order of the United States District Court for the Northern District of Oklahoma. This envelope or container shall not be opened or have its contents displayed or revealed except by officers of the court or attorneys for parties to this action, other persons authorized to have such access or disclosure pursuant to the Protective Order entered in Case No. 05-CV-62-JMP-FHM in the United States District Court for the Northern District of Oklahoma, or by further order of the United States District Court for the Northern District of Oklahoma or written stipulation of McGraw-Hill and Defendants. Absent such further order or stipulation, any authorized person reviewing the contents hereof must return them to the proper custodian in a sealed envelope or container.

4.    Should any party or a third party to this civil case seek to challenge the sealed status of any materials filed with the Court pursuant to paragraph 3, above, that party or third party shall be required to serve all parties in this case and McGraw-Hill with said motion at least 7 days in advance of any scheduled hearing date. McGraw-Hill must file and serve its response within 4 business days of being served with the motion. The material shall remain sealed

pending the Court's resolution of the dispute.

     5.      Every person described in paragraph 1 who is given access to the McGraw-Hill Documents shall be provided with a copy of this Protective Order prior to receipt of the McGraw-Hill Documents and shall be advised that the documents are being disclosed pursuant to and subject to the terms of this Protective Order and may not be disclosed or used other than in accordance with this Protective Order.

     6.      Plaintiff may object at any time to the continued treatment of any McGraw-Hill Documents subject to the terms of this Protective Order. Whenever that party objects to the continued treatment of McGraw-Hill Documents as subject to this Protective Order, that party shall inform McGraw-Hill of its objection, and its reasons for such objection in writing. Such writing shall be delivered to McGraw-Hill by hand delivery, courier or facsimile transmission. If McGraw-Hill believes in good faith that the documents should remain subject to this Protective Order, McGraw-Hill shall have 10 business days to seek a ruling from this Court as to whether the documents should continue to be treated pursuant to the terms of this Protective Order. Until the Court enters an order, if any, changing the designation of any McGraw-Hill documents marked as "Confidential," the documents shall remain subject to the terms of this Protective Order.

     7.      Within 90 days after the end of this civil case, including the exhaustion of all appeals, Plaintiff shall return the originals and all copies of the McGraw-Hill Documents or provide a certificate of destruction to McGraw-Hill that said documents have been destroyed, except that any McGraw-Hill Documents that have been referred to or attached to any pleadings, motions or other materials filed in this civil case need not be destroyed or returned, though they remain subject to this Protective Order so long as they are not returned or destroyed.

8.    Any notices to be provided to McGraw-Hill pursuant to this Protective Order shall be provided to Victor A. Kovner, Esq. and Carolyn K. Foley by facsimile at 212-489-8340 and by over-night courier service at Davis Wright Tremaine, LLP 1633 Broadway, New York, NY 10024.

9.    The terms of this Protective Order shall remain in force and effect until modified, superseded, or terminated by order of the Court.  The terms of this Protective Order shall be binding upon the conclusion of this Action and the Court shall retain jurisdiction over the parties for enforcement of the terms of this Protective Order following conclusion of this Action.

DATED:            _____ __, 2006

It is SO ORDERED.

Signed at _____, Oklahoma,
this _____ day of _____, 2006.

_____
Judge of the District Court

# EXHIBIT 27

5USFTC 3106.txt

1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF OKLAHOMA
 3
 4   U.S. COMMODITY FUTURES              )
     TRADING COMMISSION,                 )
 5                                       )
 6                  Plaintiff,           )
                                         )
 7   V.                                  )  No. 05-CV-62-JHP-FHM
                                         )
     JEFFREY A. BRADLEY and              )
 8   ROBERT L. MARTIN,                   )
                                         )
 9                  Defendants.          )
10
11
12              TRANSCRIPT OF PROCEEDINGS
13                 HAD ON MAY 31, 2006
14                   MOTION HEARING
15
16   BEFORE THE HONORABLE FRANK H. MCCARTHY, Magistrate Judge
17
18   APPEARANCES:
19   For the Plaintiff:   Mr. James A. Garcia
                          Mr. Anthony M. Mansfield
20                        Trial Attorneys
                          United States Commodity
21                        Futures Trading Commission
                          1155 21st Street N.W.
22                        Washington, D.C. 20581
23                        Ms. Cathryn McClanahan
                          Assistant United States Attorneys
24                        110 West 7th Street, Suite 300
                          Tulsa, Oklahoma 74119
25
```

TRANSCRIPT PREPARED FROM AN ELECTRONIC RECORDING
BY GLEN R. DORROUGH, UNITED STATES COURT REPORTER

2

5USFTC 3106.txt

```
1
     For the Defendant       Mr. David R. Cordell
2    Bradley:                Mr. Bruce W. Freeman
                             Conner & Winters
3                            4000 One Williams Center
                             Tulsa, Oklahoma 74172
4
     For the Defendant       Mr. Thomas M. Ladner
5    Martin:                 Norman, Wohlgemuth, Chandler
                               & Dowdell
6                            401 South Boston
                             2900 Mid-Continent Tower
7                            Tulsa, Oklahoma 74103

8    For Third Party         Ms. Carolyn Foley
     McGraw-Hill:            Davis Wright Tremaine, LLP
9                            1633 Broadway
                             New York, New York 10019
10
                             Mr. Sidney G. Dunagan
11                           Gable & Gotwals
                             211 North Robinson, 15th floor
12                           Oklahoma City, Oklahoma 73102

13                    -   -   -   -   -

14                        PROCEEDINGS

15                        May, 31, 2006

16           THE CLERK:  This is case number 05-CV-62-JHP-FHM, U.S.

17   Commodity Futures Trading Commission vs. Jeffrey Bradley, et

18   al.  Counsel please enter their appearance for the record.

