**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
**UNITED STATES COMMODITY**      )
**FUTURES TRADING COMMISSION,**  )
                                              )
            **Plaintiff,**              )
                                              )
      **v.**                              )      **Misc. No. 06-210 (RCL)**
                                              )
**MICHAEL WHITNEY, *et al.*,**    )
                                              )
            **Defendants.**           )
_____)

**MEMORANDUM OPINION**

This matter comes before the Court on a number of motions relating to subpoenas issued

to a third party, the McGraw-Hill Companies, Inc. ("McGraw-Hill").

Plaintiff the United States Commodity Futures Trading Commission ("CFTC") filed, on

May 8, 2006, a consolidated motion [1] to compel responses to four subpoenas (collectively, the

"Subpoenas").  The Subpoenas were issued by this Court in connection with the CFTC's

prosecution of four current or former natural gas traders or supervisors, and their alleged roles in

a market manipulation scheme in violation of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*

(2000) (the "Act").  The CFTC believes that defendants, in an effort to affect market prices for

natural gas, reported false price data to Platts, a company that compiles and publishes energy

prices which are then relied upon to set prices going forward.  As part of its civil prosecution of

defendants, the CFTC seeks from Platts a number of documents relating to the data defendants

submitted and Platts' subsequent use of it in its publications.

Platts, through its parent company, McGraw-Hill, objects to the Subpoenas on several

1

grounds.  In its memorandum in opposition filed on May 26, 2006, it argues, first, that the reporter's privilege applies to protect the information from being disclosed at all.  Second, it contends that, even if the public interest exception to the reporter's privilege applies, the Subpoenas must be narrowed to compel disclosure only of those documents that specifically satisfy that exception and to reduce the burden on McGraw-Hill.  Third, if it must comply with the subpoenas, it requests in a cross-motion [11], filed May 26, 2006, that a protective order be entered to govern the CFTC's subsequent use and disclosure of the sensitive data.  The CFTC disputes each of McGraw-Hill's contentions in its reply [17], filed June 7, 2006; its motion [22], filed on June 19, 2006, to file surreply in support of its initial motion to compel; and its opposition [18], filed June 7, 2006, to McGraw-Hill's cross-motion for a protective order.  On June 19, 2006, McGraw-Hill filed an opposition [24] to the CFTC's motion to file a surreply.

Three additional motions are under consideration: first, a motion [9] by McGraw-Hill, filed May 26, 2006, to seal the affidavit of Kelley Doolan, to which the CFTC filed an opposition [16] on June 7, 2006, and McGraw-Hill filed a reply [19] on June 14, 2006; second, McGraw-Hill's motion [20], filed June 14, 2006, to seal the supplemental declaration of Kelley Doolan, to which the CFTC filed no opposition; and third, the CFTC's motion [7], filed May 24, 2006, for a Rule 16 conference, to which McGraw-Hill filed an opposition [8] on May 25, 2006.

Upon a thorough review of the parties' filings, the applicable law, and the entire record herein, this Court finds that McGraw-Hill's motions [9, 10, 20] to seal shall be GRANTED; the CFTC's motion [7] for a conference shall be DENIED; the CFTC's motion [22] to file surreply shall be DENIED; the CFTC's motion [1] to compel shall be GRANTED in part and DENIED in part; and McGraw-Hill's motion [11] for a protective order shall be GRANTED in part and

DENIED in part.

## **BACKGROUND**

This is the second such dispute between these parties to be decided by this Court.  In *CFTC v. The McGraw-Hill Cos.*, 390 F. Supp. 2d 27 (D.D.C. 2005) (Lamberth, J.), this Court determined that while the reporter's privilege did apply to Platts, it was overcome by the strong public interest in the CFTC's investigation.  McGraw-Hill was ordered to comply with the subpoena, as amended by this Court to reduce the burden and reflect the focused needs of the CFTC's investigation.

