UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Michael Whitney, et al. )<br>)<br>Defendants. )<br>) | Misc. No. 1:06MS00210 (RCL) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO AMEND THE COURT'S JULY 25, 2006 PROTECTIVE ORDER**

### I.   Introduction

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") submits this memorandum of points and authorities in support of its motion to amend the Court's July 25, 2006 order ("Order"), granting in part, the motion for protective order filed by third party, The McGraw-Hill Companies, Inc. ("McGraw-Hill").

Paragraph 1 of the protective order contravenes the language of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 12, which provides, in pertinent part, that the Commission shall furnish information -- including information of the kind the Court compelled McGraw-Hill to produce in this action -- upon request of Congress or the Comptroller General.

The enactment of the CEA falls squarely within the "sphere of legitimate legislative activity" encompassed by the Speech or Debate Clause of the United States Constitution, Article I, Section 6, Clause 1. The Speech or Debate Clause affords the legislative branch absolute immunity from judicial interference. As such, neither Congress nor any body with oversight authority over the Commission can be required to apply to the Judiciary and made

to demonstrate that its intended use of the McGraw-Hill documents overcomes the qualified reporter's privilege. The Commission, thus, requests that the Court amend its Order to allow the Commission to disseminate the McGraw-Hill documents upon request by Congress and the Comptroller General. To allow the Order otherwise to stand would constitute clear error.[1]

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment within ten days of the entry of the judgment (or challenged order). *See Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420-21 (D.D.C. 2005) (citation omitted). The district court has "considerable discretion in ruling on a Rule 59(e) motion." *Piper v. United States Dep't of Justice*, 312 F. Supp. 2d 17, 20 (D.D.C. 2004) (citation omitted). "The court properly invokes its discretion to grant a Rule 59(e) motion if it finds there is (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." *Id.* at 20-21, *citing, Anyanwutaku v. Moore*, 151 F.3d 1053, 1057-58 (D.C. Cir. 2003).

## III.    Argument

Under the terms of the Protective Order entered by the Court, "plaintiff the United States Commodity Futures Trading Commission . . . shall limit their dissemination of the McGraw-Hill Documents to the parties, their attorneys, their employees, experts or consultants and witnesses . . ." (Paragraph 1). As the Court explained in its Memorandum Opinion,

---

[1] On June 16, 2006, the United States District Court for the Northern District of Oklahoma granted in part McGraw-Hill's request for entry of a protective order governing the dissemination of documents this Court might order McGraw-Hill to produce in the Oklahoma action. *See CFTC v. Bradley/Martin*, Civil Action No. 05-CV-62-JHP-FHM (N.D. Okl.). A copy of the order is filed in this case (Docket No. 23) (6/19/06). Thereafter, the Oklahoma court (McCarthy, MJ), rejected the Commission's request that it be allowed to make available the McGraw-Hill documents upon request by Congress or the Comptroller General. The Commission intends to file an objection to the Magistrate's recommendation with the Oklahoma district court on the grounds set forth herein.

2

> Since documents protected by the reporter's privilege are ordered to be disclosed only when the balancing test is satisfied, any subsequent disclosure of the documents must necessarily be on condition that the balancing test is also met in that particular case. Whether the documents go to the heart of the matter is an inquiry that necessarily must be undertaken for *each* disclosure of the documents. Accordingly, any future disclosure of the documents for purposes other than the matters pursuant to which the Subpoenas were issued must be preceded by a case-specific determination by a court of law.

*Id.* at pp. 16-17 (emphasis in original). The Commission does not challenge the Court's prohibition against sharing of information with other agencies. It does, however, challenge the Order to the extent that it precludes the Commission from disseminating the McGraw-Hill documents in response to a Congressional request or request of any body with oversight authority over the Commission.

In the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, Congress delineated specific circumstances wherein the Commission "shall" produce information, including information of the kind the Court ordered McGraw-Hill to produce to the Commission in this action. Specifically, under Section 8(e) of the CEA,

> Upon the request of any committee of either House of Congress, acting within the scope of its jurisdiction, the Commission shall furnish to such committee the names and addresses of all traders on such boards of trade with respect to whom the Commission has information, <u>and any other information in the possession of the Commission</u> relating to the amount of any commodity purchased or sold by each such trader.

7 U.S.C. § 12(e) (emphasis supplied). Similarly, under Section 8(i),

> The Comptroller General of the United States shall conduct reviews and audits of the Commission and make reports thereon. For the purpose of conducting such reviews and audits, the Comptroller General shall be furnished such information regarding the powers, duties, organization, transactions, operations, and activities of the Commission as the Comptroller General may require and the Comptroller General and <u>the duly authorized representatives of the Comptroller General shall, for the purpose of securing such information, have access to and the right to examine any books, documents, papers, or records of the Commission,</u> except that in reports the Comptroller General shall not include data and information that would separately disclose the business transactions of any person and trade secrets or names of customers, although <u>such data shall be provided upon request by any committee of either House of Congress</u> acting within the scope of its jurisdiction.

7 U.S.C. § 12(i) (emphasis supplied). As the language makes plain, the Commission has no discretion when responding to requests under Sections 8(e) and (i) of the CEA. Moreover, the documents the Court ordered McGraw-Hill to produce to the Commission are among the categories of information Congress and/or the Comptroller General may demand. Accordingly, if the Court's Protective Order, as drafted, stands, the Commission may be forced to choose between complying with an order of the Judiciary or a directive from the Legislature. The United States Constitution, however, does not require the Commission to make that choice.