19           MS. FOLEY:  Carolyn Foley for McGraw Hill.  Sid

20   Dunagan for McGraw Hill.

21           MR. FREEMAN:  Bruce Freeman, Jeff Bradley.

22           THE CLERK:  Tell me your first name again.

23           MR. FREEMAN:  Bruce.

24           MR. CORDELL:  David Cordell, Jeff Bradley.

25           MR. LADNER:  Tom Ladner, Robert Martin.
```

3

```
1            MR. GARCIA:  James Garcia for plaintiff, Commodity

2    Futures Trading Commission.

3            MS. MCCLANAHAN:  Cathryn McClanahan, U.S. Attorney's

4    office.
```
                              Page 2

5USFTC 3106.txt

5          MR. MANSFIELD:  Anthony Mansfield for the Commodity
6   Futures Trading Commission.

7          THE COURT:  Good morning, counsel.  We have a number
8   of pleadings that have been filed concerning some discovery in
9   this matter.  I've read through your papers in some detail, so
10  I have some background in what's going on here.  I noted
11  yesterday that Judge Payne had entered an order striking the
12  schedule in the case and setting a scheduling conference in
13  August in the matter, so I don't know how, if at all, that that
14  impacts what we're going to do here today.

15         But we're here primarily because the motion that
16  brings us here is Bradley's motion to compel, which started the
17  ball rolling.

18         Mr. Cordell or Mr. Freeman, how best do you think we
19  should proceed today?

20         MR. CORDELL:  I suppose sequentially, Your Honor,
21  would make sense.  I think my motion is pretty straight forward
22  and points out the issues that will be cross argued by the
23  various parties.  And I'm prepared to proceed with that motion,
24  if you'd like.

25         THE COURT:  So you think the best way to proceed is to
                                                                    4


1   take up your motion to compel first?

2          MR. CORDELL:  I do, Your Honor.

3          THE COURT:  Mr. Garcia, what's the position of the
4   plaintiff?

5          MR. GARCIA:  We're fine proceeding in that, in that
6   method, Your Honor.

7          THE COURT:  Ms. Foley, is that...

8          MS. FOLEY:  That's acceptable to me, although I will
                            Page 3

5USFTC 3106.txt

9  suggest that since I seem to be the common thread in all of the
10 motions, I'd also be happy to begin by stating McGraw-Hill's
11 position, if that would make sense.

12       THE COURT: Well, I think I understand everybody's
13 position from reading your papers.

14       Mr. Cordell, let's start then as you suggested that we
15 do, with your motion to compel. And if will, sir, begin with
16 whether or not this is the right court to be addressing your
17 motion.

18       MR. CORDELL: Thank you, Your Honor. With respect to
19 the issue the Court raised a moment ago, I would respond by
20 saying, the only party that's made mention of that is not the
21 party to whom the subpoena has been issued. There's been no
22 objection raised as to whether this Court has the authority to
23 enforce the subpoena, therefore, for the purposes of defendant
24 Jeff Bradley, we have not briefed that issue. It's been
25 suggested perhaps, or has been suggested by the Commission that

                                                              5

1  there are only a few places that McGraw-Hill can be properly
2  summoned by subpoena to give evidence. I believe it would be
3  uncontroverted and perhaps the reason the McGraw-Hill Companies
4  did not make that kind of objection at the time that we issued
5  the subpoena, is their business is very pervasive and there was
6  a constant pattern of communication between Tulsa, this
7  judicial district, and the Houston office Inside FERC and Gas
8  Daily that gives rise to the complaints that are brought before
9  you.

10       So in brief, we have not seen an objection, as far as
11 I'm aware of, from the party from whom we are seeking the
12 information.

13       THE COURT: So you issued a subpoena from the Northern
                          Page 4

5USFTC 3106.txt

14    District of Oklahoma that directs a nonparty McGraw-Hill to

15    produce documents in New York City and you contend that it

16    would be appropriate for this Court to take up that issue of

17    compliance with that subpoena.

18         MR. CORDELL:  Yes, Your Honor, for these reasons.

19    When we issued the subpoena, we sent it to them.  We began

20    negotiations, as you know, for a protective order and that was

21    conditioned upon production of documents.  We assumed that we

22    may have to go to New York, depending on the volume of the

23    documents, but we never even got to that point in time.

24         So my conversations with counsel for McGraw-Hill were

25    premised on the fact that if we agreed to a protective order,

                                                              6


1     that there would be production of documents without objection,

2     in a place that made sense from the mechanical standpoint and

3     that's how we got here.

4          THE COURT:  Let's hear from Ms. Foley regarding

5     McGraw-Hill's position on that issue.

6          MS. FOLEY:  McGraw-Hill's position on --

7          THE COURT:  Ms. Foley, it's going to be necessary for

8     you to use the lectern in order for us to have a recording of

9     this proceeding.

10         MS. FOLEY:  I'm sorry, Your Honor.

11         THE COURT:  That's all right.

12         MS. FOLEY:  McGraw-Hill's position on the propriety of

13    the service of the subpoena out of the Northern District is

14    that we did not make an objection to the service of the

15    subpoena out of this -- out of this Court.

16         At this point, McGraw-Hill's entire approach to

17    receiving subpoenas from all of the parties in various

                              Page 5

5USFTC 3106.txt
18    litigations that we have received it from is to try to
19    negotiate and attempt to narrow the subpoenas, and most
20    importantly get a protective order.  That has always been our
21    focus and we have been trying to avoid motion practice,
22    whatever it be.  Whether it be on a jurisdictional grounds,
23    whether it be on privileged grounds and whether it be on other
24    sorts of scope grounds.  And at this point, I know that the
25    CFTC has raised it and we have put in a short summary of our

                                                                  7

1    statement of our position before the Washington D.C. Court that
2    has some of the motions pending too.  And our point is we don't
3    really control where any litigant may try to bring a subpoena
4    against us and we are not in the business or in the -- we are
5    not trying to make undue motion practice and if we had to move
6    to object and then move to quash a subpoena based on
7    jurisdictional grounds, it's our view that we would have to
8    move to quash based on all of the grounds that were -- that
9    make the subpoena objectionable, which would raise all of our
10   issues all at once.  And while we're trying to avoid that and
11   comply with the subpoenas and give parties what they need in
12   their litigations, so we have not raised the objections before
13   this Court at this time.
14            THE COURT:  Do I take it then from that, that
15   McGraw-Hill consents to this Court hearing Bradley's motion.
16            MS. FOLEY:  Yes.
17            THE COURT:  And consents to having this Court decide
18   whether or not production shall be ordered.
19            MS. FOLEY:  At this point, I think that we have to say
20   yes.
21            THE COURT:  Why do you, why do you phrase it that way,
22   "at this point I think I have to say yes" --
                          Page 6

5USFTC 3106.txt

23         MS. FOLEY:  Well, because I think that Mr. Bradley is
24    --
25         THE COURT:  -- as though you have no choice.

8

1          MS. FOLEY:  Well, because I think Mr. Bradley is
2     correct, I didn't -- we have been negotiating for a long period
3     of time over the scope of the subpoena and it's not -- the
4     jurisdictional issue was not something that we raised at the
5     outset and not something that we asserted as an issue for his
6     subpoena.
7          THE COURT:  The issue dovetails into your request in
8     one of your motions that this Court issue a protective order to
9     limit the scope of discovery in this case.  I take it by filing
10    that motion you also consent to this Court making the decision
11    on that motion?
12         MS. FOLEY:  Correct.  I mean --