Much of the factual background of this case is described in *McGraw-Hill*, 390 F. Supp. 2d at 30-31, and need not be repeated here.  Unlike that case, however, this matter involves the Subpoenas issued in connection with four civil prosecutions[1] (collectively, the "Civil Actions") filed by the CFTC in four federal district courts around the country.  The CFTC characterizes the documents it seeks as falling within three categories that are consistent with the public interest exception to the reporter's privilege.  It seeks, first, the trade data submitted by defendants' companies; second, the spreadsheets created by Platts to compile the trade data and on which it generated index prices; and third, Platts' instructions as to what information should be submitted that it provided to companies and traders, including defendants.  (Pl.'s Consol. Mem. P. & A. 5.) McGraw-Hill contends that the CFTC's characterization fails to acknowledge that the Subpoenas extend into areas beyond the scope allowed under the limited exception to the reporter's privilege.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 7-8.)

---

[1] The individual matters are as follows: *CFTC v. Whitney*, Civ. A. No. H-05-333 (S.D. Tex.); *CFTC v. Richmond*, Civ. A. No. 05-m-668 (D. Colo.); *CFTC v. Foley*, Civ. A. No. 0:05-cv-849 (S.D. Ohio); and *CFTC v. Bradley, and Martin*, Civ. A. No. 4:05-cv-00062 (N.D. Okla.).

## DISCUSSION

*I. The CFTC's Motion [1] to Compel*[2]

As this Court noted in *McGraw-Hill*, the reporter's privilege applies to many of the documents at issue. 390 F. Supp. 2d at 32. Platts' publications involve sufficient editorial judgment to justify protection by the reporter's privilege. *Id.* As also noted in that case, the privilege, however, is not absolute. *Id.* (citing *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981)). It can be overcome by a showing that the information goes to the heart of the matters, and that the CFTC has exhausted other sources. *Id.* at 34 (citing *Zerilli*, 656 F.2d at 713-14).

This Court previously noted that, in recognition of the relative weighing of the public and private interests, the privilege is more likely to be overcome in criminal than in civil cases. *Id.* at 32-33. This matter fits squarely within neither category: the Civil Actions are civil prosecutions rather than private civil matters or criminal prosecutions. McGraw-Hill argues that this distinction requires that the motion to compel be denied, or at least that the Subpoenas be narrowed to reflect the difficulty of overcoming the privilege in civil cases. (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 28-29.) The CFTC disagrees, however, contending that this Court's previous holding was not limited to investigative actions and as such may properly be extended to cases such as the Civil Actions. (CFTC's Reply Mot. Compel. 5-7.)

As this Court previously noted, the purpose of distinguishing between civil and criminal

---

[2] It should be noted that McGraw-Hill argues that the CFTC is precluded from filing a motion to compel as to defendants Whitney, Bradley, Martin and Foley, because its prior motion to compel seeking much of the same information, filed in another court against defendants' employers, was dismissed with prejudice. (McGraw-Hill's Mem. P. & A. Opp'n Mot Compel 9.) The CFTC argues that the dismissal has no bearing on this action, both because it was based on subpoenas of entirely different scope and subject matter, and because the CFTC's notice of dismissal was without prejudice. (CFTC's Reply Mot. Compel 15-17.) This Court agrees with the CFTC and finds that it is not precluded from pursuing the instant action.

matters is to reflect the strength of the public interest in abrogating the privilege. *McGraw-Hill*, 390 F. Supp. 2d at 33. The reason that the privilege typically prevails in a civil matter is because of the lesser public interest in "a private litigant seeking personal redress" as compared to the greater public interest in freedom of the press. *Id.* at 33. In this matter, however, the Civil Actions initiated by the CFTC reflect a greater public interest insofar as they involve a federal agency seeking to enforce laws designed to protect the public. The balancing test, then, must be undertaken with a "more qualified view of the privilege than would be appropriate in a purely civil case." *Id.* With these considerations in mind, this Court shall review whether the reporter's privilege is overcome as to each category of documents sought.