When Congress acts within the "legitimate legislative sphere," the Speech or Debate Clause, found in Article I, Section 6, Clause 1 of the United States Constitution, acts as an absolute bar to interference. *Doe v. McMillan*, 412 U.S. 306, 314, 93 S.Ct. 2018, 36 L.Ed. 2d 912 (1972).[2] To determine whether Congress is acting within this sphere, a court looks to see "whether the activities took place 'in a session of the House by one of its members in relation to the business before it.'" *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed. 2d 324 (1975). In particular, a court must decide whether the activities are,

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed. 2d 583 (1972). "The power to investigate . . . plainly falls within that definition. This Court has often noted that the power to investigate is inherent in the power to make laws because '[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Eastland*, 421 U.S. at 504, *citing, McGrain v. Daugherty*, 273 U.S. 135, 175, 47 S.Ct. 319, 71 L.Ed. 580 (1927).

---

[2] Article I, Section 6 states, in pertinent part, "The Senators and Representatives . . . for any Speech or Debate in either House, [] shall not be questioned in any other place."

4

The legislative process does not stop with the enactment of statutes like the Commodity Exchange Act. Rather the process is fluid with the legislature engaged in continued oversight and review designed both to insure that a statute is properly implemented, and the statute is responsive to the conditions which it was intended to affect or change. By reserving to itself an unfettered right to access information gathered by the Commission, Congress preserved its ability, among other things, to address whether the CEA is responsive to the "conditions which the legislation is intended to affect or change" -- e.g., protecting commodity prices from manipulation. Similarly, by granting the Comptroller General access to all information in the Commission's possession as part of the Comptroller's review and audit of the agency, Congress put a procedure in place to insure the integrity of the Commission's implementation of the CEA. Both activities plainly fit within the legitimate legislative sphere protected by the Speech or Debate Clause.

Against this Constitutional backdrop, any requirement that Congress demonstrate to the Judiciary that its need for the McGraw-Hill documents is of sufficient importance to overcome the reporter's privilege -- which, by necessity, allows for the possibility that Congress could be denied the requested information -- is an obvious interference with the Legislature and is of the kind that is expressly forbidden by the Speech or Debate Clause. The Supreme Court's holding in *Eastland* v. *United Servicemen's Fund*, a case involving the enforceability of a congressional subpoena, is instructive on this point. There, the respondents argued that once it is alleged that First Amendment rights may be infringed by congressional action, the Judiciary may intervene to protect those rights. 421 U.S. at 509. The Supreme Court disagreed, noting that such an approach ignores the absolute nature of the speech or debate protection. The Court explained,

5

> For us to read the Clause as respondents suggest would create an exception not warranted by the language, purposes, or history of the Clause. Respondents make the familiar argument that the broad protection granted by the Clause creates a potential for abuse. That is correct, but in *Brewster, supra*, we noted that the risk of such abuse was "the conscious choice of the Framers" buttressed and justified by history. 408 U.S., at 516. Our consistently broad construction of the Speech or Debate Clause rests on the belief that it must be so construed to provide the independence which is its central purpose.

*Eastland*, 421 U.S. at 510 (emphasis in original).

The Commission respects, and will abide by, the terms of the Court's Protective Order. The Commission only asks that in doing so it not be forced to ignore its statutory obligations to Congress and the Comptroller General of the United States.

## IV. Conclusion

For the foregoing reasons, the Commission respectfully requests that the Court amend the July 25, 2006 Protective Order to allow the Commission to make available the McGraw-Hill documents upon request of (i) Congress pursuant to Section 8(e) of the CEA, 7 U.S.C. § 12(e), and (ii) the Comptroller General of the United States pursuant to Section 8(i) of the CEA, 7 U.S.C. § 12(i).

Dated: August 2, 2006   Respectfully submitted,
Washington, D.C.

/s/ Anthony M. Mansfield
Michael J. Otten (VA Bar No. 42371)
Anthony M. Mansfield (MA Bar 630216)
Laura Gardy (FL Bar 523909)
United States Commodity Futures
 Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
202.418.5000
202.418.5523 (facsimile)

CERTIFICATE OF SERVICE

I, Anthony M. Mansfield, hereby certify that on August 2, 2006, I caused a copy of the *Plaintiff's Memorandum of Points and Authorities in Support of Motion to Amend the Court's July 25, 2006 Protective Order* to be served by First Class Mail on the following individuals:

Victor Kovner, Esq.
Davis Wright Tremaine LLP
1633 Broadway
New York, New York 10019
*Counsel for The McGraw-Hill Companies, Inc.*
*First Class Mail and Federal Express*

Samuel F. Abernathy, Esq.
Menaker & Herrmann
10 East 40th Street
New York, NY 10016-0301
*Counsel for Michael Whitney*

Matthew L. Fornshell, Esq.
250 West Street
Columbus, OH 43215
*Counsel for Joseph Foley*

David R. Cordell, Esq.
Conner & Winters
4000 One Williams Center
Tulsa, OK 74172
*Counsel for Jeffrey Bradley*

Thomas M. Ladner, Esq.
Norman Wohlgemuth Chandler & Dowdell
401 South Boston Avenue
2900 Mid-Continent Tower
Tulsa, OK 74103-4023
*Counsel for Robert Martin*

Robert B. Christie, Esq.
Henderson & Lyman
175 West Jackson Blvd, Suite 240
Chicago, IL 60604
*Counsel for Andrew Richmond*

/s/ Anthony M. Mansfield
Anthony M. Mansfield