13         THE COURT:  And would you feel, from McGraw-Hill's
14    position, that this Court's decision would be exclusive with
15    regard to the scope of discovery in this case, such that it may
16    have some impact upon the actions that the plaintiff in this
17    case is taking to enforce a subpoena in Washington, D.C.
18         MS. FOLEY:  That is -- that is the position that
19    McGraw-Hill is taking.  The --
20         THE COURT:  So in other words, you want this Court to
21    decide everything regarding your production of documents in
22    this case.
23         MS. FOLEY:  We do.  At this point, we do.  There is an
24    element of McGraw-Hill's, being put in the position, I think,
25    of being caught between other strategic concerns that maybe

9

Page 7

5USFTC 3106.txt

1   either side in this case may have in terms of the scheduling of
2   the trial in this case or other -- or the other strategic
3   considerations that may be going on in this case.  And as I
4   stated, I think, in our phone conversations, now that the CFTC
5   had brought the issue before the D.C. Court, we would prefer
6   that one court decide the issue of the proper scope of the
7   documents to be produced in this case.
8        Since Mr. Cordell and Mr. Ladner took the position
9   that it was imperative that that decision be made in this case
10  quickly and on an expedited basis in order to keep the trial --
11  to keep the discovery deadlines going and to keep the trial
12  date going, the -- and once I received Mr. Cordell's motion to
13  compel, I felt that the only way to address McGraw-Hill's
14  concerns and to adequately get resolution of the issues of what
15  McGraw-Hill would have to produce in this particular case, was
16  to make a cross motion requesting of Your Honor, as you say,
17  that the scope of what our participation in this case should
18  be, be determined by this Court.
19       THE COURT:  The -- I started out by noting that Judge
20  Payne had issued an order striking the schedule in the case, so
21  we're no longer under the time crunch that we were under when
22  we talked on the phone.  And McGraw-Hill's interest is in
23  having a clear indication of what it is you're supposed to be
24  doing.
25       MS. FOLEY:  Correct.

10

1        THE COURT:  One of the advantages to McGraw-Hill, it
2   would seem to me, in having the Washington court decide the
3   discovery issue is that all of your cases are there, if I
4   understand correctly.  The plaintiff has issued subpoenas that
                                Page 8

5USFTC 3106.txt

5   would cover the waterfront for you. So you could have one
6   proceeding in Washington that would solve your problems, and I
7   haven't tried to memorize the other states, but I think Ohio
8   and some other states that would resolve it, so that might be
9   advantageous to McGraw-Hill and it seems to me that Rule 45 is
10  primarily interested in giving the nonparty that is being
11  requested to participate in the lawsuits some choice in a
12  convenient forum. So I'm just wanting to be sure that -- that
13  McGraw-Hill still, in light of what Judge Payne has done in
14  striking the schedule, wants this Court to be involved in this
15  case with the possible result being you'll get the Court here
16  in Tulsa deciding this matter if you prevail on that, on this
17  issue and then some court in Ohio deciding something and some
18  court maybe somewhere else deciding. But that's where you want
19  to go?
20          MS. FOLEY: Well, before I -- before we had to respond
21  to the motions and make the cross motions, I would have said,
22  and I think I did say, that we prefer to have all of the issues
23  decided in D.C. And when I saw on the docket yesterday,
24  yesterday morning I had to leave in the early afternoon to
25  catch the flight to come here, but it did occur to me that

11

1   maybe we should try to have a telephone conference to see if
2   the scheduling order did change the parties' positions in this
3   case.
4          What I will say is before we had to start to brief the
5   issue and get into it here on all these motions, it would have
6   been McGraw-Hill's position and preference that all of the
7   issues be decided before the one court on the CFTC's motion in
8   D.C. We were boxed in, if you will, by, by the, by the motion

Page 9

5USFTC 3106.txt

9   of Mr. Cordell and the discovery deadlines in this case. And

10   there is, I suppose, an element at this time, and I don't know

11   how the schedule is going to develop in this case and what the

12   new schedule is set for. Would we object to having the D.C.

13   Court decide all the issues? No. Would we object to this

14   Court deciding all the issues? No. The primary concern at

15   this point, for McGraw-Hill, is to have one court for this one

16   case decide all of the issues. We firmly believe that the

17   scope of the privilege that applies here and the scope of and

18   propriety of a protective order will -- should be determined on

19   a case-by-case basis.

20        THE COURT: I haven't done extensive research into it,

21   but for the years that I've been a magistrate judge now, my

22   primary concern with these nonparty subpoenas is to lessen the

23   inconvenience on the nonparty, to give them a convenient place

24   to resolve their disputes. Sometimes the parties tell me it's

25   convenient for me to hear it as the trial Court hearing the

                                                              12

1   case. Sometimes they tell me no, it's much easier for us to

2   stay up in Wisconsin and have our fight up here where the

3   documents are.

4        MS. FOLEY: Uh-huh.

5        THE COURT: And I tend to defer to what the nonparty

6   wants.

7        MS. FOLEY: Uh-huh.

8        THE COURT: So that's why I'm really looking to you to

9   see, and I'm hearing mixed responses as to what it is that

10   would be most helpful to McGraw-Hill, because I've read your

11   papers and I see the situation you're in.

12        MS. FOLEY: Uh-huh.

13        THE COURT: And I don't know that we're moving the

                              Page 10

5USFTC 3106.txt

14    ball ahead for you, for me making decisions and then you go

15    back to washington and have the judge, whoever hears it in

16    washington say well, now what should I do that the magistrate

17    in Tulsa has made a decision? Do I take that case out, but

18    still keep the other three? Do I keep all four? Do I send

19    them all back to the trial courts from whence they came?

20         MS. FOLEY: I -- you're correct, Your Honor, and I

21    guess what I'm trying to -- what I'm signaling here is that

22    that's the exact position that we're in. The issue has been

23    put before you, the CFTC has put in significant papers to which

24    we haven't had the opportunity to reply in terms of, you know,

25    I just got them yesterday at noon, right before I got on the

                                                              13


1    plane. But I guess that still raises in my mind, the last time

2    we addressed that issue is what happens to the motions made by

3    the defendants in this case? I mean, I do believe that this

4    court has the power --

5         THE COURT: well, I mean Mr. Mr. Bradley's motion is

6    clearly infirm --

7         MS. FOLEY: Uh-huh.

8         THE COURT: -- in that it's based upon a subpoena that

9    was issued out of this court to view the documents in New York

10   City.

11        MS. FOLEY: The documents are in D.C., correct.

12        THE COURT: I don't know where the documents are.

13        MS. FOLEY: Okay.

14        THE COURT: But that subpoena --

15        MS. FOLEY: Uh-huh.

16        THE COURT: -- if you brought a motion and said, quash

17   it, Judge, you win. Now, if the parties agree and tell me no,

Page 11

5USFTC 3106.txt
18  Judge, it's more convenient for me as the nonparty for you to

19  hear it because you know the case, it's your case, some judge

20  in Washington doesn't give a -- the same concern to it, not

21  that they won't try their best, but it's not their case.

22          MS. FOLEY:  Uh-huh.

23          THE COURT:  It's our case.  We're the ones that are

24  going to have to try it, we're the ones that are going to have

25  continuing discovery problems among the parties, among

                                                                14

1   non-parties.  We know more about this lawsuit than some judge

2   in Washington.

3          So I'm trying to get a signal from you as to --

4   as to, what, what McGraw -- what is best for McGraw-Hill.  I'm