B. *The Heart of the Matters*

Generally,[3] the Subpoenas seek documents relating to the transaction data reported by defendants' companies, documents reflecting Platts' use of that data, the instructions provided by Platts to defendants' companies, and documents referencing conversations between Tom Haywood and defendants or others at their companies. These categories of information sought closely track those included in the subpoena enforced, as modified, in the prior case decided by

---

[3] The Subpoenas seek eleven categories of documents covering approximately a six-month to two-year period, depending on the subpoena. Specifically, the documents requested are: documents received by McGraw-Hill from any employee or agent of defendants' companies that contain certain transaction data (Subpoenas' Request No. 1); documents that reference falsities in the transaction data reported by defendants' companies (Subpoenas' Request No. 3), or that reflect data relating to those transactions that were ultimately excluded from McGraw-Hill's calculations of a price index (Subpoenas' Request No. 5); documents prepared or created by McGraw-Hill reflecting the data received from defendants' companies (Subpoenas' Request No. 2); documents that reference the formulas and methodology used to calculate index certain prices relating to that data (Subpoenas' Requests No. 4, 8-9); documents reflecting published natural gas prices during the relevant period (Subpoenas' Request No. 6); documents referencing any conversations relating to false reporting or attempted price manipulation by defendants or their companies (Subpoenas Request No. 7); documents referencing certain conversations between Tom Haywood and defendants or their companies (Whitney Subpoena Request No. 11; Bradley et al Subpoena Request No. 11); and documents containing instructions and similar documents concerning the reporting of natural gas transactions that McGraw-Hill provided to defendants' companies (Subpoenas' Request No. 10).

this Court.  *McGraw-Hill*, 390 F. Supp. 2d at 37-38.

To overcome the privilege, the CFTC must demonstrate that the information it seeks goes to the heart of the Civil Actions.  *See id.* at 34 (citing *Zerilli*, 656 F.2d at 713; citing *Carey v. Hume*, 492 F.2d 631, 636 (D.C. Cir. 1974)).  McGraw-Hill argues that the CFTC's asserted need is merely an assertion that the documents would be relevant in the Civil Actions, and that relevance is insufficient to satisfy this part of the balancing test.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 12-13.)  This Court disagrees: as described below, the CFTC has carefully described how the documents are crucial, not merely relevant, to the Civil Actions and as such meets the requirement that the Subpoenas seek documents or information that go to the heart of the matters.

### 1. Transaction Data

McGraw-Hill makes two primary arguments that the transaction data sought by the Subpoenas is too broad to satisfy the "heart of the matter" requirement, in light of the allegations in the complaints against each defendant.  First, it argues that the Subpoenas must be narrowed to reflect only those publications at issue in each defendant's case.  The Subpoenas request all submissions made by defendants to two of Platts' publications, *Gas Daily* and *Inside FERC*. McGraw-Hill argues that the Subpoenas should be narrowed to reflect the submissions in which the allegedly false reports were made.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 25.) Accordingly, since the complaints against defendants Whitney, Richmond, Bradley and Martin accuse defendants of making false reports only to *Gas Daily*, McGraw-Hill argues that the Subpoenas in those two matters must be narrowed to exclude submissions those defendants made to *Inside FERC*.  (*Id.*) The CFTC argues that McGraw-Hill misconstrues the complaints and

renews an argument that the parties had already addressed in their negotiations.  (CFTC's Reply Mot. Compel 8-9.)  By these efforts, the CFTC contends, McGraw-Hill attempts to determine what information the CFTC truly needs, a role the CFTC sees as inappropriate for a third-party recipient of a subpoena.  (*Id.*)

This Court finds that Subpoenas' requests for documents connected to both publications go to the heart of the matters.  Each of the complaints expressly state that the allegations are not limited to either publication.  Accordingly, this Court finds no merit in McGraw-Hill's contention that the documents sought are so much broader than the allegations that they cannot be viewed as going to the heart of the matters.

McGraw-Hill's second argument that the transaction data does not go to the heart of the matters is that it is not limited to the specific dates and indices on which each Defendant is alleged to have attempted to manipulate prices.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 26-27.)  For some defendants, it notes, the CFTC has already identified the suspected dates and indices.  (*Id.*)  For the others, McGraw-Hill proposes responding to the Subpoenas with a preliminary, narrower set of documents, and then providing the full response only after the CFTC has identified the suspected dates and indices.  (*Id.* at 27.)