5   happy to hear the motion if, if you don't object, Bradley's

6   brought his motion, I'll decide it.

7          MS. FOLEY:  I guess the decision and what -- the

8   position you're asking me to take depends in part on the answer

9   to the cross motion and if this Court feels that it's not in a

10  position to make a decision, render a decision as to

11  McGraw-Hill's responsibility, complete responsibility in this

12  case and that that is more appropriately dealt with in D.C., or

13  in other words, if a decision in Mr. Bradley's case will not

14  resolve the subpoena issued by the CFTC, then by all means, the

15  -- we would ask that Mr. Bradley's subpoena be quashed for the

16  reasons that you state and that all of the issues be decided in

17  D.C.

18          THE COURT:  I think it's perfectly appropriate for

19  this Court to decide the scope of discovery under Rule 26.

20  Perfectly appropriate.  I think I'm perfectly capable and the

21  appropriate Court to hear your request to set the scope of this

22  case.
                          Page 12

5USFTC 3106.txt

23          MS. FOLEY:  In a way that binds the CFTC as well as

24    Mr. --

25          THE COURT:  What that Washington judge does with it, I

                                                            15

1    don't know.

2          MS. FOLEY:  And so in terms of -- just so I'm clear.

3    In terms of the ability of this Court to set the terms of

4    McGraw-Hill's -- what McGraw-Hill will have to produce in this

5    case, you're -- you will decide that motion?

6          THE COURT:  I can decide your motion.  I haven't heard

7    from Mr. Garcia yet.

8          MS. FOLEY:  Okay.

9          THE COURT:  But I will.  But right now, without

10   hearing his argument, I'm comfortable that the Court that has a

11   lawsuit, has the power and the authority and probably the

12   responsibility to decide the appropriate scope of discovery in

13   the case that's pending before it.

14         MS. FOLEY:  Correct.  In that case, I think

15   McGraw-Hill's position would be that we think it would be

16   appropriately decided before this Court.

17         THE COURT:  All right.  Mr. Garcia, let's hear you,

18   from the plaintiff on those two issues.

19         MR. GARCIA:  Mr. Mansfield will be speaking on behalf

20   of plaintiff, Your Honor.

21         THE COURT:  Very well.

22         MR. MANSFIELD:  Good morning, Your Honor.

23         THE COURT:  Good morning, sir.

24         MR. MANSFIELD:  On the two points that you've just

25   made, obviously it's our position and we don't need to repeat

                                                            16

5USFTC 3106.txt

1    it, that the question of whether the Bradley subpoena can be
2    repaired is a very different question from what the subpoena is
3    right now.
4           In terms of the issues of compelling documents from
5    McGraw-Hill.  Even if there is a subpoena that this Court
6    decides to consider, there's still a question about compelling
7    documents from McGraw-Hill that the CFTC has issued that was
8    properly issued before the D.C. Court and is now a part of a
9    motion to compel before the D.C. Court.
10          In terms of the questions that you were raising about
11   whether the scope of discovery should be decided by this Court
12   or another court, I defer to -- to your points, but I would
13   make the following suggestions, which is, at the same time that
14   McGraw-Hill put forward papers in this Court asking it to
15   consider possible protective orders, it has sought that same
16   relief in the District of Columbia court.
17          So this is not a question of if Ms. Foley decides that
18   it's better decided in D.C. that we have to start a process
19   anew, or that we have to sort of move back to move forward.
20   That process is already under way.  The request was made on the
21   26th, in a court filing by McGraw-Hill for the same protection,
22   I sense that I think that they are seeking in this Court.  That
23   issue is going to be briefed, there's a briefing schedule.
24          In terms of whether there is a concern about whether
25   the D.C. Court is the best court to be considering issues that

                                                              17


1    are going to be tried in this case, I defer to the parties to
2    decide that, but all I would say is that vis-a-vis, what
3    McGraw-Hill's obligations are and vis-a-vis what information it
4    should or should not produce, the D.C. Court is educated about
                                Page 14

5USFTC 3106.txt

5  these issues, I think as we've made you aware.  It's our
6  position that the Court has been asked to go through this whole
7  discussion and analysis with regard to the same categories of
8  information for the same uses by the parties.  So I'm not
9  suggesting or advocating that this is not the right court, but
10  if there is concern that's expressed by anybody about whether
11  D.C. is the appropriate place to be doing this, at least from
12  experience standpoint, it is very well versed in these issues.
13           THE COURT:  But the plaintiff's position then, as I'm
14  hearing it, is that you agree that this Court would be the
15  appropriate court for McGraw-Hill -- would be an appropriate
16  court for McGraw-Hill to bring a motion saying we want a
17  protective order limiting the scope of our discovery
18  obligations in this case.  And it would be appropriate for me
19  to then issue and order, one way or the other, either granting
20  their motion and limiting the scope of discovery, which would
21  have the effect, potentially, of deciding the case that you're
22  trying to get -- or the motion that you're trying to get
23  decided in Washington.
24           MR. MANSFIELD:  And I, you know, obviously, our
25  problems with that have to do with, one, if that's really where

                                                            18

1  this is going, why do we have McGraw-Hill seeking on the same
2  day, the same protection from the D.C. Court.
3           THE COURT:  Because they don't know what the judge is
4  going to do.
5           MR. MANSFIELD:  Well, I think it raises --
6           THE COURT:  They're covering their bases.
7           MR. MANSFIELD:  You know, then we're getting into a
8  question about whether it's appropriate for one Court or the

                        Page 15

5USFTC 3106.txt
9   other.  McGraw-Hill is basically tabling the very concern
10  they've raised with you that they don't want to have happen,
11  which is what are we going to do if we have inconsistent
12  rulings?

13          I can't speak for how that's going to unfold, but it
14  certainly is allowing the possibility. And as you've said to
15  McGraw-Hill today, let's step back a second. Because of the
16  judge's decision to move the dates out to August, we now have
17  an opportunity to really assess whether we want to do that,
18  whether we even want to allow for that possibility. And it
19  seems to me where McGraw-Hill has said D.C. is an appropriate
20  place to be, where they've said our concern is not having to
21  fight these issues in many different courts. And as you've
22  pointed out, everything is in the D.C. Court right now, where
23  they've got an educated court in terms of their issues, where
24  we're not going to be moving on dates on this calendar in this
25  Court that are going to impede their ability to get the

19

1   protection that they desire, if the Court agrees with them.
2   None of those issues are alive anymore.  We have the
3   opportunity at this point to step back and to say if
4   McGraw-Hill, you truly believe that you don't want even the
5   possibility of inconsistent result, you want to have one court
6   considering this, you want to reduce the burden on yourself,
7   that opportunity is right in front of McGraw-Hill.

8           And on the point of Mr. Bradley, the only point that I
9   would make there is that I understand that in the scheduling
10  conference that took place on March 11, I think it was counsel
11  for Mr. Bradley, and I express that I'm not as up to speed on
12  the details, express reservations about moving his motion to
13  compel to D.C. and having that a part of the D.C. action, and I
                    Page 16

5USFTC 3106.txt

14    appreciate those concerns.  But it is interesting that in the
15    motion to compel that he has filed in this Court, the entire
16    basis for the motion to compel is simply to attach our brief