The CFTC disagrees with McGraw-Hill's contention that the Subpoenas are too broad in this respect to go to the heart of the matters.  It needs all data submitted by defendants, even that which is not suspected to be false, because under the Act the CFTC must prove that the false data was submitted knowingly.  (Pl.'s Consol. Mem. P. & A. 7-8.)  In order to satisfy this knowledge requirement as to the instances where defendants made false reports (and about which they may claim ignorance or mistake), the CFTC needs proof that the defendants submitted correct data on

other occasions.  (*Id.*)  McGraw-Hill disputes the usefulness of such a rebuttal argument, but in any event, maintains that testimony or other documents sought by the subpoena could be used for this purpose.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 29.)  The CFTC responds that its ability to obtain the information from other sources is uncertain and argues that, in any case, it should not be forced to rely on McGraw-Hill's evaluation of appropriate trial strategy.  (CFTC's Reply Mot. Compel 11-12.)

The Court finds that the CFTC's position is correct.  Where the Act that defendants are alleged to have violated requires a showing that they acted knowingly, proof of such knowledge is crucial to the CFTC's case.  Even if it can prove that defendants submitted false data, it will be unable to carry its burden in the Civil Actions unless it cannot prove they did so knowingly.  Moreover, the CFTC's strategy for proving this element – showing that defendants submitted correct information on many other occasions – may be the CFTC's best chance of satisfying the "knowingly" requirement.  Whether the CFTC could obtain the same information from other sources such as testimony or other documents, as McGraw-Hill argues, is highly speculative.  Neither this Court nor McGraw-Hill shall second guess the CFTC's proposed trial strategy where it appears that the requested documents provide a more than reasonable basis for satisfying a major element of the violations it is prosecuting.  This Court does not find that "heart of the matter" requirement demands inquiry into the relative merits of various trial tactics.  Accordingly, the Subpoenas will not be modified in this respect.

### 2. *Platts' Use of the Data*

As to the spreadsheets and related documents created by McGraw-Hill requested by the Subpoenas, McGraw-Hill argues that, to the extent the CFTC does not allege that any of the

defendants actually succeeded in affecting prices, the spreadsheets cannot go to the heart of the matter.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 27).  It requests that the Subpoenas be narrowed to exclude the spreadsheets.  In the alternative, McGraw-Hill requests that it be allowed to redact the names of any companies that appear on the spreadsheet other than the defendants' employers.  (*Id.* at 27 n.18.)

The CFTC disagrees with both McGraw-Hill's request that the Subpoenas be narrowed in this respect and its request that the spreadsheets be redacted.  It argues that it needs to know which companies submitted which data because it may need to obtain information from them in order to rebut the possible defense that false submissions by other sources caused the effect in the prices.  (Pl.'s Consol. Mem. P. & A. 12-13.)  McGraw-Hill responds that the CFTC will be unable to determine whether one false submission resulted in a false price, because the suspected false submission cannot simply be removed to arrive at a "true" aggregate price.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 30-31.)  Similarly, McGraw-Hill argues that the CFTC's attempt to disprove any such defense by reviewing all submissions would be impractical given the vast number of submissions.  (*Id.* at 31.)

McGraw-Hill also argues that the CFTC's request for the spreadsheets does not go to the heart of the Civil Actions, but rather is designed to enable the CFTC to obtain large numbers of spreadsheets so that it may attempt to defeat McGraw-Hill's ability to assert the reporter's privilege by showing that its calculations do not result from journalistic analysis or judgment. (*Id.* at 29-30.)

This Court finds that the spreadsheets and related documents go to the heart of the Civil Actions.  The CFTC explains that it needs this information in order to prove that the defendants'

9

allegedly false reports had the ability to, and possibly did, influence market prices.  (Pl.'s Consol. Mem. P. & A. 6-7.)  If the CFTC cannot determine what information was submitted (and in some instances the spreadsheet is the only record), or cannot ascertain how that information was used by Platts to generate its index prices, it may be unable to determine the potential and actual effects of the allegedly false reports on market prices.