17    that we filed in D.C. which is based on D.C. law, which is
18    based on the D.C. court's consideration of this issue.
19           So I think there's a little bit of a disconnect there
20    where he's asking for his issues to be considered, he's
21    basically said to this Court, look at what the CFTC has told
22    the D.C. Court and rule on that basis and I think it at least
23    suggests that maybe Mr. Bradley too, really without saying it
24    expressly is saying, you know, the D.C. Court is a place that
25    can do this.  And again, if that becomes the case, and I'm not

                                                                   20


1     advocating that he do that, but you do address one issue which
2     this Court raised, which is, do we want to get everything in
3     one place for one decision.
4            THE COURT:  The advantage of one place is, of course,
5     something to consider, but you haven't spoken to the advantage
6     of having the trial court, the court that's actually handling
7     the case deciding this issue that goes to the scope of the
8     discovery that's going to be allowed in this particular case,
9     as opposed to that case in Ohio, which I know nothing about or
10    some other case in which the judge in Washington will know
11    nothing about.  What's the plaintiff's position with regard to
12    that consideration?
13           MR. MANSFIELD:  Let me step back and just say that we
14    have made the point that procedurally there's no valid
15    subpoena, so it's our position that there's no -- there's no
16    valid motion to compel in front of this Court.
17           Now if we -- if we repair those infirmities, the point
                              Page 17

5USFTC 3106.txt
18  that I would make is that the, the issue --

19          THE COURT:  Well, let me stop here for a second.  We

20  do have a valid motion by a nonparty for a protective order.

21          MR. MANSFIELD:  Okay.

22          THE COURT:  I understand we'll hear the same issues.

23          MR. MANSFIELD:  Right.

24          THE COURT:  Okay.

25          MR. MANSFIELD:  And again, you know, I will answer

                                                            21

1   your question, but the first question is where -- where the

2   protection that's sought is going to cover a motion to compel

3   that's being decided by a different court that has not yet

4   ruled on those issues.  Where the protection that is sought in

5   this Court, at least McGraw-Hill has said we are comfortable,

6   we want to seek that same protection in the court where the

7   motion to compel is being considered.

8           THE COURT:  But unless I misheard, Ms. Foley, at the

9   end, said, all that considered, Judge, if you'll consider our

10  motion for protective order, we'd rather have the Tulsa court

11  decide it.  That's what I heard.

12          MR. MANSFIELD:  Well, if that was the case, and if

13  that was the case then I question why there was a motion for

14  protective order filed in D.C. and why McGraw-Hill was making

15  representations to the D.C. Court that we're going to be coming

16  to you for protection.

17          So I understand what she said today.  I'm asking you

18  to consider what they said back before we were here today,

19  which was the 26th, when these issues were directly in front of

20  them.

21          In terms of -- in terms of shouldn't this Court be

22  considering the issues that are going to govern and affect the
                              Page 18

5USFTC 3106.txt

23  trial in this case, in this Court. The -- the action or the

24  motion for protective order that McGraw-Hill is asking this

25  Court to enter has two components to it.

22

1       The first one is, and we've addressed this in our --

2  in our response, is whether protection is even necessary. And

3  that question really doesn't go to the trial practice of this

4  case or the evidence that is going to be in or not in this

5  case. It goes towards McGraw-Hill's contention that there's

6  going to be harm to McGraw-Hill vis-a-vis its own competitors

7  and whether there's going to be harm to McGraw-Hill with regard

8  to the confidential nature of its relationships with its

9  sources.

10      I would suggest to you that the outcome of those

11  decisions really doesn't have anything to do with the way this

12  case is going to be tried from an evidentiary standpoint. So

13  in that respect, I would suggest, respectfully, that the D.C.

14  Court is the more appropriate court to consider those only

15  because -- it's not a question of whether this Court is not the

16  appropriate place to consider it -- but only because the D.C.

17  Court has a background with that, a very recent background with

18  that involving the exact same entities, McGraw-Hill and the

19  CFTC, and further, with regard to the same categories of

20  information, for the same types of uses.

21      Now, on the second point, which is if there were a

22  protective order that were to be issued, we disagree with

23  McGraw-Hill and McGraw-Hill has stated their position and we've

24  stated ours, about what the extent of that limitation should

25  be. I'm not going to suggest to you there that the D.C. Court

23

Page 19

5USFTC 3106.txt

1   is more appropriate than this Court to decide how its case

2   should be tried, but I would suggest to you that the D.C. Court

3   has already considered those questions about what this

4   information is necessary for, what the CFTC needs it for and

5   how it will be used to try its case. So all I'm suggesting is,

6   is --

7        THE COURT:  Wait a second.  The D.C.

8   court considered it in an administrative context.

9        MR. MANSFIELD:  But let's be careful --

10       THE COURT:  Isn't that right?

11       MR. MANSFIELD:  It is right to an extent.  McGraw-Hill

12   filed a motion for reconsideration and they said D.C. Court, we

13   think you've got it wrong.  We thing that you drew a conclusion

14   which is the information that's necessary for a certain goal,

15   but the information that you're allowing to flow through is

16   more than is necessary.

17       We opposed that motion for reconsideration and our

18   entire paper was devoted to the theme that trying a case and

19   the evidence needed to win a case as a matter of law is very

20   different than the needs in an investigation.  And we won on

21   that.  We pointed out to the court several reasons that we

22   would need this information to be able to try this case.  And

23   what I can do is in the opinion, there's not a reference

24   specifically, except for one point to our opposition.  I can

25   direct the Court to the specific docket entry and I can also

                                                            24


1   point you to the language and it's -- because I think you're

2   looking at it.  It's the decision 403 F.Supp.2d, 34.  If you

3   look on -- I have a Westlaw page, but it's page 5 of the

4   document and it's the pages in the actual citation of 38 down.
                        Page 20

5USFTC 3106.txt

5  I'll read you the following statement by the court:

6  "Second the opinion" -- and he's talking about his

7  earlier decision. "The opinion's discussion of the CFTC's

8  investigatory needs did not purport to be exhaustive or

9  exclusive. This court considered the CFTC's need for the

10  information to the extent that the parties then litigated it."

11  In the motion for reconsideration which we're now

12  looking at in this decision, we have told them why we need this

13  to try this case and he writes: "Neither the parties, nor the

14  court engaged in the kind of detailed discussion that

15  McGraw-Hill now seeks to initiate. The CFTC's expanded

16  discussion of its needs in the opposition to motion to clarify"

17  -- that's the document we laid out why we would need all of the

18  categories of information that he'd already ordered we should

19  get to be able to try this case -- "reveals the complex nature

20  of the investigation, further buttresses the reasonableness of

21  the subpoena."

22  So we have put before that judge in D.C. why we need

23  this information to be able to try this case. So I disagree

24  with McGraw-Hill and I respond to you respectfully that no, the

25  court's decision was not limited to and we were not suggesting

25

1  to the court, we need this information simply to be able to

2  complete our investigation.

3  So again, to answer your question, I do not want to