This Court does find, however, that the CFTC's need for unredacted spreadsheets does not go to the heart of the matters.  While the CFTC has demonstrated that isolating the effects of the data submitted goes to the heart of proving that the Act has been violated, it has not demonstrated that it needs to be able to identify the other companies by name in order to do so. If, in reviewing the data received in response to the Subpoenas, the CFTC finds that it needs the names of the other companies, it should pursue that disclosure at that time.  Using the CFTC's present needs to limit disclosure is more appropriate than ordering all data disclosed in anticipation of its possible future needs.  If the CFTC has some basis to suspect illegal activity by a particular company and wants to further investigate, the name of that company likely will go to the heart of that matter.  It is not clear to this Court, however, that those names go to the heart of these matters.

### 3. The Instructions

As to Platts' instructions as to what information should be submitted by defendants and other non-defendant companies and traders, the CFTC argues that the information is relevant to proving that the defendants acted knowingly.  (Pl.'s Consol. Mem. P. & A. 7-8.)  To demonstrate that the traders "knowingly" reported false data, the CFTC must show that the traders knew what data was not to be included.  Accordingly, the instructions the traders received from Platts

10

defining the parameters of the data to be reported go to the heart of the Civil Actions.

   *C. Exhaustion*

   As this Court previously noted, the CFTC must show that, prior to issuing a subpoena for information protected by the reporter's privilege, it attempted to obtain the information from other reasonably available sources. *McGraw-Hill*, 390 F. Supp. 2d at 34-35 (citing *Zerilli*, 656 F.2d at 713; citing *Carey*, 492 F.2d at 638).

   As to the documents reflecting Platts' use of the data and the instructions, the CFTC explains that Platts is also the only source of the information indicating whether and how it used the trade data submitted by the defendants and their companies, and that it is the only source of the instructions as well. (Pl.'s Consol. Mem. P. & A. 16.)

   As to the transaction data, the CFTC explains that, before issuing the subpoenas to Platts, it attempted to obtain the information from the energy companies by which defendants were or are employed. (Pl.'s Consol. Mem. P. & A. 15-16.) The companies, however, often did not maintain records of the telephone submissions made by their traders. (*Id.*) Therefore, the only source for the information is the recipient of the communication, Platts. Even if the CFTC were able to obtain the information elsewhere, it nonetheless may need to confirm not only that it was transmitted, but also that it was received and used by Platts. *See* discussion *supra* Part I.A.2. This Court finds that the CFTC has exhausted all other reasonably available sources for the information. Of the data that might have been otherwise available, the CFTC made sufficient efforts to obtain it from other sources before issuing the Subpoenas to McGraw-Hill.

   In light of the foregoing, this Court finds that the CFTC has met its burden of demonstrating need for the documents and that it has exhausted other sources. The reporter's

privilege, therefore, is overcome in this case.

*II.  Undue Burden*

A party may be excused from compliance with a subpoena that is found to impose an undue burden on the subpoenaed party.  Undue burden occurs when the subpoena is so broad that compliance will severely disrupt its normal business operations.  *McGraw-Hill*, 390 F. Supp. 2d at 35 (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977) (en banc)).

McGraw-Hill argues that the Subpoenas "are drawn far too broadly" and must be narrowed to reflect the constraints applicable to third-party subpoenas.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 24.)  It objects to each of the Subpoenas' requests on the basis of undue burden (*id.* at 35-40), and asserts that the Subpoenas as written represent a "fishing expedition" (*id.* at 40).

The CFTC maintains that McGraw-Hill's complaints as to burden are meritless.  It notes that this Court's prior decision determined that a subpoena with nearly identical language did not impose an undue burden, and also notes that it has been negotiating with McGraw-Hill to reduce the burden imposed by the Subpoenas.  (CFTC's Reply Mot. Compel 10-11.)

This Court finds that the Subpoenas are not unduly burdensome.  The Subpoenas request a number of specific documents for a narrow time period (between six months to two years, depending on the subpoena).  They are limited to the documents needed to prove the required elements of the CFTC's cases, and McGraw-Hill has failed to demonstrate that compliance with the Subpoenas will disrupt its normal business operations.  In light of the foregoing, the motion to compel shall be GRANTED in part and DENIED in part.