4  suggest this Court in any terms that it is not an appropriate

5  court to consider what information is necessary for the

6  parties. What I am saying, is that the D.C. Court is also an

7  appropriate court to be able to do that. It's appropriate

8  because one, it is familiar with these issues. Two, because

Page 21

5USFTC 3106.txt
9   many of the issues that McGraw-Hill and the CFTC are now at

10  odds about with regard to what limitations, if any, should be

11  put on the information that flows, was already put in front of

12  the D.C. Court, the D.C. Court has already considered those

13  issues.  And I know that Ms. Foley and I disagree, but we take

14  the position that the court did consider those issues and it

15  did respond by denying the motion for reconsideration.  So --

16          THE COURT:  Is the case in D.C. back in front of the

17  same judge?

18          MR. MANSFIELD:  It is.  And I'll tell you, I don't

19  know how that happened.  It's a miscellaneous action.  It has

20  been assigned to the same judge.  What I can only imagine is

21  that if -- if they have a miscellaneous docket where they

22  assign the same judge for a certain number of months.  But yes,

23  it is in front of the exact same judge, Judge Lamberth.

24          THE COURT:  All right.  Mr. Ladner.

25          MR. LADNER:  Judge, if -- I know I don't have a motion

                                                                26

1   pending, but if you could just indulge one brief comment and

2   that is that my only goal, and I know Mr. Bradley shares this,

3   is to try to get this resolved as quickly as possible.  It's

4   obvious that the plaintiff would prefer to go before D.C. where

5   they've had some success before.  McGraw-Hill, who is the party

6   imposed upon here has no problem with this Court ruling on this

7   issue.  My only dog in this fight is we -- we do need

8   documents.  We've already had the unfortunate event of the

9   trial being bumped as a result of the appearance that this

10  document issue is not going to be resolved for months.  We

11  don't know when the D.C. Circuit's going to even schedule a

12  hearing in this matter.

13          THE COURT:  I hope it's the D.C. District Court.
                            Page 22

5USFTC 3106.txt

14          MR. LADNER:  D.C. District Court.

15          THE COURT:  Not the D.C. Circuit.

16          MR. LADNER:  You're right.  Well, it may be --

17          MR. MANSFIELD:  They've got the power in the D.C.

18   federal court however.

19          MR. LADNER:  Yeah.

20          THE COURT:  I mean, it may go to the circuit, we don't

21   know.

22          MR. LADNER:  Absolutely.  And towards the goal of

23   getting this case tried quickly, which has always been Mr.

24   Martin's goal, you've got all the parties here and it's teed

25   up, we would just prefer that the Court hear this today.

                                                        27


1           THE COURT:  I'm going to go ahead and hear your

2    arguments today.  That does not necessarily mean that I'm going

3    to substantively rule on them.  I need to consider your

4    arguments more fully, but I do want to go ahead and hear your

5    arguments because we all are here.  I have read it, you-all

6    have prepared and that's how we're going to proceed this

7    morning.

8           Back to you, Mr. Cordell.

9           MR. CORDELL:  Thank you, Your Honor.  I would note for

10   the record that something I didn't mention with respect to the

11   enforceability of the subpoena is McGraw-Hill does have a

12   registered service agent here in Oklahoma.  Also, the place of

13   production resulted from agreement, if you will, to lessen the

14   burden on the nonparty, rather than any concession that it was

15   inappropriate to require them to be produced here in Oklahoma.

16          Mine, of course, is a local concern.  I'm defending an

17   individual who has had the force of the federal government fall

                              Page 23

5USFTC 3106.txt

5   perfected manipulation, we will then consider and we may seek

6   from this court, permission to amend our complaint at that

7   time.  So this discussion about, you know, we can't prove our

8   case, we're putting the cart before the horse, I just want to

9   make clear that I don't think that's the case at all.

10        I want to also just make one point with regard to the

11  scope of what we're seeking.  In our motion to compel that you

12  were referring to in D.C. we try and capture the essence of

13  what we're seeking in what is referenced as four categories.

14  But the actual requests that are subject to the motion to

15  compel as stated in the document are listed in Appendix A to

16  the memorandum of points and authorities.  And it is, it is a

17  more exhaustive list.  What we are saying is that all of those

18  documents that we're seeking in the different categories,

19  ultimately go towards the issue of what was sent in, what was

20  used by McGraw-Hill and this issue of knowledge.  I just wanted

21  to make that point of clarification, that --

22        THE COURT:  So are you saying that your papers then

23  that you submitted to the D.C. Circuit did not accurately

24  describe what it is you're seeking --

25        MR. MANSFIELD:  No, I've been saying they very

67

1   accurately describe.  I'm saying that when you were referring

2   to the three core categories, I'm just pointing out to you that

3   if you look at the papers, we actually say the specific

4   categories of documents that were sought in the subpoena that

5   are the subject of this motion to compel are as listed in

6   Appendix A and in Appendix A we list every single category that

7   we are specifically seeking to move to compel.

8         THE COURT:  Right, but what I'm asking you, sir, is if

Page 57

5USFTC 3106.txt

9  I were to issue an order saying McGraw-Hill, you're hereby
10 compelled to produce, and I've tracked the language that you
11 used in your brief, in the text of the brief --
12          MR. MANSFIELD: Yes.
13          THE COURT:  -- that you submitted in D.C. that lists
14 the three categories that I've talked about.
15          MR. MANSFIELD: Yes.
16          THE COURT:  If that was the order of the Court, would
17 that satisfy all of the items that you've also listed in
18 Appendix A to your -- to your papers.
19          MR. MANSFIELD: It would. But I would -- I would
20 suggest to this Court that so there wasn't confusion on the
21 part of McGraw-Hill as to what they were responding to, I would
22 say and those three categories that are listed in our motion
23 are specifically explicated and expanded upon in each one of
24 the categories that was our subpoena.
25          THE COURT: That's what I'm interested in. You just

                                                              68

1  used the word expanded upon.
2          MR. MANSFIELD:  Right.
3          THE COURT:  So does that mean that those explications
4  are broader than those three categories we've talked about?
5          MR. MANSFIELD: No, I'll give you an example.  I'll
6  give you an example, that the category of knowledge, for
7  example.  What evidence would go toward knowledge of or knowing
8  delivery.  I would suggest to you as an example that there are
9  different categories that would show that someone had
10 knowledge.
11         THE COURT:  But there's no -- there's no -- there's no
12 category of knowledge in your papers with the D.C. Circuit.
13         MR. MANSFIELD:  No, there is.  There's -- there are
                          Page 58

5USFTC 3106.txt

14 three core categories on our list that we say we're looking for
15 the trade data, we're looking for how Platts used it, and we're
16 looking for evidence about the instructions, which goes towards
17 the knowledge of any individual who was submitting any
18 information to Platts.
19          THE COURT:  You're looking for, specifically, the
20 trade data --
21          MR. MANSFIELD:  Yeah.
22          THE COURT:  -- of the individual defendants and/or
23 their former employees submitted or caused to be submitted.
24          MR. MANSFIELD:  Yes.
25          THE COURT:  Those are concrete documents.

                                                         69


1          MR. MANSFIELD:  Yep.
2          THE COURT:  All right.  You're looking for the
3 spreadsheets Platts used to calculate its index prices.  That
4 again, is a concrete document --
5          MR. MANSFIELD:  Yes.
6          THE COURT:  Of spreadsheets.
7          MR. MANSFIELD:  -- yes.