*III.  McGraw-Hill's Motion [11] for Protective Order*

Pursuant to Federal Rule of Civil Procedure 26, McGraw-Hill moves for a protective order to govern disclosure of any documents it releases in response to the Subpoenas. That Rule provides that the Court may issue a protective order upon a showing of good cause by McGraw-Hill that it needs to be protected from undue burden. Fed. R. Civ. P. 26(c). Such undue burden exists if McGraw-Hill demonstrates that it will suffer "clearly defined and serious injury" if the discovery were permitted without a protective order. *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56, 57 (D.D.C. 2004) (Leon, J.) (citation omitted). McGraw-Hill maintains that the protective order is necessary for protection of both its sources and its trade secrets. This Court shall consider each in turn.

### A. Protection of Sources

McGraw-Hill argues that the Subpoenas seek "some of its most important, privileged newsgathering materials, proprietary information and trade secrets" that must remain confidential in order to protect "its journalistic sources" and its competitive position in the marketplace. (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 14.) As such, McGraw-Hill argues that a protective order is necessary to prevent it from losing the trust of its sources and consequently its ability to publish the price assessments. (*Id.* at 15.) It notes that its published materials never attribute prices to its sources, and that its own employees must agree to protect the confidentiality of the information. (*Id.*)

The CFTC makes two arguments in response. First, it argues that the issue is made moot because this Court, in determining that the reporter's privilege is overcome, already considered the public interest in protecting newsgatherers. (CFTC's Opp'n Cross-Mot. 19-20.) Second, it argues that because the data at issue is several years old, there is no legitimate basis for the

sources to fear its disclosure, and accordingly no reason to expect that they would terminate their relationship with Platts because of disclosure. (*Id.*)

This Court agrees with the CFTC. The need to protect newsgatherers from losing their sources' trust is subsumed in the reporter's privilege. As this Court previously noted, the rationale for the rule "is that forcing journalists to disclose confidential sources will discourage sources from communicating with reporters, thereby disrupting the free flow of information protected by the First Amendment." *McGraw-Hill*, 390 F. Supp. 2d at 31 (citations omitted). Thus, in finding that the privilege is overcome, this Court has already determined that, in light of the competing public interest in the CFTC's civil prosecutions, McGraw-Hill's concern about its sources is not sufficiently compelling to prevent abrogation of the privilege.

Even considered separately, this Court finds McGraw-Hill's concerns to be unpersuasive in light of the fact that the data requested by the Subpoenas is several years old and in light of this Court's finding *supra* Part I.A.2 that the spreadsheets may be redacted to protect the identity of the companies other than defendants' companies. This Court does not find that responding to the Subpoenas presents a threat to McGraw-Hill's ability to remain competitive as a publisher of natural gas transaction data and index prices. Similarly, McGraw-Hill fails to explain how its sources would be placed at a competitive disadvantage from the release of data they reported several years ago, and which is not attributed to them by name. Accordingly, there is no reason to expect that disclosure of the information sought in the Subpoenas will lead the source companies to mistrust McGraw-Hill or cease reporting to its publications.

*B. Trade Secret Protection*

McGraw-Hill's second argument that a protective order is necessary is that production of the spreadsheets and other materials would force it to reveal proprietary and trade secret information. (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 17.)

Under District of Columbia law, a trade secret is information that is (1) secret; (2) the value of which derives from the secrecy; and (3) the confidentiality of which the owner makes reasonable effort to secure. *See Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004) (Kennedy, J.) (citations omitted) (describing case law interpretation of statutory elements).

McGraw-Hill argues that the spreadsheets reveal its methods (mathematically and technologically) of compiling the price assessments. (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 18.)   As such, it believes that the information contained in the spreadsheets and other materials "lies at the heart of both its journalistic and business efforts," (*id.* at 17), and that disclosure would put McGraw-Hill at an extreme competitive disadvantage (*id.* at 20).