8          THE COURT:  And you're looking for the communications
9 from McGraw-Hill as to what to report and not to report.
10          MR. MANSFIELD:  Uh-huh.
11          THE COURT:  That's the universe, according to the text
12 of your motion, that you're looking for.
13          MR. MANSFIELD:  Yes.
14          THE COURT:  And it's not expanded by your attachment A?
15          MR. MANSFIELD:  Well then you're -- okay.
16          THE COURT:  Is that right?
17          MR. MANSFIELD:  That is right.
                          Page 59

5USFTC 3106.txt

18          THE COURT:  Okay.

19          MR. MANSFIELD:  That's right.

20          I'm going to move to the issue of the protection, but

21   before I do that I want to draw your Court's attention to one

22   point, which is, there has been some discussion by counsel for

23   McGraw-Hill about what these spreadsheets show.  There has been

24   some response to questions about you -- about how these

25   spreadsheets that they have may or may not differ from their

                                                              70

1    publication of an example on the web site.  And I will tell you

2    that I disagree with counsel's representation, and as we

3    indicated in our papers, I have copies of the actual

4    spreadsheets that we have received in a different context.  We

5    are -- we are prepared to show those to this Court.  We are not

6    under any order that limits our ability to do that.  I just

7    suggest that we -- I will go through and I will tell you that

8    we disagree very much with counsel that the spreadsheets that

9    they would be compelled to produce contain any of the editorial

10   processes that she was suggesting.  And I would be willing to

11   put forward in front of you, spreadsheets to prove that point.

12   So I just want raise that that is an available option if it

13   becomes necessary.

14          But let me deal with the issue of protection.  And

15   again, I had highlighted this when we began, which are saying

16   there are two level bases, high level bases for why protection

17   is necessary from McGraw-Hill's perspective.  The first one has

18   to do with protecting the confidential nature of the source

19   reporter relationship.  We have put in front of you a

20   declaration that was submitted in the D.C. action which was put

21   together by the chief editor of Inside FERC, which is the

22   monthly publication that's at issue here.  And in that

                          Page 60

5USFTC 3106.txt

18  few moments ago that CMS executed some type of waiver for you
19  all while you were dealing with them.
20          MR. MANSFIELD:  Yes.
21          THE COURT:  And that caused McGraw-Hill to produce
22  documents to you?
23          MR. MANSFIELD:  No.  It was -- it was an effort to
24  achieve that result, but the end result was no, we -- CMS
25  forwarded a letter which I -- again, I can provide the Court if

                                                              84

1   it would be helpful, to in this case Platts, saying please
2   provide or turn over the information that the Commission is
3   requesting with regard to CMS traders, and that for purposes of
4   that request, any confidences that might apply to that
5   information, CMS indicates to Platts that they are not
6   intending to -- to push those confidences.
7           So that's something that I can -- I can make available
8   too.
9           THE COURT:  But that didn't result in you getting the
10  documents?
11          MR. MANSFIELD:  No.
12          THE COURT:  For a moment there my ears perked up and I
13  thought maybe this thing was solved.
14          MR. MANSFIELD:  You've asked -- let me turn you to
15  another issue which is just for now sticking with the claims
16  that are contained in the complaint, which again are the false
17  reporting and the attempt to manipulate.  Again, we've cited
18  this Court in our brief to the provision of our statute which
19  makes it a separate or a penalized event for each violation of
20  the Act.  Obviously we, we have indicated that it is our
21  position that every time a report was submitted, that
22  constitutes a separate violation.  So again, we believe that
                        Page 72

5USFTC 3106.txt

23  the information that we're requesting, one goes to the heart of
24  the matter, which is proving the scope of the violations. But
25  it should not be misinterpreted as we don't have evidence of

85

1   the violations. We are now seeking to determine the extent of
2   those violations so that we can pursue that as we are
3   authorized to under our statute and which an element of a
4   claim.
5           Sticking again with this issue of the charges that are
6   currently in the complaint. The act does require that we show
7   knowing delivery. And the point that we're trying to make
8   there is that there are a number of different ways that we can
9   try and show that in this case the submission or the acts
10  causing reports to be submitted by defendants Bradley and/or
11  Martin were knowing.
12          There becomes this question about, well, if you have
13  alternative available to you, why do you need the others? And
14  I would make the point that as matter of trial practice, we
15  have to be prepared for the possibility that, as you should --
16  as we should expect, that the defendants are going to challenge
17  our efforts to show knowing behavior at every turn. But to
18  give you an example, knowledge could be in the form of the
19  e-mail reminders that counsel for McGraw-Hill is referring to.
20  A potential limitation on those documents in order that, as she
21  pointed it out, they don't necessarily identify the recipients
22  of those documents.
23          Another form of showing that the defendants knew what
24  information Platts did or did not want would be the actual
25  forms themselves that were submitted that, as I understand it,

86

5USFTC 3106.txt

1    there was a form that McGraw-Hill said use this form, list your
2    information here and send it in and -- at the top that
3    instruction box. It still raises the possibility what if a
4    given defendant in this case or any other case says, well, I
5    didn't use those forms or I never saw those forms. We can then
6    go the idea of, well, let's look at the information that you
7    did submit. And we should be allowed to and we would argue
8    that we would be able to show that there were occasions when
9    these or any other defendants were able to submit the very
10   information that was consistent with what McGraw-Hill says that
11   it wanted.
12          Again, as a matter of inference, as a matter of
13   circumstantial evidence, we should be able to show that the
14   fact that any defendant, including these defendants, was able
15   to give it right, is evidence that they knew what information
16   should be submitted.
17          So again, it's not a question of, well, you already
18   have one alternative available to you. One of the issues that
19   will be in front of this Court or any court is the credibility
20   of these witnesses. And one of the forms of evidence that we
21   should be allowed to use is circumstantial evidence and to
22   allow, if appropriate, a jury to infer from that. All of these
23   pieces of information are necessary to do that and it would be,
24   certainly our position that we should not be limited just
25   because of the possibility that we may be able to show

                                                              87


1    knowledge with only one form of that document.
2          There has been this distinction between, well, the
3    CFTC has not charged a perfected manipulation and I recognize
4    we haven't. And again, the point there is that we take the
                              Page 74

5USFTC 3106.txt

5   position that we can't determine whether there is a perfected
6   manipulation without seeing the spreadsheets that McGraw-Hill
7   uses.  We will certainly review those spreadsheets and if a
8   determination is made by Mr. Garcia and others that there is
9   sufficient evidence, then they will consider coming before this
10  Court and seeking to amend.
11          But in the event that we find ourselves in that
12  situation, there are a number of things that we would seek to
13  do.  Under a perfected manipulation we have to show specific
14  intent.  We have to show proximate cause.  We have to show an
15  actual artificial price and we have to show the ability to
16  cause an artificial price.