The CFTC concedes that the spreadsheets are compilations of information used in Platts' business.  It disputes, however, that the spreadsheets contain any information that is valuable due to its secrecy.  (CFTC's Opp'n Mot. Prot. Order 22-23.)  Editorial judgments used to arrive at the index prices, if any, are not reflected in the spreadsheet.  (*Id.* at 23.)  Even if they were, the CFTC argues, they would not necessarily be protected trade secrets to the extent they are based on knowledge common to persons of similar experience to Platts' editors.  (*Id.* at 24.)  Finally, it argues that McGraw-Hill's conduct undercuts its own arguments: it has posted on its website in public view a sample of a spreadsheet and also separately published the names of many of the

companies included on the spreadsheets.  (*Id.* at 22, 24.)

This Court finds that the spreadsheets and related documents do not constitute trade secrets justifying the entry of a protective order.  McGraw-Hill has failed to make a colorable showing on the elements necessary for trade secret protection.

*C.  Subsequent Third-Party Disclosure by the CFTC*

Finally, McGraw-Hill argues that a protective order is necessary because of the possibility that the CFTC will subsequently disclose the information to a third party.  McGraw-Hill notes that, since the Subpoenas were issued pursuant to Federal Rule of Civil Procedure 45 in connection with civil actions rather than pursuant to the CFTC's investigatory powers, the regulatory limitations on subsequent disclosure by the CFTC do not apply.  (McGraw-Hill's Mem. P. & A. Opp'n Mot. Compel 22-23.)  Similarly, although CFTC regulations require it to give McGraw-Hill notice and an opportunity to object before the release to a third party of its confidential information, McGraw-Hill reports that the CFTC has construed that regulation to apply only when the party releasing the information is not the CFTC.  (*Id.* at 23-24.)

The CFTC responds that the public interest dictates that it should be permitted to share the information with other federal agencies and Congress who would use the information for the similar purpose of protecting the integrity of the natural gas markets.  (CFTC's Opp'n Mot. Prot. Order 27-28.)  This Court finds the CFTC's position to be troubling.  Since documents protected by the reporter's privilege are ordered to be disclosed only when the balancing test is satisfied, any subsequent disclosure of the documents must necessarily be on condition that the balancing test is also met in that particular case.  Whether the documents go to the heart of the matter is an inquiry that necessarily must be undertaken for *each* disclosure of the documents.  Accordingly,

any future disclosure of the documents for purposes other than the matters pursuant to which the

Subpoenas were issued must be preceded by a case-specific determination by a court of law.[4]

While this Court recognizes that imposing such a requirement may impede future

investigations and prosecutions, the alternative of permitting indiscriminate disclosure effectively

eviscerates the protection provided by the reporter's privilege in the first place, and would vastly

expand the narrow purpose of the public interest exception.  The parties are encouraged,

however, to continue good faith negotiations when these disputes arise, and to engage in those

discussions with an eye toward minimizing the areas of dispute before seeking judicial

resolution.  If McGraw-Hill were judicious in its opposition to the CFTC's request, the CFTC

should be encouraged to be equally judicious in making its requests, and vice versa.  Disputes

arising from subpoenas are so fact-intensive that they are best resolved by the parties themselves.

In light of the foregoing, the motion for protective order shall be GRANTED in part and

DENIED in part.

## IV.  Other Motions

### A.  The CFTC's Motion [7] for a Rule 16 Conference

The CFTC requests [7] a conference to discuss how best to proceed with its motion to

compel in light of the pending actions in the Oklahoma Court.  McGraw-Hill objects in its

opposition [8].  This Court finds that the need for a conference has not been demonstrated.  That

---

[4] It bears noting that this finding is not inconsistent with this Court decisions in *McGraw-Hill*, 390 F. Supp. 2d 27.  In that matter, McGraw-Hill did not request a protective order until after this Court issued its Order granting the CFTC's motion to compel compliance with the subpoena.  While this Court denied the motion for reconsideration or clarification, it did so as to the request for a protective order largely due to the fact that the request came after this Court had already issued its decision, which led this Court to find that McGraw-Hill had failed to meet the fairly stringent standards for reconsideration.  *CFTC v. The McGraw-Hill Companies, Inc.*, 403 F. Supp. 2d 34, 38 (D.D.C. 2005) (Lamberth, J.).  Accordingly, the instant motion for a protective order arises in a posture distinct from that motion and thus does not constitute a conflict.