17          The defense bar in separate actions, one of which is
18  referred to by McGraw-Hill in their papers in a class action in
19  New York, has offered up the following potential affirmative
20  defense.  So this is not conjecture, this is a defense they're
21  making.  If you have five individuals who are submitting false
22  information, all on the same day, including my guy, and as a
23  result of five different people submitting false information,
24  they canceled my guy out, can you prove a perfected
25  manipulation.  We have to be able to respond to that.

88

1           The first way that we'll respond to that is to
2   challenge whether that's even --
3           THE COURT:  Before we go much further down that road,
4   that would all await a decision by you-all to charge an actual
5   manipulation; right?
6           MR. MANSFIELD:  Right.  That's right, and I've made
7   that distinction that this -- the points that I'm going to make
8   now would go towards proving, as a matter of law, a perfected

Page 75

5USFTC 3106.txt

9   manipulation, which as you point out correctly, we have not at

10  this point charged. And as I've indicated, we need to consider

11  and see the documents that McGraw-Hill has before we can even

12  begin to make that assessment.

13          THE COURT: The documents that -- the scope of

14  discovery that Bradley is asking for.

15          MR. MANSFIELD: Right.

16          THE COURT: The materials, the data that was submitted

17  by Bradley and/or CMS, including the hard copies, the

18  spreadsheets for the entire period of time, including

19  everybody's information, every other submitter of data, but

20  with their identities redacted and the indices, I guess, that

21  were actually published if that's not already available to you,

22  does that satisfy what you need?

23          MR. MANSFIELD: It -- sort of this is a weird

24  response, but actually he's identifying, I think, larger

25  categories than we're seeking, with this point. We are not

89

1   seeking, in this case, the reports that were made by companies

2   other than CMS, but what we are seeking --

3           THE COURT: Is the spreadsheet.

4           MR. MANSFIELD: Are the spreadsheets that will contain

5   information of companies other than CMS.

6           THE COURT: Right. But if I -- if the Court were to

7   issue an order that said, the scope of discovery in this

8   case --

9           MR. MANSFIELD: Uh-huh.

10          THE COURT: -- at this point in time, and knowing that

11  things could change depending on what happens, what develops,

12  but at this point in time is limited to the hard documents that

13  were submitted by CMS, the spreadsheets for the entire time

Page 76

5USFTC 3106.txt

14  period, with the identities of everybody other than CMS

15  redacted.

16          MR. MANSFIELD:  Right.

17          THE COURT:  Does that give you, give the plaintiff

18  everything that they want as far as scope of discovery at this

19  point in time?

20          MR. MANSFIELD:  And the instructions.

21          THE COURT:  And the instructions from McGraw-Hill --

22          MR. MANSFIELD:  Right.

23          THE COURT:  -- to the universe of people that submit

24  these, this information.

25          MR. MANSFIELD:  If those are the three categories of

                                                              90

1  information that this Court would order produced, we would take

2  that.

3          THE COURT:  Not only take it, but it would satisfy --

4          MR. MANSFIELD:  We'll do whatever.  We'll do it.

5          THE COURT:  It would satisfy your request for the

6  scope of discovery at this juncture?

7          MR. MANSFIELD:  At this juncture.

8          THE COURT:  Knowing that that could change, of course.

9          MR. MANSFIELD:  Knowing that that could change.

10          THE COURT:  Okay.

11          MR. MANSFIELD:  I'm going to continue, as you

12  requested, with why we need this information, but all with the

13  caveat from this point forward that it is to be able to prove a

14  claim, which right now we have not charged because we don't

15  have the ability to even consider the charge without seeing the

16  documents from McGraw-Hill, being a perfected manipulation.

17          THE COURT:  Right.  But you've already demonstrated

                              Page 77

# EXHIBIT 28

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| Applicant. | § § | |
| - against - | § § | Miscellaneous Action H-03-187 |
| THE McGRAW-HILL COMPANIES, INC., | § § | |
| Respondent. | § § | |

## OBJECTION TO AND MOTION
## TO AMEND APPLICANTS' NOTICE OF DISMISSAL

TO THE HONORABLE LYNN N. HUGHES, UNITED STATES DISTRICT
JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION:

1.    Yesterday evening, applicant the U.S. Commodity Futures Trading
Commission ("CFTC") purported to serve by facsimile a document captioned
"Applicant's Notice of Dismissal" on counsel for The McGraw-Hill Companies, Inc.
("McGraw-Hill"). On information and belief, the CFTC has submitted that document for
filing with this Court today.  For the reasons explained below, the Notice of Dismissal is
improper in its current form.  McGraw-Hill objects to the CFTC's attempt to unilaterally
dismiss this action without prejudice, which might permit the CFTC to attempt to renew
this longstanding dispute in another forum.    Instead, any dismissal should be *with
prejudice.*

2.    The CFTC application commencing this action sought to enforce an
administrative subpoena issued to McGraw-Hill. The subpoena called for data submitted,

1

on a confidential basis, by natural gas companies for use in natural gas indices published by Platts, a McGraw-Hill division. McGraw-Hill objected to the subpoena on the grounds that the information sought was protected from discovery by the First Amendment qualified reporter's privilege and on grounds of burden.

3.     McGraw-Hill timely answered the CFTC's application to enforce the subpoena and submitted papers opposing the application. The application has been fully briefed and argued and is currently *sub judice* before this Court. In these circumstances, the CFTC may not unilaterally dismiss this action under FED. RULE CIV. PRO. 41(a)(1) without obtaining McGraw-Hill's consent. McGraw-Hill will stipulate to the CFTC's voluntary dismissal under FRCP 41(a)(1)(ii), without an award of attorneys' fees and costs, as long as the dismissal is *with prejudice*.

4.     Alternatively, should the Court treat the CFTC's notice of dismissal as a request for dismissal by order of court pursuant to FED. RULE CIV. PRO. 41(a)(2) -- which order may be made "upon such terms and conditions as the court deems proper" – McGraw-Hill respectfully submits that any such dismissal similarly should be *with prejudice*.

5.     A dismissal *with prejudice* is called for here because, as a result of the CFTC's initiation of this matter, this Court and McGraw-Hill have incurred significant burdens and costs of time, money and effort. The CFTC should be denied the ability to freely dismiss this action so that it might seek to renew it, and impose new burdens, upon a sister court. Nor should McGraw-Hill have to face the prospect of answering and opposing a new application by the CFTC in another forum, after having fully addressed

2

the CFTC's application pending here.

      6.    For the reasons stated above, McGraw-Hill respectfully requests that any dismissal of this action be *with prejudice*.

               Respectfully Submitted,

               */s/ Kent A. Schaffer*

               KENT A. SCHAFFER
               BIRES & SCHAFFER
               FEDERAL ID NO 3603
               TBA NO. 17724300
               712 MAIN STREET, 31ST FLOOR
               HOUSTON, TEXAS 77002
               TELEPHONE:  (713) 228-8500
               FACSIMILE:  (713) 228-0034

               **OF COUNSEL:**

               VICTOR A. KOVNER*
               CAROLYN K. FOLEY
               DAVIS WRIGHT TREMAINE LLP
               1633 BROADWAY
               NEW YORK, NEW YORK 10019
               TELEPHONE:  (212) 489-8230
               FACSIMILE:  (212) 489-8340

               ATTORNEYS FOR RESPONDENT,
               THE MCGRAW-HILL COMPANIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered users. Counsel does not believe the parties listed below are registered users. A copy will be served to them via facsimile (646-746-9940) and Federal Express to the address listed below.

Stephen J. Obie, Esq.
Steven Ringer, Esq.
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, New York 10005

*/s/ Kent A. Schaffer*

KENT A. SCHAFFER

4