the Civil Actions are pending in many different courts, and that a party may undertake a different

litigation strategy in each court, does not require this Court to synthesize the various pending

matters relating to this matter.  Furthermore, during the pendency of this action, the similar

motion in Oklahoma has been decided by that Court and filed on the docket of this matter.

Accordingly, the motion [7] for a conference shall be DENIED.

      *B.  McGraw-Hill's Motions [9, 10, 20] to Seal*

      McGraw-Hill moved [9] to seal the affidavit of its employee, Kelly Doolan, that was filed

as an exhibit.  The CFTC filed an opposition [16] and McGraw-Hill filed a reply [19].  McGraw-

Hill requests that the document be sealed because it contains "discusses confidential proprietary

and trade secret information developed by *Inside FERC* over several years and other information

explaining *Inside FERC's* internal processes."  (McGraw-Hill's Mot. Seal Doolan Aff. ¶ 7.)  The

CFTC opposes sealing the affidavit for two reasons: that there is no protectible information

contained therein, and because the same information has already been made public.  (CFTC's

Opp'n Mot. Seal Doolan Aff. ¶¶ 4-7.)  In McGraw-Hill's reply, it argues that the affidavit's

description of the structure of the spreadsheets could be used to McGraw-Hill's detriment,

particularly if it were viewed in conjunction with the spreadsheets themselves.  (McGraw-Hill's

Reply Mot. Seal Doolan Aff. ¶¶ 9-10.)  Additionally, it argues that the public information differs

from the information it now seeks to protect.  (*Id.* ¶¶ 10-11.)

      McGraw-Hill also filed a motion [10] to seal the unredacted version of its reply in

support of its motion for protective order, and a motion [20] to seal the supplemental declaration

of one of its employees, Kelly Doolan.  The CFTC filed no opposition.

      This Court finds that McGraw-Hill has advanced sufficient reason to seal the affidavit

and supplemental declaration of Kelly Doolan as well as the unredacted memorandum of points

and authorities. Since McGraw-Hill is a non-party, one of the motions is unopposed, and the

documents do contain detailed discussions of McGraw-Hill's internal procedures that could

potentially be used against them by a competitor, this Court finds sufficient basis to overcome

the public's right to access court records. Accordingly, the motions [9, 10, 20] to seal shall be

GRANTED.

    *C. The CFTC's Motion [22] to File Surreply*

    The CFTC filed a motion to file a surreply to McGraw-Hill's reply in support of its

motion for a protective order. It contends that it must do so in order to bring the Court's

attention to what it believes are inaccuracies in the affidavit McGraw-Hill submitted in its reply.

(CFTC's Mot. File Surreply ¶ 2.) McGraw-Hill filed an opposition [24] to the motion, arguing

that the CFTC failed to demonstrate that "truly new" matters had been raised in the reply.

(McGraw-Hill's Opp'n Mot. File Surreply ¶ 1.) This Court agrees with McGraw-Hill. The

CFTC fails to demonstrate that McGraw-Hill's reply raised new matters to which the CFTC

would be unable to respond if its motion were denied. Rather, it raises issues that the parties

have already addressed or had the opportunity to address. Accordingly, the motion to file

surreply shall be DENIED.

## CONCLUSION

    Upon a thorough review of the parties' filings, the applicable law, and the entire record

herein, this Court finds that McGraw-Hill's motions [9, 10, 20] to seal shall be GRANTED; the

CFTC's motion [7] for a conference shall be DENIED; the CFTC's motion [22] to file surreply

shall be DENIED; the CFTC's motion [1] to compel shall be GRANTED in part and DENIED in

part; and McGraw-Hill's motion [11] for a protective order shall be GRANTED in part and

DENIED in part.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, July 25, 2006.